**NO. 21-1330**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

Subhadra Gunawardana and David Seely
*Plaintiffs-Appellants*
v.

American Veterinary Medical Association (AVMA), Educational Commission for Foreign
Veterinary Graduates (ECFVG) and Council on Education (COE)
*Defendants-Appellees*

On Appeal from the United States District Court for the
Southern District of Illinois, Case No. 3:19-cv-00096-NJR
The Honorable Judge Nancy J. Rosenstengel

**PLAINTIFFS-APPELLANTS' BRIEF AND REQUIRED SHORT APPENDIX**

Subhadra Gunawardana
David Seely
4308 Marion Garden Ln
Florissant, MO 63034
314-764-1520; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

# Table of Contents

Table of Authorities ................................................................................... iii

LIST OF ABBREVIATIONS ...................................................... vi

REFERENCES TO PARTIES AND COURTS ........................................ vii

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF THE ISSUES ................................................ 2

    *A. Dismissal without leave to amend is erroneous, and Defendants' repeated failure to defend entitles Plaintiffs to default judgment* ......................... *2*

    *B. Discovery issues* ............................................................ *3*

    *C. Request for Judicial Notice* ........................................... *3*

STATEMENT OF THE CASE ................................................... 4

    *A. Nature of the case* ......................................................... *4*

    *B. Facts relevant to the issues presented for review* ...................... *6*

    *C. Detailed Procedural History* ............................................ *9*

        *i. Pleadings, Responsive Pleadings, and Deadlines* ..................... *9*

        *ii. Written Discovery* ..................................................... *11*

        *iii. Depositions* ........................................................... *13*

        *iv. Settlement conference* ................................................ *14*

SUMMARY OF ARGUMENT .................................................. 14

STANDARD OF REVIEW ....................................................... 17

    *A. Untimely filings without good cause are highly disfavored* ............. *17*

    *B. Dismissals under Rule 12(b)(6) are subject to de novo review.* .......... *19*

    *C. Default judgment as a sanction for discovery misconduct* ............... *20*

    *D. Denials of leave to amend are reviewed de novo for abuse of discretion.* ........ *21*

    *E. Leave to amend is liberally granted.* .................................. *22*

ARGUMENT ...................................................................... 22

    *A. Court erred in accepting Defendant's untimely motion to dismiss, and denying Plaintiffs' request to strike said motion.* ............................... *22*

    *B. Court erred in dismissing the FAC without leave to amend* ............. *24*

    *C. Court erred in denying Plaintiffs' second motion to amend complaint.* ......... *26*

*D. The Order does not accurately reflect the Record*.................................. 28

*E. The claims should not have been substantively dismissed.* ............................... 34

   *i. Introduction* ................................................................................... 34

   *ii. Claims for Subhadra Gunawardana* ............................................ 36

   *a. Count I. Contract* ........................................................................ 36

   *b. Count II: Title VII* ....................................................................... 41

   *c. Count III: Section 1981* ................................................................ 44

   *d. Count IV: Fourteenth Amendment* ................................................ 45

   *e. Count V: Sherman Act* .................................................................. 48

   *f. Count VI: Section 1985(3)* ........................................................... 50

   *g. Count VII: ADA* ........................................................................... 51

   *iii. Claims for David Seely* ................................................................ 53

   *a. Standing* ....................................................................................... 53

   *b. Count VIII: ADA* .......................................................................... 53

   *c. Count IX: Antitrust* ...................................................................... 53

   *iv. Conclusion for this section* .......................................................... 54

*F. Plaintiffs are entitled to Default Judgment*..................................... 55

CONCLUSION AND RELIEF ........................................................... 56

CERTIFICATE OF COMPLIANCE ................................................... 57

CERTIFICATE OF SERVICE ............................................................ 57

Table of Authorities

## Cases

*Apex Colors, Inc. v. Chemworld Int'l Ltd.,* CAUSE NO.: 2:14-CV-273-PRC (N.D. Ind. Jan. 6, 2017). .................................................................................... 19

*Bd. of Trs. of Pipe Fitters' Ret. Fund v. Commercial Cooling & Heating, Inc,* No. 13 C 7731 (N.D. Ill. May 28, 2019) ........................................................ 18,19

*Blaga v. Old Dominion Freight Line, Inc.,* No. 12-cv-08049 (N.D. Ill. Jan. 28, 2014) ............................................................................................................ 20

*Blum v. Koster,* 235 Ill. 2d 21 (Ill. 2009) ........................................................ 20

*Brar and others v. B.C. Veterinary Medical Association and Osborne* (No. 22), 2015 BCHRT 151 ...................................................................................... 39, 43

*Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996) ......................... 43

*Childress v. Walker,* 787 F.3d 433 (7th Cir. 2015) ................................... 20, 36

*Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.,* 692 F.3d 580, 591 (7th Cir. 2012) ........ 19

*Dickinson v. Univ. of N.C.,* 91 F. Supp. 3d 755 (M.D.N.C. 2015) ..................... 52

*Directv, Inc. v. Massey,* No. 03 C 3492 (N.D. Ill. May 26, 2004) ..................... 19

*Dixon v. Nat'l Hot Rod Ass'n,* No. 1:19-cv-01470-JRS-DML (S.D. Ind. Mar. 29, 2021) ............................................................................................. 38, 48

*Dixon v. Nat'l Hot Rod Ass'n,* No. 1:19-cv-01470-JRS-DML (S.D. Ind. Mar. 29, 2021) .................................................................................................. 50

*DLJ Mortg. Capital, Inc. v. Stone,* 2015 Ill. App. 140813 (Ill. App. Ct. 2015) .......... 19

*Domanus v. Lewicki,* 13–2435 (7th Cir. 2014) ............................................. 21

*Elkhatib v. Dunkin Donuts,* 493 F.3d 827 (7th Cir. 2007) ............................. 44

*Erickson v. Pardus,* 551 U.S. 89, 93 (2007) ................................................. 20

*Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008 .................................. 22, 26

*Gillo v. Gary Cmty. Sch. Corp.,* CAUSE NO.:2:14-CV-99-JVB-JEM (N.D. Ind. July 31, 2014) ........................................................................................... 17

*Grady v. Ocwen Loan Servicing,* LLC, No. 11-cv-1531 (N.D. Ill. Jan. 21, 2014). 22, 28

*Hicks v. ABT Assocs., Inc.,* 572 F.2d 960, 966 (3d Cir. 1978)  514 F.2d 678, 688-689 (5th Cir. 1975) ...................................................................................... 43

*Hunt v. City of Markham,* 219 F.3d 649 (7th Cir. 2000) ............................... 44

*Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348 (7th Cir. 1987) ............... 44

*In re Text Messaging Antitrust Litigation,* 630 F.3d 622 (7th Cir. 2010) ........ 50

*Liberman v. Am. Osteopathic Ass'n,* No. 13-15225 (E.D. Mich. Oct. 29, 2014) ........ 38

*Loyola University of Chicago v. Illinois Workers' Compensation Comm'n,* 2015 IL App (1st) 130984WC .................................................................. 20

*Maynard v. Nygren,* 332 F.3d 462 (7th Cir. 2003) ....................................... 21

*Pierce v. Atchison Topeka & Santa Fe Railway Co.,* 110 F.3d 431 (7th Cir. 1997) ... 41

*Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806 (7th Cir. 2015) ........... 28

*Prizevoits v. Ind. Bell Tel. Co.,* 76 F.3d 132, 133–34 (7th Cir.1996) ............. 18

*Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015)............ 21,26, 35
*Sanjuan v. Amer. Bd. of Psychiatry Neurology*, 40 F.3d 247 (7th Cir. 1994) ........... 38
*Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701 (7th Cir. 2014) .. 18
*Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015) ................................ 20
*Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289 ... 37
*Staudinger v. Educational Comm. For Foreign Medical Graduates, No. 92-civ-8071-LJF, (S.D.N.Y. Apr. 27, 1993)* ................................................................................ 47
*United States v. Norwood*, No. 19-3273 (7th Cir. May 6, 2020) ................................ 21
*Zamani*, 1998 WL 812545 at *4 ................................................................................ 41

## Statutes

28 U.S.C. § 1291.............................................................................................................. 1
28 U.S.C. § 1404(a) ..................................................................................................... 9, 24
28 U.S.C. §§ 2106-07 ...................................................................................................... 1
42 U.S.C. § 1981 .............................................................................................................. 1
42 U.S.C. § 1985(3) ......................................................................................................... 1
48 U.S. Code § 2166 ........................................................................................................ 1
IL UCC ........................................................................................................................... 41
Sherman Antitrust Act .................................................................................................... 1
the Americans with Disabilities Act [ADA] including its amendments ...................... 1
The Civil Rights Act of 1964 ......................................................................................... 1
U.S.C. § 1331 .................................................................................................................. 1

## Rules

Circuit Rule 3(a)............................................................................................................. 1
FRAP 3(a) ....................................................................................................................... 1
FRAP 28(d) .................................................................................................................... vi
FRAP 3(a) ....................................................................................................................... 1
FRCP 12 ........................................................................................................................... 3
FRCP 12(b) .................................................................................................................... 24
FRCP 15 ........................................................................................................................... 3
FRCP 15(a)(1)(B) .................................................................................................... 27, 30
FRCP 15(a)(2) ...................................................................................................... 15, 26,27
FRCP 15(a)(3) ............................................................................................................. 6, 14
FRCP 30(b)(1) ................................................................................................................. 8
FRCP 55 ......................................................................................................................... 24
FRCP 6 ............................................................................................................................. 3
FRCP 6(b)(1)(B) ........................................................................................................... 14
FRCP 8 ............................................................................................................................. 3
FRCP 8(c) ...................................................................................................................... 36
Local Rule 15.1....................................................................................................... 16, 30

Rule 12(b)(6) ........................................................................................... 36
Rule 30(b)(1) ................................................................................... 3, 13
Rule 30(b)(6) ......................................................................................... 13

## *Constitutional Provisions*

14th Amendment of the US Constitution ...................................................... 1

# LIST OF ABBREVIATIONS

FRAP: Federal Rules of Appellate Procedure

FRCP: Federal Rules of Civil Procedure

RSA: Required Short Appendix

SA: Separate Appendix

AVMA: American Veterinary Medical Association

FAC:  First Amended Complaint

SAC: Second Amended Complaint

COE: Council on Education; The Branch of the AVMA that accredits veterinary

education programs/institutions

ECVFG: Educational Commission for Foreign Veterinary Graduates; The branch of

the AVMA that provides certification for foreign veterinary graduates

CPE:  Clinical Proficiency Examination

ADA: Americans with Disabilities Act

P: Page ID numbers in the record

p: Page numbers in any other document

## REFERENCES TO PARTIES AND COURTS

Pursuant to FRAP 28(d), Plaintiffs-Appellants are hereafter referred to as "Plaintiffs" or "Plaintiff". Each individual plaintiff may be referred to as "Subhadra Gunawardana", "Gunawardana" or "Dr. Gunawardana", and "David Seely", "Seely" or "Mr. Seely".  Defendants-Appellees are hereafter referred to as "Defendants", "Defendant", or "AVMA".   The Council on Education, the branch of the AVMA that accredits veterinary education programs/institutions, is hereafter referred to as the COE. The Educational Commission for Foreign Veterinary Graduates, the branch of the AVMA that provides certification for foreign veterinary graduates, is hereafter referred to as the ECFVG.

The United States District Court for the Southern District of Illinois is hereafter referred to as the "District Court" or "Court". The United States Court of Appeals for the Seventh Circuit is hereafter referred to as the "Seventh Circuit", "Appellate Court" or "this Court".

Page ID numbers in the record are referred to by "P" while page numbers in other documents such as appendices are referred to by "p".

# JURISDICTIONAL STATEMENT

District Court Jurisdiction: The District Court had jurisdiction as a civil action pursuant to U.S.C. § 1331 [Federal Question], due to claims arising under the following statutes: The Civil Rights Act of 1964; the 14th Amendment of the US Constitution; 42 U.S.C. § 1981; 42 U.S.C. § 1985(3); the Sherman Antitrust Act; the Americans with Disabilities Act [ADA] including its amendments; and Contract Claims pursuant to 48 U.S. Code § 2166 [Federal Subject Matter].

Appellate Court Jurisdiction: This appeal is taken from the final decision of the U.S. District Court for the Southern District of Illinois entered on January 28th, 2021, by the Honorable Nancy Rosenstengel. The United States Court of Appeals for the Seventh Circuit has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. §§ 2106-07.

The District Court entered a final appealable judgment on January 28th, 2021. This is a civil appeal as a matter of right pursuant to FRAP 3(a) and Circuit Rule 3(a). Appellants did not file a motion to alter judgment, and no issues remain unadjudicated. There are no prior or related appellate proceedings in this case. The Notice of Appeal was filed with the District Court on February 22nd, 2021.

# STATEMENT OF THE ISSUES

***A. Dismissal without leave to amend is erroneous, and Defendants' repeated failure to defend entitles Plaintiffs to default judgment.***

1. In the final order of January 28, 2021 [hereafter "the Order"] [RSA p1-33], the District Court accepted AVMA's Second Motion to Dismiss filed months past the deadline without Court's leave and without good cause for delay; Denied Plaintiffs' request to strike said motion and to grant them default judgment; and further, dismissed with prejudice Plaintiffs' First Amended Complaint [FAC] that the Court had previously reviewed and accepted while AVMA's First Motion to Dismiss was pending. Did the Court err in each of these decisions?

2. On 11/9/2020, Court denied Plaintiffs leave to amend their complaint a second time while AVMA's second motion to dismiss was pending [RSA p34]. Did the Court err in using the deadlines in an old scheduling order to deem Plaintiffs' motion untimely, and in denying a non-futile amendment because a motion to dismiss was pending? Did the Court abuse discretion in denying Plaintiffs' motion as untimely, after repeatedly accepting untimely filings from Defendant?

3. Defendant has not filed an answer to this complaint, nor a timely defense. The initial complaint was filed on February 1, 2019.  35 days after the deadline for responsive pleadings had passed, AVMA moved for an extension to file an answer. Did the Court err in granting the extension, and subsequently denying Plaintiffs' motion to vacate that order? [RSA p35]

2

4. Plaintiffs submit that all aforementioned rulings go against the standards of review for pleadings, amended pleadings, defenses, and deadlines, as set by FRCP 8, 12, 15 and 6, and by precedent.

### B. Discovery issues

5. Defendant intentionally delayed discovery until the Court threatened sanctions, and took over eleven months to produce critical documents responsive to Plaintiffs' initial requests. Said documents provided new evidence to confirm existing claims and to add the new count of breach of contract. Plaintiffs moved to amend, and the proposed amendment would have cured any conceivable deficiencies in the FAC. Did the Court prejudice Plaintiffs in not considering the discovery problems when denying the motion to amend?

6. On 12/21/2020, Plaintiffs moved to compel the deposition of a specific witness under Rule 30(b)(1), showing evidence that he is a managing agent of the AVMA. Did the Court err in denying said motion and requiring Plaintiffs to subpoena said witness? [RSA p36]

### C. Request for Judicial Notice

7. If this Appellate Court chooses to review the substantive merits of Defendants' Motion to Dismiss, Plaintiffs respectfully move for judicial notice of the proposed Second Amended Complaint [SAC] which was submitted to the District Court with copies to all parties on 11/5/2020. [SA p1-50]

3

# STATEMENT OF THE CASE

## A. Nature of the case

8. The complaint alleges violations of several statutes including the Sherman Antitrust Act; Contract laws; the Civil Rights Act of 1964; 14th Amendment of the US Constitution; 42 U.S.C. § 1981; 42 U.S.C. § 1985(3); and the Americans with Disabilities Act [ADA] including its amendments. [FAC: Dkt. #63; P411-450]

9. AVMA decides who can enter the profession of veterinary medicine in the USA, through its monopoly on accreditation of veterinary education programs/institutions and certification of graduates from non-accredited programs/institutions. Per current federal and state regulations, any veterinarian wishing to practice in the USA is required to either graduate from [or complete a specific program in] an AVMA-accredited institution, or obtain certification through the ECFVG program administered by the AVMA. [Dkt #63; ¶¶3,10,46-50, P413,415-416,426-427]

10. Dr. Gunawardana, a foreign veterinary graduate, went through the ECFVG program. During this process she suffered adverse actions, barring her from entering veterinary practice in the USA. Said adverse actions include denial of disability accommodations during the clinical proficiency exam [CPE] in 2016; erroneous failure of the CPE Anesthesia section in 2017 in violation of AVMA's stated procedures; and AVMA's denial of her appeals without evidence to support their position [Dkt #63; ¶¶4,8-20,24-26, P413-421]. Said adverse actions were a direct result of discriminatory policies and procedures [Dkt #63; ¶¶22-41, P419-425]. AVMA's policies hold foreign veterinary graduates to stricter standards than their professional counterparts

including US veterinary graduates and both foreign and US medical graduates, thus violating their equal protections under the constitution. For example: unlike in the medical field where all applicants take the same exams for US licensure, foreign veterinary graduates are subjected to several additional exams not required of their domestic counterparts [Dkt #63; P424-428, ¶¶39-53]. Such practices have caused a disparate impact in the field. The percentage of foreign veterinarians practicing in the US is much smaller than that of foreign physicians or other health professionals. [Dkt #63; P431,432, ¶¶62,63].

11. Recently discovered evidence show that certain discriminatory actions were committed specifically against Gunawardana, in violation of AVMA's stated procedures. [SAC: SA p7,19,20-23, ¶¶19,56,62-71; Dkt #92; P729, ¶¶31-34.]

12. David Seely is Dr. Gunawardana's husband, witness and assistant throughout her career and the events in question. In addition to indirect damages through his wife, Mr. Seely suffered direct harm including violation of his disability rights [Dkt #17, P184-192]. Plaintiffs allege that AVMA has abused their gatekeeping power with the express purpose of limiting the market for profit, directly through their existing monopoly, and in conspiracy with other organizations. Their policies and practices place restrictions on several groups including foreign graduates, minorities, and graduates from traditional veterinary colleges. Being part of all aforementioned groups, Dr. Gunawardana was adversely affected as a professional, through unfair denial of her entry into veterinary practice [Dkt #63; P439-443, ¶¶87-95]. Defendants' policies and practices adversely affected Mr. Seely as a patient and consumer,

through increased cost of veterinary and medical services, and through lack of access to services from a diverse group of qualified professionals. [Dkt #63, PF447-449; ¶¶106-108]

13. After exhaustion of the internal appeals through AVMA and the administrative remedies through EEOC and other agencies, Plaintiffs brought this action in the Southern District of Illinois.


## B. Facts relevant to the issues presented for review

14. The suit was filed on 2/1/2019, and dismissed on 1/28/2021. During these two years, Defendant did not file an Answer or a timely dispositive motion. 35 days after the initial deadline for responsive pleadings, Defendant requested and received an extension to answer, to which Plaintiffs objected [Dkt #20, P193-195].

15. Defendant first moved to dismiss on 6/4/2019. Plaintiffs responded in opposition on 7/4/2019. Plaintiffs moved to amend on 11/30/2019, simultaneously submitting the proposed document as required by local rules.  Court granted leave to amend on 1/6/2020, and denied Defendants' first motion to dismiss as moot.

16. Plaintiffs filed the FAC on 1/12/2020. According to FRCP 15(a)(3), the deadline for responsive pleadings was 1/26/2020. Defendants filed their second motion to dismiss on 6/22/2020 [Dkts #80,81], nearly 5 months after said deadline, without Court's leave. Plaintiffs objected [Dkt #82, ¶¶17-21, P706-707], which Court acknowledged during the status conference on 7/22/2020 [Transcript: p3, L24-25; p4, L1-3,16-18].  Plaintiffs presented their procedural objections with detailed arguments

6

and authority in their subsequent response and memorandum [Dkt #91, P716-717; ¶¶1-9; Dkt #92; P721-724, ¶¶1-13]. They also opposed on substantive grounds, including that AVMA's second motion was nearly identical to the first motion that was previously denied as moot. [Dkt #91, ¶¶10-24, P717-720; Dkt #92, ¶¶8,18-78, P725-740].

17. Defendant did not cooperate with discovery. It took over eleven months to resolve Plaintiffs' initial written discovery requests [Dkt #82; ¶¶1-12, P702-705; Dkt #98, ¶¶8-10], and Plaintiffs had to cancel Defendants' depositions due to several disagreements [Dkt #98, P763-771]. Defendants delayed discovery through actions such as submitting non-specific blanket objections, filing two motions for protective orders without good cause, repeatedly failing to produce pre-negotiated documents, and disregarding the Court's orders to produce documents [Dkt #82, ¶¶1-12]. Local rules require parties to request Court's intervention before moving to compel discovery. Plaintiffs requested intervention on two occasions [Dkts #56 and 74], followed by filing a motion to compel with Court's permission [Dkts #77,78]. Defendant did not respond to the motion to compel, and refused to produce documents until Court threatened sanctions [Dkt #86, RSA p37]. All evidence produced corroborated Plaintiffs' allegations, including Plaintiffs' version in a critical issue of dispute regarding the 2017 anesthesia exam in question [SAC ¶¶62-71,90: SA p20-23,29] [Dkt #92; ¶¶31-34,50; P729,733].

18. Upon conclusion of written discovery on 10/30/2020, Plaintiffs had new evidence to confirm their existing claims and to add the new count of breach of

contract. They moved to amend the complaint a second time [Dkt #96, P761-762], and submitted the proposed document to the Court. Court denied leave to amend [Dkt #97, RSA p34], citing deadlines from a previous scheduling order [Dkt #37,37-1] and prejudice to Defendants due to their pending motion to dismiss. Court did not cite futility, nor consider the prejudice caused to Plaintiffs by discovery delays.

19. A major factual issue in this case is the failing grade in the CPE anesthesia section in 2017. Dr. Gunawardana disputed this grade from the outset [FAC ¶¶15-19,23-28, P417-421], and wished to depose the examiner. AVMA repeatedly denied her requests for exam documents, and refused to disclose the examiner's identity [Dkt #66, P549-556; Dkt #78, ¶¶13,14, P634-635]. It was finally disclosed in the documents produced following the motion to compel. Plaintiffs attempted to depose the examiner under FRCP 30(b)(1). Defendant did not cooperate, and Plaintiffs moved to compel the witness deposition [Dkt #98]. All evidence indicate that the examiner is a managing agent of the AVMA. [Dkt #98, ¶¶26-31,34,35, P768-771]. Court denied the motion without analysis, and directed Plaintiffs to subpoena the witness [Dkt #102, RSA p36]. Plaintiffs issued subpoena and rescheduled the deposition for 2/12/2021.

20. Before the deposition could occur, the Court granted Defendant's motion to dismiss on 1/28/2021, and denied Plaintiffs claims with prejudice [Dkts #104,105].

*C. Detailed Procedural History*

### i. Pleadings, Responsive Pleadings, and Deadlines

21. Plaintiffs filed the initial complaint on 2/1/2019. AVMA returned waiver of service on 2/6/2019, and appeared through counsel on 2/14/2019. They did not file an answer by the due date of 4/8/2019.

22. On 4/5/2019, Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) which they amended on 4/10/2019. Plaintiffs responded on 4/18/2019.

23. Court denied the motion to transfer on 4/30/2019 [Dkt #15], and further ordered Plaintiff Seely to show cause for standing. Mr. Seely filed the show-cause response on 5/13/2019 [Dkt #17].

24. 35 days after the deadline for responsive pleadings, Defendant moved for an extension of time to answer the complaint [Dkt #16; 5/13/19]. Court granted the extension on 5/14/2019 [Dkt #18].

25. Plaintiffs objected to Defendant's motion as untimely, and moved to vacate the Court's order [Dkt #20; 5/16/2019]. Court denied plaintiffs' motion on 5/17/2019 [Dkt #21].

26. Defendant filed a motion to dismiss on 6/4/2019 [Dkts #22,23]. Plaintiffs filed their opposition on 7/4/2019 [Dkts #27,28].

27. Parties filed a joint motion to extend the original trial deadlines, on 8/28/2019 [Dkt #31]. Said motion was granted on 8/29/2019.

28. According to the scheduling order entered on 9/10/2019 [Dkts #37,37-1], Amended pleadings were due by 12/5/2019; Discovery was to be completed by 5/8/2020; and dispositive motions were due by 5/22/2020.

29. Plaintiffs moved to amend the complaint on 11/30/2019 [Dkt #51]. Court granted said motion on 01/6/2020, and denied Defendant's motion to dismiss as moot [Dkt #62]. Accordingly plaintiffs filed the FAC on 01/12/2020 [Dkt #63].

30. Defendant did not file any response to the FAC by the due date of 1/26/2020. They filed a motion to dismiss on 6/22/2020 [Dkts #80,81].

31. Due to the unexpected motion to dismiss, and due to outstanding discovery issues as stated below, Plaintiffs moved for a 30-day extension to respond to said motion and for a six-month extension of all deadlines [Dkt #82]. Defendant did not object [Transcript p3,L14-23].

32. Court granted said extensions on 7/22/2020 and 8/6/2020 [Dkts #86,87]. Accordingly, Plaintiffs responded to the motion to dismiss on 8/31/2020. In it they first requested to strike the motion due to procedural reasons, and also addressed all substantive issues [Dkts #91,92].

33. According to the revised scheduling order entered on 8/12/2020 [Dkt #88], Discovery deadline was re-set for 1/6/2021, and dispositive motion deadline for 1/21/2021. Under the new schedule, written discovery was completed on 10/30/2020.

34. To add a claim and strengthen the existing claims based on newly discovered evidence, Plaintiffs moved to amend the complaint for a second time on 11/5/2020 [Dkt #96].

35. Court denied said motion on 11/9/2020 [Dkt #97].

36. On 1/28/2021, Court granted Defendant's motion to dismiss, and denied Plaintiffs' claims with prejudice [Dkts #104,105].

## ii. Written Discovery

37. Pursuant to the scheduling order of 9/10/2019 [Dkt #37,37-1], both parties made their Rule 24 disclosures in September 2019. Plaintiffs served written discovery on Defendant on 9/21/2019, which included 7 interrogatories, 9 requests for production, and 74 requests for admission. Defendant did not serve discovery requests at that time.

38. Defendants submitted incomplete responses on 10/21/2019, producing no documents, objecting to all but one of the interrogatories, and moving for a protective order on specific items [Dkt #46].

39. Following Court's denial of said motion without prejudice [Dkt #50; 11/6/2019], parties conferred on 11/20/2019, where Counsel agreed to produce a redacted version of the documents for which they had requested the protective order.

40. Not having received these or any of the requested documents, on 12/23/2019 Plaintiffs moved for Court's intervention on discovery [Dkt #56], as instructed in the scheduling order.

41. In response, Defendant requested more time to produce the negotiated documents [Dkt #60; 12/30/2019]. Court granted the extension on 1/1/2020 [Dkt #61].

42. On 1/12/2020, Defendant produced part of the withheld documents, and re-filed the motion for protective order [Dkt #64]. Plaintiffs filed their opposition on 1/20/2020

[Dkt #66 and exhibits 1-6]. Court denied Defendant's motion for protective order [Dkt #75; 4/9/2020]

43. Major part of all initial discovery requests remained unanswered after 5 months. Therefore, Plaintiffs filed a second motion for Court's intervention, requesting leave to move to compel [Dkt #74, 3/5/2020], which the Court granted on 5/4/2020 [Dkt #76].

44. Plaintiffs filed their motion to compel on 6/19/2020 [Dkts #77,78, and exhibits 1-4]. Defendant did not file a response.

45. On 7/6/2020, Defendant filed a response [Dkt #83] to Plaintiffs' second motion for discovery [Dkt #74], which the Court had already ruled on [Dkt #76].

46. The Court heard the parties' positions on discovery at the status conference on 7/22/2020, and ordered Defendant to produce the withheld documents [Dkt #86, RSA p37].

47. Following some additional discussion and stipulations between the parties, Defendant produced the negotiated documents by 8/27/2020. Thus, responses to Plaintiffs' first set of discovery requests were received after 11 months.

48. Plaintiffs reviewed the documents and served a second set of discovery requests on 9/30/2020, to which Defendant responded on 10/30/2020.

49. Defendant served their written discovery requests on 8/6/2020, to which Plaintiffs responded on 9/6/2020.

### iii. Depositions

50. Plaintiffs' depositions were completed on September 23 and 24, 2020, by agreement of parties.

51. Plaintiffs attempted to conduct Defendants' depositions. In November 2020 they noticed the deposition of a key witness who, according to Defendant's discovery responses, is a managing agent of the AVMA. The witness refused to appear.

52. Plaintiffs re-noticed Defendants' deposition on 12/6/2020, asking to produce either the specific named witness under Rule 30(b)(1), or a witness with personal knowledge on ten listed topics under Rule 30(b)(6).

53. After extensive discussions, parties could not agree on several issues including the date of deposition, whether the named witness was AVMA's agent, and whether to move for an extension to resolve these disputes.

54. On 12/21/2020, Plaintiffs moved for an extension, and to compel the deposition of the named witness [Dkt #98]. Defendant opposed [Dkt #99], and Plaintiffs filed a reply [Dkt #101]. On 12/22/2020 Court granted the extension, and denied the motion to compel the witness deposition [Dkts #102,103].

55. Accordingly, Plaintiffs served a subpoena on the witness, and scheduled the deposition for 2/12/2021.

56. Before the deposition could occur, the Court dismissed the complaint on 1/28/2021 [Dkt #104].

### iv. Settlement conference

57. The settlement conference was initially scheduled for 10/17/2019, before the Honorable Mark Beatty.

58. Without an Answer to the Complaint or responses to their discovery requests, Plaintiffs did not have sufficient information to complete certain required parts of the settlement statement.

59. Therefore they moved to continue the settlement conference [Dkt #41; 10/9/2019], to which Defendants did not object [Dkt #43, 10/10/2019].

60. Court granted the extension, and the settlement conference occurred on 2/20/2020. The case did not settle.

## SUMMARY OF ARGUMENT

61. FRCP 15(a)(3) provides appropriate deadlines to respond to amended pleadings, and extensions after expiration of time are granted only by motion, for excusable neglect [FRCP 6(b)(1)(B)]. Here, AVMA's second motion to dismiss was filed nearly 5 months after the deadline without Court's leave. AVMA had access to the FAC for over 7 months, and the response deadline passed before the COVID-related lockdown. Thus, there was no good cause for delay, and Defendant presented none. Plaintiffs objected to the untimely filing first in their motion for extension, and again in detail and with authority in their response. Court's acceptance of this procedurally defective motion is erroneous.

62. Furthermore, throughout this action Defendant filed neither an answer nor a timely defense. Considering AVMA's repeated failure to defend, Plaintiffs should have received a default judgment under FRCP 55. Default judgment is also warranted due to Defendant's dilatory actions including refusal to respond to discovery and moving to dismiss immediately after Plaintiffs' motion to compel.

63. When Defendants failed to file a timely responsive pleading to the initial complaint, Court allowed a late extension citing the "*fundamental tenet of justice favoring the resolution of cases on their merits.*" However, when Plaintiffs moved to amend their complaint a second time based on new evidence, Court denied leave to amend. Reasons given were untimeliness and prejudice to Defendants because their motion to dismiss was fully briefed. This ruling is erroneous due to several reasons: First, the untimely designation is factually incorrect, as it was based on a previous scheduling order. Second, the Order incorrectly states that Plaintiffs were allowed to amend twice, when in fact they were not. Third, the new evidence came late only due to Defendants' intentional delay in producing it. Fourth, Court did not cite futility of amendment, nor specify how it would prejudice Defendant. Thus, this denial contradicts the previous ruling, and does not serve the fundamental tenet of justice favoring the resolution of cases on their merits. Denying a non-futile amendment because a motion to dismiss was pending goes against FRCP 15(a)(2), which states "*The court should freely give leave when justice so requires.*" Finally, denying Plaintiffs' motion as untimely, after repeatedly accepting untimely filings from Defendant is prejudicial to Plaintiffs.

64. The Order acknowledges that AVMA's two motions to dismiss are almost identical. The Court denied the first motion to dismiss as moot on 1/6/2020, having previously received the proposed FAC per Local Rule 15.1, and without putting Plaintiffs on notice of any deficiencies. By dismissing the same complaint a year later in response to a nearly identical motion to dismiss, the Court again contradicted its previous ruling. Neither did it consider how a nearly identical motion to dismiss could have addressed the FAC, a document considerably different from the initial complaint.

65. The Order justifies accepting Defendant's untimely motion claiming it did not prejudice Plaintiffs. It fails to acknowledge or analyze Plaintiffs' statements on how this motion prejudiced them [Dkt #92 ¶¶6-10, Dkt #91, ¶¶6,7].

66. When substantively granting Defendant's second motion to dismiss, the Court did not consider many of the counterarguments Plaintiffs had presented in their response [Dkts #91,92], or the proposed SAC which presented new evidence to counter all points in the second motion to dismiss.  Additionally, in certain instances where Plaintiffs' allegations stood unopposed and/or when Defendant failed to substantiate their points, Court crafted new arguments in favor of the Defendant.  These actions prejudice Plaintiffs, and violate the fundamental standard of viewing evidence in the light most favorable to the non-moving party.

67. Finally, the Order misrepresents the record by implying Plaintiffs' actions warranted dismissal [when in fact Plaintiffs did nothing wrong], while omitting all actions of neglect or misconduct committed by Defendants.

68. In the "Argument" section below, Plaintiffs elaborate on these issues under six topics: A. Court erred in accepting Defendant's untimely motion to dismiss and denying Plaintiffs' request to strike said motion on procedural grounds; B. Court erred in dismissing the FAC without leave to amend; C. Court erred in denying Plaintiffs' second motion to amend complaint; D. The Order does not accurately reflect the Record; E. The claims should not have been substantively dismissed; F. Plaintiffs are entitled to Default Judgment.

## STANDARD OF REVIEW

### A. Untimely filings without good cause are highly disfavored.

69. "That Answer was not, however, itself timely filed, and the Gary Schools Defendants were not granted leave to file it late." "Accordingly, the Court will strike as untimely the Gary Schools Defendants' Motion to Dismiss and their Answer." "If they wish to re-file either document, they must first file a motion requesting leave to do so as required by Federal Rule of Civil Procedure 6(b), showing good cause for the extension of time and excusable neglect for failing to act earlier. Fed. R. Civ. P. 6(b)(1)" "(3) GRANTS Plaintiff's Motion to Strike Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(a)(1)(A)(I) and 12(f) [DE 47] and STRIKES the Gary Schools Defendants Motion to Dismiss [DE 38] and Answer [DE 49]." "To conclude otherwise would effectively allow a defendant that has failed to answer to grant itself an extension of time without showing good cause or excusable neglect ." *Gillo v. Gary Cmty. Sch. Corp.*, CAUSE NO.:2:14-CV-99-JVB-JEM (N.D. Ind. July 31, 2014)

17

70. "The excusable-neglect standard is a strict one; "few circumstances will ordinarily qualify." Id. "The excusable-neglect standard "refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." Prizevoits v. Ind. Bell Tel. Co., 76 F.3d 132, 133–34 (7th Cir.1996). "The excusable-neglect standard "can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." Id. at 133 (quoting In re Cosmopolitan Aviation Corp., 763 F.2d 507, 515 (2d Cir.1985)". *Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701 (7th Cir. 2014).

71. Interpretation of whether Defendant's delay constitutes excusable neglect is subject to de novo review, under a strict standard for "few circumstances will ordinarily qualify." *Id*. "The judge accepted this explanation and granted the extension, apparently relying on the defunct "unique circumstances " doctrine. This appeal followed." "The Supreme Court has disavowed the unique-circumstances doctrine, and Satkar has not otherwise demonstrated excusable neglect for missing the appeal deadline. The appeal is untimely and must be dismissed for lack of appellate jurisdiction." *Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701 (7th Cir. 2014).

72. "No Motion was made for leave to file the out of time Answer, and it was filed without leave of court. Often, late, unauthorized filings like this will not be considered." *Bd. of Trs. of Pipe Fitters' Ret. Fund v. Commercial Cooling & Heating,*

*Inc*, No. 13 C 7731 (N.D. Ill. May 28, 2019); *DLJ Mortg. Capital, Inc. v. Stone*, 2015 Ill. App. 140813 (Ill. App. Ct. 2015).

73. "Plaintiff filed the Second Amended Consolidated Complaint on September 13, 2016. The deadline for Defendants to respond was September 27, 2016. See Fed. R. Civ. P. 15(a)(1)(3). No answer was filed. The instant Motion to Dismiss was filed on November 15, 2016, seven weeks after a response was due." "Defendants have provided no explanation for the untimely filing and have not asked the Court to extend the deadline to respond to the Second Amended Consolidated Complaint. Therefore, the instant motion is untimely and is denied on that basis." *Apex Colors, Inc. v. Chemworld Int'l Ltd.,* CAUSE NO.: 2:14-CV-273-PRC (N.D. Ind. Jan. 6, 2017).

### B. Dismissals under Rule 12(b)(6) are subject to de novo review.

74. "We review dismissals under Rule 12(b)(6) de novo.  We construe the amended complaint in the light most favorable to Citadel, accept Citadel's well-pleaded facts as true, and draw all reasonable inferences in Citadel's favor." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

75. "In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint." *Directv, Inc. v. Massey,* No. 03 C 3492 (N.D. Ill. May 26, 2004)

76. "We review a district court's findings of fact for clear error, and we review for an abuse of discretion the court's selection of dismissal or default as a sanction for

serious misconduct." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015). "Of all possible sanctions, dismissal is considered "draconian," and we must be "vigilant" in our review." *Blaga v. Old Dominion Freight Line, Inc.*, No. 12-cv-08049 (N.D. Ill. Jan. 28, 2014) "A clear abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." People v. Hall, 195 Ill. 2d 1, 20 (2000)." *Blum v. Koster*, 235 Ill. 2d 21 (Ill. 2009).

77. Interpretation of the contract claims including the waiver, and adding new contract claims on amendment is a question of law subject to de novo review. "Contract interpretation is a question of law subject to de novo review." *Loyola University of Chicago v. Illinois Workers' Compensation Comm'n,* 2015 IL App (1st) 130984WC, ¶ 23.

78. "To survive dismissal, a plaintiff's complaint "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus, 551 U.S. 89, 93* (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Specific facts are not necessary." Id. " These allegations satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8(a)(2)." *Childress v. Walker,* 787 F.3d 433 (7th Cir. 2015).

## C. Default judgment as a sanction for discovery misconduct

79. "After additional deposition-related misconduct (failing to show up for depositions), the district judge granted a motion for default judgement against the

defendants. The Seventh Circuit affirmed the default finding, holding that the defendants' discovery misconduct demonstrated "a clear record of delay or contumacious conduct," and "willfulness, bad faith or fault." *Maynard v. Nygren*, 332 F.3d 462 (7th Cir. 2003). *Domanus v. Lewicki*, 13–2435 (7th Cir. 2014).

80. "Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes sanctions, including the ultimate sanctions of dismissing a plaintiff's lawsuit or entering default judgment against a defendant, when a party "fails to obey an order to provide or permit discovery ." *United States v. Norwood*, No. 19-3273 (7th Cir. May 6, 2020).

### D. Denials of leave to amend are reviewed de novo for abuse of discretion.

81. Generally, denials of leave to amend are reviewed de novo for abuse of discretion. "When a district court denies a plaintiff such an opportunity, its decision will be reviewed rigorously on appeal. In Barry Aviation, we said that giving leave to amend freely is "especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015).

82. "Other than its summary denial of the plaintiffs motions, the district court made no determination regarding the sufficiency of the amended complaint nor did it provide any explanation for why it denied the motion to amend. See Airborne Beepers Video, Inc. v. AT T Mobility LLC, 499 F.3d 663, 666 (7th Cir. 2007)… This omission is especially notable given the district court's action in dismissing the case and

entering judgment on the same day. Accordingly, we find that the district court abused its discretion by denying the plaintiffs motion to amend without explanation." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

### E. Leave to amend is liberally granted.

83. "In fact, courts routinely grant motions to amend pleadings up to the time of, and even during, trial…The decisions in these cases almost uniformly note a preference for deciding cases on the merits." *Grady v. Ocwen Loan Servicing*, LLC, No. 11-cv-1531 (N.D. Ill. Jan. 21, 2014).

# ARGUMENT

### A. Court erred in accepting Defendant's untimely motion to dismiss, and denying Plaintiffs' request to strike said motion.

84. Defendants' motion was untimely, filed without Court's leave, and without good cause for delay. While the Order states Defendant's delay should be excused due to the pandemic, their deadline had passed long before the lockdown started, and Defendant did not cite pandemic-related hardship as a reason for their delay.  At the status conference Defendant simply stated "we were under the impression that motions were not being heard during that time." to which Court responded "Well, they were. I mean, there were some extensions granted by administrative orders, but, you know, we were still doing things on paper and having telephonic hearings." [Transcript: p4, L9-16].

22

85. This delay does not qualify for excusable neglect. 7th circuit strongly discourages untimely dispositive motions [Standard of Review ¶¶69-73].

86. Plaintiffs stated how Defendant's untimely motion prejudiced them [Dkt # 92 ¶¶6-10; Dkt #91, ¶¶6,7]. Without acknowledgment or analysis, the Order claims Plaintiffs were not prejudiced.

87. The Order states Plaintiffs waived their objection to untimeliness by not raising it during the status conference, and points Dkt #86. Said document [minute order] mentions nothing about waiving objections [RSA p37].

    a. First, Plaintiffs had already raised this objection in their motion for extension [Dkt. #82, P706-707, ¶¶17-21] which Court acknowledged during the conference [Transcript: p3, L24-25; p4, L1-3;16-18]. Plaintiffs requested more time so they could present all procedural objections with proper authority in comprehensive manner, which they did [Dkt #91, P716-717; ¶¶1-9; Dkt # 92; P721-724, ¶¶1-13].

    b. Second, there is no statute stating that a party waives their procedural objections to a motion by not presenting/re-stating them orally in a status conference. A status conference is not a hearing for the motion nor the proper venue to present multiple objections to such motion, considering the widely-recognized doctrine that arguments are waived when underdeveloped or legally unsupported. Plaintiffs requested and received extra time for that exact purpose, and should not be penalized for presenting a complete argument in writing backed by authority.

c. Third, regardless of when [or whether] Plaintiffs objected, the Court should not accept a dispositive motion filed without leave long past the deadline, particularly when Defendant had shown a pattern of untimely filings. At the time of the Order, Defendant had made 3 untimely filings [Dkts #16,80,81,83], disregarded Court's orders at least 3 times [Dkts #77-79, 86], and disregarded the rules numerous times [Dkts. #50,56,74,77,83,101].

88. Furthermore, a timely defense has never been presented. Within the initial deadline Defendant filed only a 28 U.S.C. § 1404(a) motion [Dkt #11]. They did not request a timely extension to answer or otherwise defend [Dkts #16,18,20,21]. Therefore, Defendant had already waived their right to file any 12(b) motion, and the first motion to dismiss should not have been allowed either.

89. In summary: All allegations in the complaint stand unopposed due to lack of an Answer. Defendants waived their right to defenses under FRCP 12(b) by not presenting them in a timely manner. Therefore, Plaintiffs should have received a Default Judgment under FRCP 55.

## B. Court erred in dismissing the FAC without leave to amend.

90. Having accepted Defendant's procedurally defective motion, the Court should have considered *all* points from both parties and provided a thorough analysis. Plaintiffs submit that the FAC was substantively sound, and all points presented in Defendants' motions to dismiss [Dkts #22,23, and 80,81] were fully rebutted in the

corresponding responses and memoranda [Dkts #27,28 and 91,92]. As described under section E below: The Order does not address several critical counterarguments presented in Plaintiffs' responsive memoranda. Furthermore, in certain instances where Plaintiffs' allegations stood unopposed and/or when Defendant failed to substantiate their points, the Court crafted new arguments in favor of the Defendant. These actions contradict the widely-recognized doctrine of reviewing pleadings in the light most favorable to the non-moving party.

91. Even if the FAC were defective, dismissing it without opportunity to amend is prejudicial to Plaintiffs. Dismissal with prejudice is the ultimate sanction, and Plaintiffs had committed no misconduct, violation or neglect to warrant *any* sanction, as evidenced by the record. Importantly, the Order does not state amendment is futile, and amendment should have been allowed under Rule 15(a)(2) and the fundamental tenet of justice favoring the resolution of cases on their merits. [Standard of Review ¶¶81-83]

92. If the Court deemed any claims in the FAC were pled insufficiently, Court should have considered the reason, which was Defendant's failure to timely respond to discovery. Plaintiffs had consistently stated that their allegations would be confirmed by documents requested in their initial discovery requests. And they were confirmed once Defendant produced these documents, 10 months after the deadline. Accordingly, any conceivable defects in the FAC were rectified in the proposed second amended complaint [SAC] Plaintiffs submitted on 11/5/2020, which Court denied without review. [SA p1-49]

93. "Lest we be misunderstood, a plaintiff need not provide all the level of detail provided by Megan's proposed amended complaint to survive a motion to dismiss. As detailed as the proposed amended complaint is, we recognize that plaintiff has focused on the portion of defendant's activities and statements that are publicly available. Discovery may reveal additional activities and other evidence that will inform how best to classify defendant under the statute. That is why we have explained that plaintiffs' "pleading burden should be commensurate with the amount of information available to them." See Bausch, 630 F.3d at 561 (internal quotation marks omitted), quoting In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig., 623 F.3d 1200, 1212 (8th Cir.2010) (Melloy, J., dissenting). We cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information she could not access without discovery." *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015).

## C. Court erred in denying Plaintiffs' second motion to amend complaint.

94. FRCP 15(a)(2) states that the amendment should be freely allowed "when justice so requires." Most courts have interpreted this language to require allowing amendment unless one of the following justifies denial: (a) undue delay; (b) bad faith or dilatory motive by the moving party; (c) repeated failure to cure deficiencies by previous amendments; (d) undue prejudice to the opposing party; or (e) futility." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

95. The order denying Plaintiffs' second motion to amend does not cite futility, bad faith or dilatory move, or repeated failure to cure deficiencies [Dkts # 96,97, RSA p34]. It denied Plaintiffs' motion as untimely, and because "AVMA's motion to dismiss is fully briefed". However:

a. AVMA's motion was untimely to begin with, and should not have been allowed due to its many procedural defects as stated above.

b. A pending motion to dismiss is not a good reason to deny leave to amend, considering that FRCP 15(a)(1)(B) allows amendment while a 12(b) motion is pending, and FRCP 15(a)(2) states "The court should freely give leave when justice so requires."

c. Court deemed Plaintiffs' motion to amend untimely, citing the deadlines in the *old* scheduling order from 9/10/2019 [Dkt #37]. According to the revised scheduling order entered on 8/12/2020, Discovery deadline was 1/6/2021 and Dispositive motion deadline was 1/21/2021, with the presumptive trial month in May 2021 [Dkt #88].

d. While the revised order did not specify a deadline for amended pleadings, it should have been automatically extended[1], considering discovery was far from over, and a dispositive motion was currently pending.

---

[1] "The district court set a dispositive motion deadline for August 18, 2013. On August 19, the BCSC filed a motion for an extension of time; the title of the motion requested an extension of time for both discovery and dispositive motions, but the text of the motion did not address the dispositive motion deadline. In response, the district court extended

e.  Even if that deadline were not extended, late amendments are allowed with the preference to decide cases on their merits. *Grady v. Ocwen Loan Servicing*, LLC, No. 11-cv-1531 (N.D. Ill. Jan. 21, 2014).

### D. The Order does not accurately reflect the Record.

96. Conspicuously omitted from the Background [RSA p3-4] are the facts that Defendant did not answer the complaint within the initial deadline; their first request for extension was untimely; and their second motion to dismiss was several months late [Procedural history].

97. The statement "This Court—as well as Magistrate Judge Beatty—has granted Dr. Gunawardana and Mr. Seely's multiple extensions and requests to continue

---

the deadline for discovery until September 18, 2013, but stated in its order that its extension of the discovery deadline did not affect the deadline for dispositive motions (which remained August 18, 2013). On September 18, 2013, the BCSC filed a motion for summary judgment on all of Mr. Preddie's claims. On September 30, the district court issued an order to show cause asking the BCSC to explain the late filing of its summary judgment motion. The BCSC subsequently filed a motion for leave to file a belated motion for summary judgment. On October 15, the district court granted the BCSC's request to file a belated motion for summary judgment; the district court found that the BCSC mistakenly believed that the deadline for dispositive motions had been extended to September 18, 2013, and that the belated motion for summary judgment was filed in good faith.*" Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806 (7th Cir. 2015).

(Docs. 41, 82, 98)." [RSA p6] implies that Plaintiffs requested unilateral extensions due to neglect on their own part. This is not the case.

   a. First, out of the six extensions granted in this case, three were requested by Plaintiffs [Dkts #41,82,98], two by Defendants [Dkts #16,60,61], and one jointly [Dkt #31]. Parties agreed on these extensions except for Plaintiffs' last request and Defendants' first request.

   b. Second, *none* of the delays in this case were due to neglect on Plaintiffs' part, but due to Defendant's lack of cooperation with discovery, which eventually caused the Court to threaten sanctions [Dkts #82,86, RSA p37]. As stated in detail in their motions for extension [Dkts #41,82,98-101] and discovery [Dkts #56,74,77,78], Defendant's actions prevented Plaintiffs from meeting upcoming deadlines. In each situation, Plaintiffs met the deadlines by timely requesting and receiving an extension.

   c. The Court has accepted several untimely filings from Defendant [Dkts #16,80,83], and allowed Defendant to delay discovery by many months without consequence. Plaintiffs never filed anything untimely, or violated any rules. By dismissing the complaint in consideration of Defendant's procedurally defective motion, Court has held the pro se Plaintiffs to a much higher standard than the corporate Defendant.

98. The Order states: "Additionally, this Court has even allowed Dr. Gunawardana and Mr. Seely to amend their complaint while AVMA's First Motion to Dismiss was

pending (Doc. 51)." [RSA p6]. Allowing amendments while a motion to dismiss is pending is not an extraordinary circumstance, but the norm [FRCP 15(a)(1)(B)]. "In fact, courts routinely grant motions to amend pleadings up to the time of, and even during, trial" *Grady v. Ocwen Loan Servicing*, LLC, No. 11-cv-1531 (N.D. Ill. Jan. 21, 2014).

99. The next statement "Not only has this Court extended deadlines and granted Dr. Gunawardana and Mr. Seely's requests to continue, but their amended complaint was not filed until January 2020." implies that Plaintiffs were late or neglectful in filing the FAC. This is not the case.

    a. Plaintiffs moved to amend on 11/30/2019 [Dkt # 51], well within the due date for amended pleadings set by the ***first*** scheduling order [Dkts #37,37-1; 9/10/2019], and submitted the proposed document to the Court as required by Local Rule 15.1. Court granted leave to amend on 1/6/2020 [Dkt #62]. Plaintiffs filed the amended complaint six days later, on 1/12/2020 [Dkt # 63].

    b. Thus, there was no undue delay on the Plaintiffs' part, and no delay was mentioned by either Court or Defendant. Furthermore, they had good cause to amend including new information received from Defendant's discovery responses so far, and clarifying Seely's standing [considering they had not yet received a ruling on the show-cause response filed on 5/13/2019-Dkt #17].

100. The Order implies AVMA had good cause or excusable neglect "due to the impact of COVID-19". This is incorrect.

a. AVMA's responsive pleading was due on 1/26/2020, well before the pandemic lockdown and the consequent extension of deadlines. The Order acknowledges this fact: "…*AVMA's response became due before this Court extended the deadline because of COVID-19*" [RSA p6].

b. Defendant did not cite the hardships from COVID-19 as a reason for their delay [Transcript p4, L1-18]. They were apparently not impacted, considering that AVMA attended the settlement conference in person on 2/20/2020, a few weeks after the response deadline.

c. Importantly, AVMA did not request an extension before the deadline expired in January, nor did they seek Court's leave to file an untimely motion to dismiss. The order does not address these issues.

d. Finally, if the Court chose to accept an untimely filing from Defendant due to "the impact COVID-19 had on the parties", shouldn't Plaintiffs get the same courtesy to amend their complaint in response to said late filing?

101. The Order claims Plaintiffs were not prejudiced because "Dr. Gunawardana and Mr. Seely had two opportunities to address or resolve the issues in their complaint."[RSA p7]. **This is factually incorrect**. Plaintiffs were allowed to amend only one time. Having reviewed the proposed FAC submitted on 11/30/2019, Court approved it on 1/6/2020 [Dkt. #62], and did not put Plaintiffs on notice of any deficiencies. If there were such glaring deficiencies as to dismiss the whole complaint, then the Court prejudiced both parties by accepting the FAC with no analysis and allowing discovery to proceed for another year.

31

102. However, Plaintiffs pose that there were few or no deficiencies, and the complaint should not have been dismissed. As described in detail in Plaintiffs' responses and memoranda to each motion to dismiss [Dkts #27,28,91,92], most points presented by AVMA are invalid, and any deficiencies previously present were corrected. As pointed out in the Section E below, the Order does not analyze many points presented in Plaintiffs' responsive memoranda.

103. Here the Court concludes that the FAC did not correct deficiencies, but does not state that amendment is futile. Instead, by claiming, albeit incorrectly, that "Dr. Gunawardana and Mr. Seely had two opportunities to address or resolve the issues in their complaint." Court implies repeated failure to cure deficiencies as a reason to deny leave to amend. However, there was *no* repeated failure. Plaintiffs amended once before, and Court accepted the amendment without pointing out any deficiencies. Plaintiffs' second motion to amend was denied, again incorrectly.

104. In their proposed SAC submitted on 11/5/2020, Plaintiffs corrected any conceivable deficiencies in the FAC using newly discovered evidence. Said evidence was "new" only due to Defendants long delay in responding to Plaintiffs initial discovery requests. When denying Plaintiffs' second motion to amend [Dkt #96], Court did not cite futility, bad faith, or repeated failure to cure deficiencies [Dkt #97, RSA p34]. Instead, the denial implied untimeliness, and cited prejudice to defendant due to the fully briefed motion to dismiss. The former is incorrect, as the deadline cited is from the previous scheduling order. The latter also incorrect, considering that neither Defendant nor the Court explained *how* this non-futile amendment would

prejudice Defendant. Case law consistently states that amendments should be liberally granted in the interest of justice.

105. The Order states Plaintiffs waived their objection to untimeliness by not raising it during the status conference [RSA p7]. It points to Dkt #86, which mentions nothing about waiving objections [RSA p37].

    a. First, Plaintiffs had already raised this objection in writing **_prior to_** the status conference, in their motion for extension [Dkt. #82, P706-707, ¶¶17-21], which the Court acknowledged [Transcript: p3, L24-25; p4, L1-3;16-18].

    b. Plaintiffs requested more time so they could present all their procedural and substantive objections with proper authority in a clear and comprehensive manner, which they did in their response to the motion to dismiss [Dkt #91, P716-717; ¶¶1-9; Dkt #92; P721-724, ¶¶1-13].

    c. There is no statute stating that a party waives their objections to the timeliness of a motion by not presenting it orally in a status conference. To Plaintiffs' knowledge, a status conference is not a hearing for the motion, and not the proper venue to present objections particularly when such objections should be backed by authority. Plaintiffs should not be penalized for presenting a complete argument in writing backed by authority.

    d. Importantly, even if Plaintiffs had waived their objections, the Court should not accept a dispositive motion filed without leave many months past the deadline, particularly when Defendant had shown a pattern of untimely filings. At the time of the Order, Defendant had made 3 untimely filings [Dkts

#16,80,81,83], disregarded Court's orders at least 3 times [Dkts #74,77-79, 86], and disregarded rules numerous times [Dkts #50,56,74,77,83,101].

106. Dismissing the complaint without leave to amend in response to Defendant's untimely dispositive motion is prejudicial to Plaintiffs. This is the ultimate sanction, and Plaintiffs reiterate that they have committed no actions of neglect or misconduct to warrant *any* sanctions.

### E. The claims should not have been substantively dismissed.

#### i. Introduction

107. Plaintiffs submit that the FAC was substantively sound, and all points presented in Defendants' motions to dismiss [Dkts #22,23, and 80,81] were fully addressed in the corresponding responses and memoranda [Dkts #27,28 and 91,92].

108. Importantly, new evidence received after filing of the FAC would have resolved all arguments in Plaintiffs' favor. Plaintiffs presented these matters in their response [Dkts #91,92]. The Order does not analyze or even mention them. Furthermore, in certain instances where Plaintiffs' allegations stood unopposed and/or when Defendant failed to substantiate their points, the Court crafted arguments in favor of the Defendant.   These actions violate the fundamental standard of viewing evidence in the light most favorable to the non-moving party.

109. Defendants' wrongful conduct, and the harm suffered by Plaintiffs as a result, are described in detail in the factual background section of the FAC [Dkt. #63 ¶¶8-

53]. Stating a claim should not require repetition of these facts under each count. Current Federal Rules do not require code pleading, only factual allegations that give the defendant fair notice of the claim for relief and show the claim has substantive plausibility [Dkt. #92 ¶¶17-20, P724-726].

110. "The conclusion that Megan needed to allege in her complaint facts supporting specific legal theories was problematic, to say the least. Even after Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Federal Rules of Civil Procedure do not require code pleading. Under the old pre-Rules regime of code pleading, plaintiffs were required to plead the elements of a cause of action along with facts supporting each element. Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.) (describing code pleading as requiring "the pleader [to] set forth the 'facts' constituting a 'cause of action' "). Under the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has "substantive plausibility." Johnson v. City of Shelby, ⸺ U.S. ⸺, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (per curiam). As explained in Johnson: Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015).

111. "To survive dismissal, a plaintiff's complaint "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' "Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Specific facts are not necessary." Id. Here, Mr. Childress alerts Assistant Warden Bates to his claim and to the basis of that claim: Assistant Warden Bates, as "Assistant Warden of Pro-grams," was familiar with the practices of the Lifestyle Redirection Program; he knew that the practices of the Lifestyle Redirection Program, or of similar programs, were causing recently released inmates to lose their freedom, but did nothing to prevent this harm; indeed he "continued to adhere to[ ] and follow these same policies, practices, and procedures all to the detriment and deprivation of the plaintiff [']s Constitutional Rights." These allegations satisfy the notice pleading requirement of Federal Rule of Civil Procedure 8(a)(2)". *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015).

### ii. Claims for Subhadra Gunawardana

*a. Count I. Contract*

112. Here, Defendant presented, and Court agrees, that all claims are released by the waiver [RSA p7-11]. First, waiver is an affirmative defense to be raised in an Answer [FRCP 8(c)], which Defendant never filed. Court should not have considered this defense improperly presented in a Rule 12(b)(6) motion.

113. In any event, the Order does not analyze the cases Plaintiffs presented stating that, in Illinois, exculpatory clauses are not favored and must be strictly

construed against the drafter, or that liability releases can be invalidated due to disparity of bargaining power [Dkt #92, ¶¶21,23,24; Dkt #28, ¶¶28-31]. For example, "Our research shows several sister states considering exculpatory clauses between an educator and a student have held such clauses are categorically void as matter of public policy. See Wagenblast v. Odessa School District No. 105–157–166J, 110 Wash.2d 845, 758 P.2d 968, 971–73 (Wash.1988)" *Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289.

114. Relying solely on *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 249 (7th Cir. 1994), the Court deems Defendant exempt from such standards because they are a "certifying organization". Plaintiffs repeatedly stated why AVMA/ECFVG is unlike the other stand-alone certifying organizations Defendant compared itself to. [Dkt #28 ¶¶26,27,39,40,63-67; Dkt #92, ¶¶25,26,37]. AVMA is equivalent to USMLE/NBME/ECFMG taken together [FAC ¶¶42-53], which do not have waivers, and are sued.

115. Unlike the psychiatry board exam in *Sanjuan*, the ECFVG certification is an economic necessity [Dkt. #92, ¶¶25,26,29]. Foreign graduates cannot get licensed to practice without it. AVMA is the sole decision-maker on the *pre-requisites* for veterinary licensure in North America [FAC ¶¶3,10,42-53]. Furthermore, the ECFVG certificate alone qualifies candidates for some positions in the veterinary field, so it has economic value independent of the license. "[Illinois] courts can review the application procedures of a private association when membership in the organization is an economic necessity. We approve of the opinions . . . hold[ing] that

a medical society cannot arbitrarily deny membership to an applicant when the society controls access to local hospital facilities and thus can deprive the applicant of his ability to practice medicine." *Liberman v. Am. Osteopathic Ass'n,* No. 13-15225 (E.D. Mich. Oct. 29, 2014).

116. The Court acknowledges the economic necessity argument, but incorrectly applies the standards in *Peoria* to review AVMA's actions. AVMA/ECFVG is not a "voluntary association" equivalent to the Board of Psychiatry or the Academy of Orthopedic Surgeons that provide continuing education to candidates already admitted to the profession. Instead AVMA is a gatekeeper equivalent to USMLE/NBME, who provides ***required*** credentials to enter a profession [FAC ¶¶42-53], therefore that standard should not apply. This difference should have been evident from the FAC, which described AVMA's gatekeeping function at length [FAC ¶¶3,10,42-53]. "But both plaintiffs are successful practitioners, and in their reply brief they stoutly deny that they are trying to make the showing required by Treister." *Sanjuan v. Amer. Bd. of Psychiatry Neurology*, 40 F.3d 247 (7th Cir. 1994). Unlike the plaintiffs in those cases, Dr. Gunawardana is not admitted to practice.

117. Further, covenants not to sue can be upheld only regarding certain aspects, and cannot go counter to public policy. "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law". *Dixon v. Nat'l Hot Rod Ass'n,* 450 F. Supp. 3d 831 (S.D. Ind. 2020).

118. As the cases above show, waivers cannot shield Defendants from acts of negligence or intentional, deliberate or wanton behavior. They protect the creator of the contract from known, reasonable, foreseeable dangers. For example, a waiver may properly protect the AVMA in the event of a dog-bite or needlestick injury during the exam. It should not give them carte blanche to take adverse actions against candidates in arbitrary, unreasonable and non-transparent ways, and to deprive candidates of their constitutional rights.

119. Unlike the above cases, the FAC is not merely about an exam. It presents the fundamental question of inequality. The waiver is just one mechanism that enables such inequality. As *Brown* proved, any type of segregation is a feeding ground for bias and discrimination. AVMA segregates specific groups based on national origin to take exams not required of their peers. The medical field did away with such segregation decades ago, and now all applicants take the same exams. In Canada where the veterinary profession is regulated similar to the USA, a human rights tribunal found that a separate English exam is a human rights violation: "[993] In summary, I find that the BCVMA was engaged in race-based systemic discrimination." [1018] I find that Dr. Sidhu suffered an adverse impact as a result of the BCVMA's English Language Standard and that race was a factor in this adverse treatment." *Brar and others v. B.C. Veterinary Medical Association and Osborne* (No. 22), 2015 BCHRT 151.

120. Even if the *Peoria* standard were to apply, Plaintiffs had amply shown that Defendant's decisions were "arbitrary and unreasonable", and not supported by substantial evidence. The entire basis of the complaint was that Defendant's adverse

actions against Gunawardana were arbitrary, unreasonable, and unsupported by evidence. [FAC ¶¶15-19,24-29,35-40, P417-418,420-425] Briefly: Since the CPE anesthesia section in November 2017, Dr. Gunawardana consistently stated that the examiner erred, the failing grade was erroneous, and additional evidence sought in discovery would corroborate her position [FAC ¶¶16,17; Dkt #63-1, P458]. After much resistance, Defendant finally produced some of the documents related to the exam, which confirmed her allegations and gave rise to the additional claim of breach of contract. This evidence confirms not only that Defendant's actions were arbitrary and unreasonable, but that they were intentional.[2] Plaintiffs' motion for extension described this situation [Dkt #82 ¶12b], and stated their intent to move for summary judgment upon receipt of confirmatory evidence. Dkt. #92, ¶¶31-34[P729] demonstrate how AVMA's actions were arbitrary and unreasonable, and request leave to amend to add the count of Breach of contract.  Court does not analyze this point at all.

121. The Order further states that the contract claim is dismissed because IL UCC applies only to transactions involving goods, not services. It does not address Plaintiffs' rebuttal, which stated that the contract includes both goods and services;

---

[2] "Documents produced by Defendant after the filing of the FAC demonstrate that AVMA breached their own written policies and procedures. Specifically, this new evidence shows that the failing grade in question was erroneous; it was conferred in violation of the Anesthesia MOA and Examiners' Instructions; and that ECFVG officials took intentional steps to uphold the failing grade and conceal critical facts from Dr. Gunawardana on several occasions." [Dkt. #92, ¶¶31]

the ECFVG certificate qualifies as a "good" under the IL UCC; that the contract claims are not limited to IL UCC but are grounded in common law; and that the unconscionable contract claim was adequately pled with factual allegations [Dkt #92, ¶¶27-30, P728]

*b. Count II: Title VII*

122. First, the *Getachew v. Partylite Worldwide, Inc.* standard should not apply here: There, the waiver was direct, specifying defendants would be released from federal and state employment statutes. The instant waiver does not. Further, this was not a question of law but one to be tried by jury. The court in *Pierce* concluded "Twice a jury has concluded that a release signed by Eugene Pierce in favor of his former employer, Santa Fe Railroad Co. ("Santa Fe "), did not constitute a knowing and voluntary waiver of his rights under the Age Discrimination in Employment Act ("ADEA")." *Pierce v. Atchison Topeka & Santa Fe Railway Co.*, 110 F.3d 431 (7th Cir. 1997).

123. While Order acknowledges that a broad reading of Title VII should apply here, it incorrectly dismisses the claim stating AVMA is neither an employment agency nor labor organization [RSA p11-15].

124. Defendant's motion did not deny that AVMA was a labor organization. The Court created an argument for the Defendant, by applying a particularly narrow definition for a labor organization from *Zamani*, 1998 WL 812545 at *4. *Zamani* should not apply here because, as stated before, AVMA with its varied functions and

ultimate gatekeeping power is not equivalent to other stand-alone professional certification organizations with limited function [Dkt. #92, ¶¶37,38, P730].

125. AVMA fits into the definition of labor organization under Title VII, which **does not require** that "[o]nly those organizations that deal directly with employers concerning working conditions are considered labor organizations."

126. Even if such a requirement were applied, AVMA's functions as stated in their website include advocating for veterinarians and protecting, promoting advancing the needs of all veterinarians [FAC ¶60, P430]. These functions would automatically include improving working conditions. Facts with any more specificity should not be required at this stage, considering that Defendant **did not** dispute they were a labor organization.

127. As to being an employment agency, Defendant's only argument was that "nonprofit professional certification organizations such as the AVMA do not constitute "employment agencies" under Title VII". Plaintiffs rebutted this [Dkt. #92; ¶37, P730], which Court did not analyze.

128. The Court further stated: "Count II must be dismissed because there are no allegations that AVMA discriminated against Dr. Gunawardana based on her race, color, religion, sex, or national origin. Dr. Gunawardana, instead, asserts discriminatory policies and practices against foreign veterinary graduates."

129. The complaint described how the AVMA discriminates against foreign veterinary graduates, and how Gunawardana was harmed as a direct result of these discriminatory policies [FAC ¶¶4,19,24-41,46,62-64,110, P417-426,431-432,449;

Factual Background in general]. Discrimination against foreign graduates *is* precisely based on their national origin, and Gunawardana was discriminated against specifically due to being a foreign graduate.  In Canada where the veterinary profession is regulated similar to the USA, a human rights tribunal found that a separate English exam is a human rights violation: "[993] In summary, I find that the BCVMA was engaged in race-based systemic discrimination." [1018] I find that Dr. Sidhu suffered an adverse impact as a result of the BCVMA's English Language Standard and that race was a factor in this adverse treatment." *Brar and others v. B.C. Veterinary Medical Association and Osborne* (No. 22), 2015 BCHRT 151.

130. The Court created additional arguments for Defendant, stating "…there are still questions of the scope of Dr. Gunawardana's EEOC charges, and whether they are properly before this Court." This does not apply, since Defendant never disputed receipt of the original Right to sue letter in 2018, nor questioned the scope of charges [which were the same as stated in the complaint]. Further: "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co*., 97 F.3d 200, 202 (7th Cir. 1996). "A limited EEOC investigation is not necessarily fatal to a complaint that contains allegations like or reasonably related to the EEOC charge but that the EEOC , for some reason or another, failed to investigate." *Hicks v. ABT Assocs., Inc*., 572 F.2d 960, 966 (3d Cir. 1978);  ., 514 F.2d 678, 688-689 (5th Cir. 1975).

*c. Count III: Section 1981*

131. In its motion Defendant erroneously claimed that Plaintiffs' Section 1981 claims were based solely on national origin, when in fact they specifically alleged race discrimination: "Dr. Gunawardana, a US citizen originally from Sri Lanka, is part of a protected class due to ***race*** under 42 U.S.C. § 1981." [FAC¶66]. Court dismissed Plaintiffs' Section 1981 claims without analyzing any of the counterarguments presented in the response [Dkt. #92, ¶¶43-47, P732,733].

132. Here the Court acknowledges Plaintiffs' allegations on national origin discrimination, whereas it dismissed the Title VII claims citing lack of any allegations of discrimination. This is contradictory. In any event, Plaintiff alleged discrimination based on both national origin [FAC¶¶58-65] and race [FAC¶¶66-69], showing with evidence that the veterinary profession is the "whitest" profession in America. "The evidence that we have summarized created a triable issue of whether, but for the plaintiffs' race, they would have received raises or perks, or both, in 1996 and 1997." *Hunt v. City of Markham*, 219 F.3d 649 (7th Cir. 2000). Holding that individuals need not be completely identical in order to be similarly situated. *Elkhatib v. Dunkin Donuts,* 493 F.3d 827 (7th Cir. 2007). Further, the Court should have let a jury resolve those issues. *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348 (7th Cir. 1987).

133. Finally, Court presented additional case law that Defendant did not cite, and created new arguments that Defendant did not present, with the sole purpose of dismissing the claim. This is an abuse of discretion.

*d. Count IV: Fourteenth Amendment*

134. Defendant's motion did not rebut specific points in the FAC. Again, Court improperly made Defendant's argument for them, subsequently concluding that AVMA is not a state actor and Gunawardana had no property interest. Even so, the Order does not analyze or rebut the following major points in Plaintiffs' Response:

135. "Here, Defendant claims only that the AVMA is not a state actor because licenses are issued by states, while intentionally omitting ECFVG's relationship to the state licensing boards. ***The ECFVG was formed at the request of the state boards,*** as repeatedly stated in AVMA's own publications recently produced in discovery. Thus, state governments have clearly "influenced, encouraged, and/or coerced" not only the performance but the very existence of the ECFVG, making them a state actor beyond doubt. The motion does not address AVMA's excessive entwinement with the state boards either." [Dkt #92, P733, ¶50]

136. "Veterinary licensure, the document conveying the right to practice veterinary medicine, is widely accepted to be a property interest. The ECFVG certificate which is a pre-requisite for such licensure is a property interest in the same principle. Furthermore, ECFVG certification alone qualifies candidates for certain types of employment so it has economic value independent of the license." [Dkt #92, P734, ¶53].

137. Court's statement "Without completing the CPE, Dr. Gunawardana has not earned the ECFVG certification. Without the ECFVG certification, Dr. Gunawardana is not *entitled* to a veterinary license…" disregards the critical facts that: The ECFVG

program is unfair, non-transparent and unregulated [FAC ¶¶23-53, P419-428]; its very existence violates the equal protections of foreign veterinary graduates, who are required to complete this additional set of exams not required of their domestic counterparts, for the common goal of US veterinary licensure [FAC ¶¶84-86, P438-439], and finally, Defendant has not proven that Gunawardana failed the exam [SA ¶¶19,62-68, p7,20,23].

138. Court's conclusion "But nothing in the complaint or briefing reaches the ultimate issue: whether AVMA makes the sole decision to issue a veterinary license. Like the medical board in *Sanjuan*, 40 F.3d at 250, AVMA issues certifications—not licenses to practice veterinary medicine." misses the critical points that, AVMA makes the sole decision on the *pre-requisites* for veterinary licensure, without which no veterinarian, foreign or domestic, can apply for licensure [FAC ¶75, P435], and that AVMA is quite different from other certifying boards.

139. The *Sanjuan* standard does not apply here, since AVMA not merely a "certifying board". As the Order acknowledges [RSA p18], AVMA is the sole accreditor of veterinary education, a gatekeeper for federal funding, and is pervasively entwined with state and federal governments. These facts alone suffice to survive dismissal on this issue, while new evidence provides solid proof that they are a state actor [SA p29, ¶90; Dkt #92, P733, ¶50]

140. Furthermore, Plaintiffs previously explained in detail how AVMA/ECFVG functionally differs from ECFMG or the other certification organizations Defendant compared itself to, and the "certification" is not equivalent in the two situations. [Dkt

#28 ¶¶63-67][3] All of Defendant's arguments were addressed in detail in the response memorandum [Dkt #92, ¶¶48-53, incorporating by reference Dkt #28: ¶¶63-73].

---

[3] "63. Defense is misconstruing *Staudinger*, erroneously implying that ECFVG is similar to ECFMG in every fashion. While they may have some similar functions, their operation, organizational structure and impact on the field and licensure are quite different.

64. As stated in *Staudinger v. Educational Comm. For Foreign Medical Graduates, No. 92-civ-8071-LJF, (S.D.N.Y. Apr. 27, 1993)* ECFMG is "a private, not-for-profit organization, which through its certification program assesses the readiness of a foreign medical school graduate (FMSG) to enter residency or fellowship programs in the United States. ECFMG is not a subdivision of or affiliated with any governmental entity, its Board of Trustees receives no funding from any governmental entity, no individual from defendant New Jersey State Board of Medical Examiners (NJSBME) sits on ECFMG's Board of Trustees, and it sets its own standards for an FMSG's eligibility to take the United States Medical Licensing Examination (USMLE)."

65. ECFMG is a stand-alone entity who does not conduct testing but only verifies the candidates' eligibility to sit for the national licensing exam. Further, they are not part of or affiliated with any government entity, receive no government funding, and no individual from defendant New Jersey State Board of Medical Examiners (NJSBME) sits on ECFMG's Board of Trustees.

66. In contrast, the ECFVG is a critical decision maker through its exam process, and it is not a stand-alone entity but clearly part of AVMA; they are also board members on state veterinary boards across the country, affiliated with the USDE, and the military. They reside in state veterinary boards and associations, in government agencies across North America, while retaining their voting rights in AVMA; those who administer PAVE and NAVLE are also AVMA members; they receive government funds directly or indirectly, and make decisions on allocating government funds. Such entwinement with state entities, and its role in receiving and distributing government funds, makes AVMA (and ECFVG by proxy) a state actor subject to the Fourteenth Amendment.

*e. Count V:* Sherman Act

141. The FAC alleged, with evidence, AVMA's monopolization of the veterinary market and their anti-competitive conduct against certain groups of veterinary professionals. [FAC ¶¶3,89,90,94,95]. It also alleged a conspiracy that further contributes to such anti-competitive conduct [FAC ¶¶ 5,6,92-95].

142. Any entity with the sole authority to decide who enters a given market, at the same time being comprised of active players in the same market, automatically has the power to exclude competition and control prices. The FAC described how AVMA meets these criteria [FAC ¶¶3-6,10,42-53] and how AVMA's written policies actively restrict the entry of foreign veterinarians into the market [FAC ¶¶22-41]. These facts alone meet the elements of a Section 2 Sherman Act claim. "But the Court finds that the SAC's antitrust portions say enough to state a claim." *Dixon v. Nat'l Hot Rod Ass'n*, No. 1:19-cv-01470-JRS-DML (S.D. Ind. Mar. 29, 2021).

143. The Court concluded that Plaintiff did not allege higher prices to consumers, and "in fact pleads the opposite". This is incorrect. First, the FAC alleges increased prices/costs to consumers at least 6 times [FAC ¶¶5,6,93-95,107]. Second, flooding the

---

67. According to the Defendants' own statement, AVMA, COE, and ECVFG are one entity that cannot "conspire against itself". If so, ECFVG cannot be a separate independent entity as they claim now. AVMA is a state actor because: They exercise a right or privilege created by the state or by a rule of conduct imposed by the state (paragraphs 59-62 in this response); they are a Title IV gatekeeper; there is excessive entwining with government agencies; they receive federal funding and make decisions on allocating federal funding. Therefore Defendants are subject to the fourteenth Amendment."

market by conspiracy participants does not exclude price increases to consumers. Flooding the market by a certain group of veterinarians actually increases the costs to consumers [FAC ¶¶94,95], and more importantly, it is an unethical means of restricting the market against other groups of veterinarians [FAC ¶¶89-94].

144. The Court further concluded that Plaintiff did not allege AVMA's monopoly power in any market. FAC ¶¶3,89,90,94,95 states how AVMA has a monopoly on the veterinary market. Briefly: "The AVMA is also the sole authority on accrediting veterinary education institutions/programs. By deciding at their sole discretion, which programs/institutions are accredited and which graduates from non-accredited institutions are certified, the AVMA effectively controls who can enter the market." Such monopoly already existed, and is independent of AVMA's conspiracy with Banfield system and certain vocational model veterinary schools to restrict the market against specific groups of veterinarians.

145. Defendant's motion did not deny AVMA's monopoly in the veterinary field, except to mention the PAVE program as an alternate path for foreign graduate certification. Plaintiffs pointed out that the PAVE is still under the ultimate control of AVMA; PAVE is not accepted in many states including Missouri where Plaintiff resides; and importantly, that the monopoly is on the *whole* veterinary profession not just foreign graduate certification [Dkt #92, ¶¶58-60]. Neither Defendant nor the Court have rebutted these points.

146. "The Court did note in its previous order that "NHRA events and NHRA member tracks are not a market," (ECF No. 34 at 38), and NHRA seizes onto this

language to argue that Plaintiffs still have not pleaded that NHRA controls prices or excludes competition. However, Plaintiffs have pleaded that NHRA-controlled tracks comprise at least 90 percent of viable tracks, (SAC ¶ 197, ECF No. 42), that tracks capable of hosting the two-seater dragster are scarce essential facilities, (id. ¶ 199), and that NHRA "sets prices by using its unfettered control" over almost all viable tracks, (id.). As a whole, the complaint is not simply stating the fact—inconsequential by itself—that NHRA controls its own tracks and events." *Dixon v. Nat'l Hot Rod Ass'n*, No. 1:19-cv-01470-JRS-DML (S.D. Ind. Mar. 29, 2021)

147. "the complaint in this case alleges that the four defendants sell 90 percent of U.S. text messaging services, and it would not be difficult for such a small group to agree on prices and to be able to detect "cheating" (underselling the agreed price by a member of the group) without having to create elaborate mechanisms, such as an exclusive sales agency, that could not escape discovery by the antitrust authorities." *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010)

*f. Count VI: Section 1985(3)*

148. In addition to the conspiracy alleged under Count V, here Plaintiffs alleged that: due to various reasons stated, a conspiracy within AVMA members, within its committees, and/or between AVMA and outside entities, is more than plausible; that AVMA should not be shielded by intracorporate conspiracy doctrine; and that "The purpose of depriving a class of persons of equal protection of the laws or of equal privileges and immunities under the laws" is evident in AVMA's policies and

procedures which place a greater burden on foreign graduates [FAC ¶¶97-99]. Defendant's only rebuttal was that a corporation cannot conspire with itself, which Plaintiffs had already addressed in their previous response [Dkt #28, ¶¶45-47].

149. Court dismissed this claim stating that "Dr. Gunawardana fails to plausibly allege any conspiracy" and "Dr. Gunawardana provides no basis for inferring that Banfield or other entities agreed, explicitly or implicitly, with AVMA to deprive her of equal protection of the laws." Again, the major basis of the complaint is AVMA's intent and actions to deprive foreign veterinary graduates of equal protection of the law, as evident from their policies and practices [Dkt. #63; P424-428,431,434 ¶¶ 39-53,62,72]. These facts were amply described in the previous sections in the FAC; Section 1985(3) was another count arising from the same set of facts; Plaintiffs did not repeat the same facts due to space limits and because code pleading is not a requirement.

150. Evidence received after the FAC was filed show a conspiracy within different branches of the AVMA directed specifically against Gunawardana [Proposed SAC ¶¶19,62,67,68, SA p7,20-23]. This evidence was new only due to Defendant's lack of corporation with discovery, and Court's denial of leave to amend was prejudicial to Plaintiffs.

*g. Count VII: ADA*

151. The Order dismissed ADA claim as untimely pursuant to Illinois two-year statute of limitation, further asserting that "But unlike the plaintiff in *Scherr*-who

alleged that she would return to the hotel but for the ongoing violations-Dr. Gunawardana has not alleged that that she would retake the CPE but for the ongoing violations."

152. As an initial matter, the *Scherr* Plaintiff did not state this in her complaint [that she would return to the hotel], but in a motion.

153. "Ongoing" can mean many things. In the instant case, the ADA violations are etched in ECFVG's written policies [FAC ¶¶34,100,102, P423,445-446], and therefore are continuing unless and until they correct the policy. The ongoing violations that prevent Gunawardana from re-taking the exam go far beyond the ADA policy [Dkt #66, ¶¶20-22, P555]. These include the high likelihood of retaliation, lack of transparency and oversight, and violation of civil rights and equal protections. Plaintiff's unwillingness to subject herself to retaliation and other constitutional violations is not a reason to dismiss her ADA claim. Furthermore, she should not have to re-take an exam that she already passed [SA ¶¶19,62-68, p7,20,23].

154. "Consequently, the court cannot say that Dickinson's claims are barred under the two-year limitations period as a matter of law, and she is entitled to proceed for now with application of the four-year statute of limitations of 28 U.S.C. § 1658 because she brought her claims within that window. Defendants' motion to dismiss on this ground will therefore be denied." *Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755 (M.D.N.C. 2015).

### iii. Claims for David Seely

*a. Standing*

155. In its order denying Defendants' motion to transfer venue [Dkt #15,4/30/2019], the Court ordered Plaintiff David Seely to show cause why he should not be dismissed for lack of standing. Accordingly, Mr. Seely filed a detailed response showing cause [Dkt #17, 5/13/2019]. In its final order 1/28/2021 dismissing Seely for lack of standing, Court does not analyze many of the arguments presented in his show cause response. Particularly, Seely was injured not only through his wife but directly as a consumer. [Dkt #17 ¶¶4,5,12-14], P186,189-190; FAC ¶¶106-108, P447-448].

*b. Count VIII: ADA*

156. The Order dismissed the ADA claim due to "failure to allege a specific disability". First, Defendant did not present this argument in the motion to dismiss. Second, Seely stated several specific disabilities in the show cause response [Dkt #17; ¶¶3,5,10,11, P185-189].

*c. Count IX: Antitrust*

157. The Order concludes that Seely did not plead facts showing that "the defendant has the power to control prices or exclude competition in a relevant market" or that "AVMA engaged in anticompetitive conduct".

158. Any entity with the sole authority to decide who enters a given market, while simultaneously being comprised of active players in the same market, automatically

has the power to exclude competition and control prices. The FAC described how AVMA meets these criteria [FAC ¶¶3-6,10,42-53]; how AVMA's written policies actively restrict the entry of foreign veterinarians into the market [22-41]; AVMA's conspiracy with other organizations [5,89-95]; and the resulting price increases to consumers [5,93-95]. Count IX stated how this situation injured Mr. Seely [107,108]. This claim should not be dismissed for not repeating background facts previously stated elsewhere in the complaint. The facts of AVMA's monopoly in the field and their active restrictions against foreign veterinarians alone meet the elements of Section 2 Sherman Act claim.

### iv. Conclusion for this section

159. The FAC stated the facts known to Plaintiffs at the time. Plaintiffs submit that the FAC meets the pleading standards under FRCP 8 and *Twombly*, considering neither standard requires listing all elements of each count.

160. Plaintiffs expected that complete responses to their discovery requests served in September 2019 would confirm all allegations. Once received, the responses confirmed the allegations exactly as expected. [For example, documents produced in August 2020 show, among other things: that ECFVG was created at the behest of state boards, thus clearly making them a state actor; that the failing grade in question was non-compliant with ECFVG's own stated procedures, and ECFVG officials conspired to withhold this information; that AVMA routinely denies CPE candidates' appeals with minimal review using form letters.] Even if the FAC were

deficient, it should not have been dismissed without leave to amend with the new evidence. Court should have considered the long delays in discovery due to Defendant's obstructive actions.

161. Plaintiffs were planning to move for summary judgment for some claims upon completion of Defendant's deposition. Defendant did not cooperate, and Plaintiffs had to move to compel [Dkt #98, ¶¶26-31, P768-769]. The Court should not have denied said motion without analysis [RSA p36].

### F. Plaintiffs are entitled to Default Judgment.

162. As the record shows, Defendant did not present a timely defense to the complaint in two years of litigation, and obstructed the case's progress through many acts of misconduct. Therefore, a default judgment is warranted both under FRCP 55 and as a sanction.  [Standard of Review ¶¶79-80]

163. Default judgment would also serve justice based on merit, considering that Plaintiffs were preparing to move for summary judgment upon completion of Defendant's deposition.

# CONCLUSION AND RELIEF

164. Plaintiffs respectfully request that the District Court's Final Order be reversed, and Defendant's second motion to dismiss be struck due the procedural defects stated above.

165. Plaintiffs request this Honorable Court to recommend Default Judgment, to include the monetary and injunctive relief specified in the FAC [P450].

166. If this Court deems that default judgment is not warranted but Plaintiffs' claims should not have been dismissed, Plaintiffs respectfully request reversal of the District Court's denial of their second motion to amend the complaint. In this event, Plaintiffs further request this Court to examine and reverse the District Court's denial of Plaintiffs' motion to compel Defendant's deposition [Dkts #98-102].

Respectfully submitted this 16th day of May, 2021,

/s/Dr. Subhadra Gunawardana
/s/David Seely
4308 Marion Garden Ln
Florissant, MO 63034
314-764-1520; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

## **CERTIFICATE OF COMPLIANCE**

We hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7). The foregoing brief was prepared using Microsoft Office 365 and contains 13,418 words in 12-point proportionately-spaced Century Schoolbook font.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded by way of electronic filing on the Court's ECF notice list to all parties on May 16th, 2021.

/s/Dr. Subhadra Gunawardana
/s/David Seely

## REQUIRED SHORT APPENDIX

### *Contents*
District Court Memorandum Opinion and Order ..........................................R.S.A. 1
District Court Judgment…..............................................................................R.S.A. 33
Order Denying Motion to Amend Complaint..................................................R.S.A. 34
Order Denying Motion to Vacate Order Granting Extension........................R.S.A. 35
Order Denying Motion to Compel Witness Deposition..................................R.S.A. 36
Minute Entry 7/22/2020………………………………………………..……..R.S.A. 37

### *Certificate*
Pursuant to Circuit Rule 30(d), we hereby certify that this short appendix includes all the materials required by Circuit Rules 30(a) and (b).

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SUBHADRA GUNAWARDANA and
DAVID SEELY,**

      **Plaintiffs,**

**v.**                                        **Case No. 19-cv-96-NJR**

**AMERICAN VETERINARY MEDICAL
ASSOCIATION, EDUCATIONAL
COMMISSION FOR FOREIGN
VETERINARY GRADUATES, and
COUNCIL ON EDUCATION,**

      **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiffs Dr. Subhadra Gunawardana and Mr. David Seely's First Amended Complaint filed by Defendant American Veterinary Medical Association ("AVMA") (Doc. 80). For the reasons set forth below, the motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Obtaining a license to practice veterinary medicine is a critical step for all veterinarians. For foreign graduates seeking licensure, the AVMA administers a certification process known as the Educational Commission for Foreign Veterinary Graduates ("ECFVG"). The ECFVG includes the Clinical Proficiency Exam ("CPE"), a "performance based exam intended to assess the practical clinical veterinary skills of the candidate" (Doc. 81, p. 2).

Page 1 of 32

Dr. Gunawardana, a foreign veterinary graduate, started the ECFVG process in September 2009 (Doc. 63, p. 6). As a part of the ECFVG process, Dr. Gunawardana signed a document that contained the following release provision:

> I hereby release, discharge, and exonerate the AVMA, the ECFVG . . . from all actions, suits, obligations, damages, claims and demands arising out of, or in connections with, this application, the grade or grades given with respect to the examinations or the failure of the ECFVG to issue me a certificate. It is understood that the decision as to whether my examinations qualify me for a certificate vests solely and exclusively in the ECFVG and its decision is final.

(Doc. 81, p. 24).

After signing the release and completing the appropriate steps, Dr. Gunawardana worked towards completing the CPE. Dr. Gunawardana's first attempt at the CPE was in September 2015 (Doc. 63-1, p. 64). Unfortunately, Dr. Gunawardana did not pass the surgery, anesthesia, and equine sections.

Dr. Gunawardana's second attempt at the CPE took place October 17-19, 2016 (*Id.* at p. 65). But seven days before the retake of the surgery, anesthesia, and equine sections of the CPE, Dr. Gunawardana was diagnosed with osteoarthritis of the first carpometacarpal joint (*Id.* at p. 59). The next day, on October 11, 2016, Dr. Gunawardana requested accommodations including an assistant to help on the surgery section, use of a hand-brace during the equine and anesthesia sections, and time to stop between tasks to take pain medication during all sections (*Id.* at p. 60). AVMA denied this request because their CPE Testing Accommodation Policy requires candidates to submit the necessary documentation at least 90 days in advance (*Id.* at p. 61). Ultimately, Dr. Gunawardana failed the anesthesia section of the October 2016 CPE (*Id.* at pp. 62-63).

Page 2 of 32

Determined to attain her ECFVG certification, Dr. Gunawardana retook the anesthesia section of the CPE in November 2017 (*Id*. at p. 4). Unfortunately, Dr. Gunawardana again failed the anesthesia section (*Id*.). Dr. Gunawardana filed a petition for reconsideration and a petition for review, but both affirmed Dr. Gunawardana's failing score (*Id*. at pp. 1-18). Notably, Dr. Gunawardana did not cite lack of accommodations for the November 2017 CPE.[1]

On February 1, 2019, Dr. Gunawardana and her husband, David Seely, filed a complaint against AVMA, ECFVG, and the Council on Education ("COE")[2] (Doc. 63). Dr. Gunawardana brings seven counts against AVMA under various state and federal laws, including: Section 2-302 of the Illinois Uniform Commercial (Count I), Title VII of the Civil Rights Act 42 U.S.C. § 2000e, *et seq* ("Title VII") (Count II), 42 U.S.C. § 1981 (Count III); Fourteenth Amendment's Equal Protection Clause (Count IV); Sherman Antitrust Act (Count V); 42 U.S.C. § 1985(3) (Count VI); and the Americans with Disabilities Act ("ADA") (Count VII). Mr. Seely brings two counts against AVMA under federal law, including: the ADA (Count VIII) and Sherman Antitrust Act (Count IX). The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

On May 14, 2019, AVMA was granted time to answer or respond to the complaint (Doc. 18). AVMA then timely moved to dismiss the complaint (Doc. 22). On September

---

[1] The record is unclear whether Dr. Gunawardana requested accommodations for the November 2017 CPE.
[2] The COE is a branch of the AVMA (Doc. 63, p. 2). The COE allegedly provides educational accreditation and certification programs (*Id*. at p. 5). The COE, according to Dr. Gunawardana, conducted Dr. Gunawardana's petition of review (*Id*. at pp. 7-10).

Page 3 of 32

10, 2019, before deciding AVMA's Motion to Dismiss, Magistrate Judge Beatty ordered the parties to appear for a settlement conference on October 17, 2019 (Doc. 38). A week before the conference, Dr. Gunawardana and Mr. Seely admitted that they served discovery on AVMA on September 21, 2019, and, as a result, would not be prepared to answer the items in the settlement statement (Doc. 41). Accordingly, Dr. Gunawardana and Mr. Seely asked to reset the settlement conference to November 14, 2019 (*Id.*). Magistrate Judge Beatty ultimately held the settlement conference on February 20, 2020, but the case did not settle.

On November 30, 2019, Dr. Gunawardana and Mr. Seely moved to amend their complaint (Doc. 51). On January 6, 2020, this Court granted Dr. Gunawardana and Mr. Seely's motion to amend (Doc. 62). On January 12, 2020, Dr. Gunawardana and Mr. Seely filed their First Amended Complaint (Doc. 63). AVMA subsequently filed this Motion to Dismiss arguing the First Amended Complaint fails to state a claim under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 81).

## LEGAL STANDARD

To survive a motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "'clearly . . . allege facts demonstrating' each element" required to establish he has standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 95 S.Ct. 2197, 2215 (1975)). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The burden of establishing these three

Page 4 of 32

elements falls on the party invoking the court's jurisdiction. *Id.*

Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). The factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

Page 5 of 32

**ANALYSIS**

**I.      Timeliness of AVMA's Motion to Dismiss**

Dr. Gunawardana and Mr. Seely argue that the Court should deny AVMA's Motion to Dismiss outright because the filing was untimely, and enter default judgment (Doc. 91). The Court will not. This Court—as well as Magistrate Judge Beatty—has granted Dr. Gunawardana and Mr. Seely's multiple extensions and requests to continue (Docs. 41, 82, 98). Additionally, this Court has even allowed Dr. Gunawardana and Mr. Seely to amend their complaint while AVMA's First Motion to Dismiss was pending (Doc. 51).

Not only has this Court extended deadlines and granted Dr. Gunawardana and Mr. Seely's requests to continue, but their amended complaint was not filed until January 2020. **January 2020 was the beginning of COVID-19 outbreak that has impacted all 50 states, and countries around the world.** In March, this Court extended the deadline for answering or otherwise responding to most complaints by sixty days. While AVMA's response became due before this Court extended the deadline because of COVID-19, this does not mean the Court should ignore the impact COVID-19 had on the parties. Thus, the Court will exercise its discretion in allowing AVMA's untimely Motion to Dismiss. *See e.g., Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007) (district court properly exercised its discretion in allowing answer to complaint to be filed after responsive pleading deadline had passed where the delay was "harmless"); *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706-07 (7th Cir. 2006) ("district courts have broad discretion to manage their dockets . . . .").

Page 6 of 32

More importantly, Dr. Gunawardana and Mr. Seely have not suffered prejudice. AVMA's First Motion to Dismiss contained almost the identical arguments as the pending Motion to Dismiss (Docs. 23, 81). Indeed, Dr. Gunawardana and Mr. Seely admit in their response to AVMA's motion that "Defendants' instant motion largely repeats the same arguments presented in their original motion to dismiss . . . with many identical paragraphs" (Doc. 91, p. 2). This is significant because Dr. Gunawardana and Mr. Seely had two opportunities to address or resolve the issues in their complaint. *See Cherry v. Davis,* 2013 WL 1628236, at *3 (N.D. Ill. Apr. 15, 2013) (acknowledging that "[u]nless a defendant can demonstrate prejudice from an untimely filed motion to dismiss, a court has the discretion to consider the merits of the motion").

Besides the lack of prejudice, Dr. Gunawardana and Mr. Seely waived their objection as to the timeliness of AVMA's Motion to Dismiss at the Court's status conference on July 22, 2020 (Doc. 86). At the status conference, this Court inquired as to the reasons why AVMA's Motion to Dismiss was filed far out of time. The Court then asked for Dr. Gunawardana's response. Rather than objecting to AVMA's Motion to Dismiss, Dr. Gunawardana simply asked for more time to respond. Accordingly, this argument was waived.

## II.   Dr. Gunawardana's Claims

### A.   Release of Claims by Waiver

According to the AVMA, this case should be dismissed because Dr. Gunawardana signed a waiver releasing AVMA and the ECFVG from any legal action as recourse for poor performance on certification examinations (Doc. 81, p. 4). Dr. Gunawardana argues

Page 7 of 32

7

the waiver is unenforceable because it is unconscionable and void as a matter of public policy (Doc. 91, p. 3). Dr. Gunawardana supports this point by noting that "the waiver in question is an adhesion contract, which all candidates are required to sign when enrolling in the ECFVG program" (Doc. 92, p. 6). Dr. Gunawardana continues by asserting that "[t]he language of the waiver is entirely one-sided, releasing and exonerating the AVMA and ECFVG from any and all claims arising from or related to any part of the certification process . . . ." (*Id.*).

To consider documents attached to pleadings without converting a motion to dismiss into a motion for summary judgment, the documents must be referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). Here, Dr. Gunawardana references the waiver in the operative complaint (Doc. 63, p. 19). She asserts that "[the] [i]ntent of unequal bargaining power is further evidenced by the mere existence of the waiver, which exonerates the AVMA from any and all claims arising from or related to the certification process, thus allowing AVMA/ECFVG to perform any act of negligence or injustice without consequence" (*Id.*). Accordingly, the Court finds that it is appropriate to consider the waiver at this stage of the litigation.

Here, the parties have not raised a conflict of law issue and have instead briefed the release issue on the merits under Illinois law. The Court, as a result, will apply the

Page 8 of 32

8

law of Illinois. Illinois law recognizes covenants not to sue. *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 249 (7th Cir. 1994). Further, a waiver releasing a certifying organization from any legal action as recourse for poor performance on certification examinations is not an unconscionable contract of adhesion. *Id.* In *Sanjuan,* two psychiatrists failed an oral examination administered by the American Board of Psychiatry and Neurology. *Id.* at 248. The psychiatrists signed nearly the identical release as the one signed by Dr. Gunawardana. *Id.* Like Dr. Gunawardana, "[p]laintiffs went back on their word, suing instead of accepting the outcome of the internal appeals." *Id.* at 249. The Board moved to dismiss and sought to enforce the psychiatrists' releases.

On these facts, the Seventh Circuit affirmed the district court's finding that the motion to dismiss was proper. The Court disagreed with the plaintiffs' assertions that the releases were unconscionable contracts of adhesion. *Id.* Specifically, the Court noted that the psychiatrists' releases were not more unconscionable "than the other standards for application, including paying fees and passing tests." *Id.* The Court continued acknowledging that "[i]f the Board as a private organization is entitled to set the rules of application and membership, it is entitled to insist that applicants agree to a legal cease-fire." *Id.*

The Seventh Circuit in *Sanjuan*, 40 F.3d at 249, however, suggested that its holding might be different if membership was an "economic necessity." *See id.* (acknowledging that the release might be in jeopardy if membership is an "economic necessity"). Dr. Gunawardana relies on this portion of *Sanjuan* and argues that an ECFVG certification is an "economic necessity" because this certification is required for a foreign graduate to

Page 9 of 32

get licensed (Doc. 92, p. 8).

Under Illinois law, courts will review a private association's denial of an application for membership or the benefits thereof when what is applied for constitutes an "economic necessity." *Treister v. Am. Acad. of Orthopaedic Surgeons*, 396 N.E.2d 1225, 1231 (Ill. App. Ct. 1979). Besides alleging facts showing such economic necessity, federal review of a voluntary association's actions with respect to its members is limited to consideration of whether the decisions are "arbitrary and unreasonable" and whether they are supported by "substantial evidence." *Peoria Sch. of Bus., Inc. v. Accrediting Council for Continuing Educ. & Training*, 805 F. Supp. 579, 583 (N.D. Ill. 1992).

Not only does Dr. Gunawardana fail to plead economic necessity, but also she fails to allege sufficient facts suggesting that AVMA's actions were arbitrary and unreasonable. Additionally, Dr. Gunawardana has not provided authority that the Seventh Circuit's holding in *Sanjuan* does not apply. Dr. Gunawardana points to a few sentences in *Sanjuan* where the Court mentions that if membership is an "economic necessity," then the waiver of release "would be in jeopardy." *Sanjuan*, 40 F.3d at 249. But this Court has not found authority limiting the applicability of *Sanjuan* or evaluating a waiver of release when the membership is an "economic necessity." Accordingly, Dr. Gunawardana is barred from bringing all claims, unless clarified below.

### A. *Violation of Section 2-302 of Illinois Uniform Commercial (Count I)*

Even if Dr. Gunawardana's claim was not barred by her release, Dr. Gunawardana still fails to state a claim under Section 2-302 of the Illinois Uniform Commercial Code ("UCC"). 810 ILCS 5/2-302. Under Section 2-302, "[i]f the court as a matter of law finds

Page 10 of 32

the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." In general, Article 2 of the Illinois UCC, applies solely to "transactions" involving "goods." 810 ILCS 5/2-102; *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002) (acknowledging that Article 2 is limited to "transactions in goods").

Here, Plaintiffs allege "ECFVG engages in a contract with each candidate for a service in exchange for money, to evaluate their professional knowledge and skills for a certificate making them eligible to apply for US licensure." (Doc. 63, p. 18). But the simple fact is Dr. Gunawardana cannot plausibly allege facts showing that the contract is unconscionable under the Illinois UCC because the code applies only to transactions involving goods, not services. Accordingly, Count I must be dismissed.

### B. *Title VII (Count II)*

Although the release bars Dr. Gunawardana's claim under Title VII,[3] AVMA further points out that "[Dr. Gunawardana] cannot state a claim against the AVMA for violation of Title VII because the AVMA is not Plaintiff's employer" (Doc. 81, p. 6). The Seventh Circuit, however, has not definitively decided that a plaintiff must have been an employee of defendant in order to have a Title VII claim. *See Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 (7th Cir. 1996) (limiting its ruling and noting that the Court

---

[3] *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (noting that "[i]t is clear that a plaintiff may waive a claim under Title VII (and, by extension, under the Equal Pay Act) as part of a voluntary settlement, provided that her consent to the release was voluntary and knowing").

Page 11 of 32

"[has] no occasion to go further and determine if a Title VII plaintiff must always demonstrate that he [or she] is an employee *of the defendant employer*").

District courts in the Seventh Circuit are divided on whether a plaintiff must demonstrate employment with the defendant in order to have a Title VII claim. *See e.g.*, *EEOC v. Foster Wheeler Const., Inc.*, 1999 WL 515524, at *5 (N.D. Ill. July 14, 1999) (finding that "an employee of one Title VII employer may sue a different Title VII employer whose discriminatory actions interfere with the employee's employment conditions"); *Morrison v. Am. Bd. of Psychiatry & Neurology, Inc.*, 908 F. Supp. 582, 584-87 (N.D. Ill. 1996) (noting that plaintiff's "Title VII claim is not a mainstream Title VII claim because she does not—and could not—allege that Board is her employer[,]" but because plaintiff alleged that the "lack of Board certification will significantly inhibit her future employment prospects . . . [her claim] survive[d] Board's motion to dismiss"); *but see Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 887 (N.D. Ill. 2002) (acknowledging that "the Seventh Circuit[,] [*in dicta,*] has rejected the idea that Title VII creates a class of defendants that can be liable to individuals, without the limitation of an actual or de facto employment relationship . . . .").

Dismissing Dr. Gunawardana's Title VII by adopting a narrow reading of Title VII—as covering only traditional employment relationships—may be imprecise. Courts, instead, have used common law agency principles in employment discrimination cases to determine whether a defendant is liable for the alleged Title VII violations. But using common law agency principals "is difficult to do [ ] without a more fully developed factual record, which is probably why . . . such issues [are] determined at the summary

Page 12 of 32

judgment stage rather than on a motion to dismiss." *Brown v. Cook Cty.*, 2018 WL 3122174, at *7 (N.D. Ill. June 26, 2018) (collecting cases).

Still, this Court dismisses Dr. Gunawardana's Title VII claim even under the broad reading of Title VII—as covering employment agencies and labor organizations—because the AVMA is neither an "employment agency" nor a "labor organization." To be an "employment agency" under Title VII, the entity must "regularly undertak[e] with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e. To be a "labor organization" under Title VII, the entity must "[be] engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization." *Id.*

Here, Dr. Gunawardana alleges that the "AVMA is an employment agency under Title VII because they are the gatekeeper for all veterinary graduates seeking employment in the US, and maintains a career center which functions as a *liaison* between potential employers and employees" (Doc. 63, p. 20) (emphasis added). Dr. Gunawardana further alleges that the "career center helps *match* potential employees with employers, and provides job-seeker assistance through tools such as career coaching, resume writing,

Page 13 of 32

reference checking, and career learning presentations" (*Id.*) (emphasis added).

Dr. Gunawardana fails to allege that the AVMA actively *refers* veterinarians to animal clinics, hospitals, or other organizations that employ veterinarians. *See Zamani v. Am. Dental Ass'n*, 1998 WL 812545, at *4 (N.D. Ill. Nov. 18, 1998) (finding that "[o]nly those persons who *refer* employees to employers, as that term is defined in the statute, are employment agencies") (emphasis added). The closest action to *referring* as explained in Dr. Gunawardana's opposition to AVMA's Motion to Dismiss is apparently "*maintain*[ing] an employment website to assist veterinarians with employment . . ." (Doc. 92, p. 10) (emphasis added).

Additionally, the AVMA is not a "labor organization" under Title VII because "[o]nly those organizations that deal directly with employers concerning working conditions are considered labor organizations." *Zamani*, 1998 WL 812545 at *4. Dr. Gunawardana does not assert that the AVMA deals directly with any veterinary employers on issues relating to the working conditions of veterinarians, thus the AVMA is not a "labor organization" under Title VII.

Even under the broadest reading of Title VII—as covering entities beyond employment agencies and labor organizations—Count II must be dismissed because there are no allegations that AVMA discriminated against Dr. Gunawardana based on her race, color, religion, sex, or national origin. Dr. Gunawardana, instead, asserts discriminatory policies and practices against foreign veterinary graduates.[4] Therefore,

---

[4] Also, under the "scope of the charge" doctrine, a plaintiff may only bring in federal court claims that were previously presented to the EEOC. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974); *Miller v. Am. Airlines*, 525 F.3d 520, 525 (7th Cir. 2008). Dr. Gunawardana provided her notice of right to sue letter, but

Page 14 of 32

Dr. Gunawardana's Title VII claim, Count II, must be dismissed.

### C. Section 1981 (Count III)

Aside from Dr. Gunawardana's release, her claim under 42 U.S.C. § 1981 also must be dismissed for failure to state a claim. *See Getachew v. PartyLite Worldwide, Inc.*, 2011 WL 5507382, at *2 (N.D. Ill. Nov. 10, 2011) (dismissing plaintiff's claim under 42 U.S.C. § 1981, though at summary judgment, because plaintiff signed a release "relinquishing any right to bring suit under any federal or state employment law"). Under 42 U.S.C. § 1981, all persons within the jurisdiction of the United States are protected from racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Courts define "race" broadly, and the concept of race discrimination has been expanded to include discrimination on the basis of ancestry or ethnic characteristics. *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 229 (7th Cir. 1995) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics")). But allegations of discrimination based only on "the place or nation of [plaintiff's] origin" are not sufficient to state a section 1981 claim. *Saint Francis Coll.*, 481 U.S. at 613. Without an allegation of racial animus, "either explicit or reasonably inferable from the pleadings,"

---

failed to provide her EEOC charges, and there are still questions of the scope of Dr. Gunawardana's EEOC charges, and whether they are properly before this Court.

Page 15 of 32

a section 1981 claim must be dismissed. *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984).

AVMA contends that Dr. Gunawardana fails to allege that she was discriminated against based on her race or ethnicity (Doc. 81, p. 8). The Court agrees. Dr. Gunawardana alleges that the AVMA discriminated against her due to her birthplace in Sri Lanka and against all foreign graduates (Doc. 63, p. 22-23). Dr. Gunawardana also alleges that "the AVMA's practices disfavor the entry of non-white races into the US workforce, either directly or indirectly" (*Id.* at p. 23). Dr. Gunawardana continues pleading that the AVMA created the ECFVG policies in such a way as to single out entire groups to minimize their entry to the veterinary field (*Id.* at p. 22).

These are serious allegations, but they are insufficient to state a claim under 42 U.S.C. § 1981. *See e.g.*, *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 352 (7th Cir. 1987) (reversing the district court's decision to dismiss plaintiff's section 1981 claim when plaintiff not only alleged "'[he] [is] an Egyptian born naturalized citizen' but also that he is 'not a member of the white or caucasion [sic] race, but is rather a member of the Negro or Brown race[]' [and] [t]he complaint further elaborated that, during his employment, [plaintiff] had 'received numerous ethnic slurs from co-employees and supervisory personnel,' . . . many of which were racially-motivated"); *Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 418 (7th Cir. 1986), *overruled on other grounds by Alexander*, 101 F.3d 487 (finding that a Korean plaintiff's allegations were sufficient because she "expressly alleged the defendant had discriminated against her because of her race"); *Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp.2d 1042, 1054 (N.D. Ill. 2011)

Page 16 of 32

(denying defendant's motion to dismiss because plaintiffs "allege[d] that they have dark-colored skin, eyes and hair and that they are members of a racial minority, which could give rise to an inference of racial animus"); *Abdulrahim v. Gene B. Glick Co.*, 612 F. Supp. 256, 262 (N.D. Ind. 1985) (granting defendant's motion to dismiss even when plaintiff alleged that he is Syrian descent whose "skin pigmentation is such that he may be perceived as non-white"); *De La Torres v. Gianni Furniture Co.*, 1986 WL 6407, at *2 (N.D. Ill. June 5, 1986) (granting defendant's motion to dismiss because "plaintiff's status as a Cuban-American, in itself, does not provide him with membership in a non-white racial group"). Because Dr. Gunawardana fails to allege that the AVMA discriminated against her because of her race, Count III must be dismissed.

### D. Fourteenth Amendment (Count IV)

The Fourteenth Amendment protects citizens from conduct by the government—generally not from conduct by private actors. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 191 (1988) (acknowledging that "[a]s a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights'") (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961)). However, "the conduct of private actors, in some cases, can constitute state action." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). A private actor's conduct will be characterized as state action when the alleged deprivation of constitutional rights are "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person who may fairly be said to be a state actor." *Id.*(quotations omitted).

Page 17 of 32

"The Supreme Court has identified numerous situations where private action can become that of the state, such as: when private actors conspire or are jointly engaged with state actors; where the state compels the discriminatory action; when the state controls a nominally private entity or is entwined with its management or control; or when the state delegates a public function to a private entity." *Whitney v. Window to the World Commc'ns, Inc.*, 837 F. Supp. 2d 854, 857 (N.D. Ill. 2011) (citing *Hallinan*, 570 F.3d at 815–16). "Over time, Supreme Court and Seventh Circuit precedent have revealed that these cases do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Hallinan*, 570 F.3d at 816.

The AVMA is not a state actor—it is a private association. As a result, AVMA argues that Dr. Gunawardana does not properly plead facts that, if true, establish AVMA as a state actor (Doc. 81, pp. 9-11). The Court agrees. Dr. Gunawardana pleads "[a]ll state regulatory boards require applicants to complete AVMA-accredited or AVMA-administered programs as a prerequisite for state veterinary licensure" (Doc. 63, p. 23). Dr. Gunawardana alleges "[t]he United States Department of Education [USDE] recognizes the AVMA COE as the sole accrediting authority for veterinary education, and tapped them for additional responsibilities previously held by a USDE subcommittee" (*Id*.). Dr. Gunawardana continues by pleading that "AVMA is a gatekeeper for Title IV and Title VII federal funding, and administers/distributes federal grants" (*Id*.). As a catch-all, Dr. Gunawardana includes an allegation that "AVMA officials are pervasively intertwined with state agencies including regulatory boards, federal departments and the military" (*Id*. at p. 24).

Page 18 of 32

In *Sanjuan*, the Seventh Circuit rejected a Fourteenth Amendment claim that a certifying board was a state actor:

> We agree with the district court, however, that the Board is a private association. It does not issue licenses to practice; it simply certifies achievement of a standard of excellence . . . [**The fact that**] **states make certification by the Board a prerequisite for some public positions does not convert the Board into a state actor, any more than a state's insistence that some employees have advanced degrees converts every college and university into a state actor**. If the Board's certification processes are unreliable, that may be a reason why the state should not depend on them; public beliefs that they are reliable (and consequent willingness to rely) do not bestow governmental power on the Board. State and local governments are responsible for their own decisions, and persons aggrieved by those decisions must complain against their authors (the states themselves) rather than against the Board.

40 F.3d at 250 (emphasis added).

Indeed, Dr. Gunawardana's complaint and briefs are full of allegations about the relationship between AVMA, AVMA's branches, the United States Department of Education, and other government agencies and commissions. But nothing in the complaint or briefing reaches the ultimate issue: whether AVMA makes the sole decision to issue a veterinary license. Like the medical board in *Sanjuan*, 40 F.3d at 250, AVMA issues certifications—not licenses to practice veterinary medicine.

Even if AVMA's actions could be construed as state action, Dr. Gunawardana must allege a deprivation of a property right. *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) (noting that "[t]he threshold question in any due process challenge is whether a protected property or liberty interest actually exists"). "To maintain a claim of property over a government-issued benefit, such as a license or permit, a plaintiff must show she has 'a legitimate claim of entitlement to it' rather than a 'unilateral expectation

Page 19 of 32

19

to it.'" *Dyson v. City of Calumet City*, 306 F.Supp.3d 1028, 1041 (N.D. Ill. 2018) (quoting *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (citations omitted). "More specifically, 'where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement.'" *Quick v. Illinois Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1007 (N.D. Ill. 2020) (quoting *Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 851 (7th Cir. 2012)).

Dr. Gunawardana claims AVMA violated her protected property interest in a "US veterinary license she is *entitled* to" (Doc. 63, p. 27). The problem is Dr. Gunawardana's license was not revoked, nor was Dr. Gunawardana renewing her license. Dr. Gunawardana failed the anesthesia section of the CPE three times (Doc. 63-1). Without completing the CPE, Dr. Gunawardana has not earned the ECFVG certification. Without the ECFVG certification, Dr. Gunawardana is not *entitled* to a veterinary license because "the ECFVG tests the professional skills of foreign veterinary graduates seeking to practice in the USA, and provides the educational certification necessary for that purpose" (*Id.* at p. 5). Thus, Dr. Gunawardana does not have a property right in a veterinary license, and Count IV must be dismissed.

### E.  Sherman Act (Count V)

Unlike Dr. Gunawardana's other claims, the release does not bar her from bringing antitrust claims. *See Sanjuan*, 40 F.3d at 250 ("conclud[ing] that plaintiffs' release does not prevent them from making an antitrust claim in court"). Dr. Gunawardana's antitrust claims are based on the alleged violations of Sections 1 and 2 of the Sherman Act. "The

Page 20 of 32

purpose of the Sherman Act is to protect consumers from injury that results from diminished competition." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012) (citing *Banks v. NCAA*, 977 F.2d 1081, 1087 (7th Cir. 1992)). To plead a violation of Section 1 of the Sherman Act, Plaintiffs must plead: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury." *Id.* at 335 (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.,* 8 F.3d 1217, 1220 (7th Cir. 1993)).

"Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason." *Sanjuan*, 40 F.3d at 251 (citations omitted). Dr. Gunawardana has not pled that AVMA's activities led to a decrease in output in the market which causes higher prices to consumers. In fact, Dr. Gunawardana pleads the opposite. According to Dr. Gunawardana, AVMA is flooding the veterinary market (Doc. 63, p. 30). *See id.* ("[b]y flooding the market with graduates from distributive model schools, [AVMA] place[s] active restrictions against specific groups including foreigners, minorities and graduates from traditional research-model institutions"). To allege that AVMA's activities has led to higher prices to consumers, Dr. Gunawardana continues by noting that "[g]raduates from the vocational model schools are provided incentives for employment in the Banfield system, which, according to clients' accounts, charges inflated prices and prescribes numerous unnecessary services" (*Id.* at p. 32). Accordingly, Dr. Gunawardana's claims regarding violations of Section 1 of the Sherman Act must be dismissed.

Page 21 of 32

Section 2 of the Sherman Act prohibits "the employment of unjustifiable means to gain that power" and requires "two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). The first element "contains two-sub requirements: (1) a relevant market; and (2) possession of monopoly power in that market." *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1069 (N.D. Ill. 2016).

Here, Dr. Gunawardana has failed to identify a relevant market. *See id.* at 1070–71 (acknowledging that "[c]ourts should dismiss antitrust claims based on a market argument only when it is certain that 'the alleged relevant market clearly does not encompass all interchangeable substitute products or when a plaintiff fail[s] even to attempt a plausible explanation as to why a market should be limited in a particular way'") (quoting *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011)). "In an area that is not obviously commercial, and thus where the Sherman Act's application is not clearly apparent, [ ] it is incumbent on the plaintiff to describe the rough contours of the relevant commercial market in which anticompetitive effects may be felt, even when a quick-look approach is all that is called for." *Agnew*, 683 F.3d at 345.

Even assuming that Dr. Gunawardana's relevant market is the "veterinary market," Dr. Gunawardana's complaint still falls short as she fails to plead that AVMA's actions have an anticompetitive effect on the veterinary market. Again, Dr. Gunawardana

Page 22 of 32

pleads that AVMA conspires with the Banfield Hospital and several distributive model veterinary schools to *flood* the market with graduates from distributive model schools, thus actively restricting against specific groups "including foreigners, minorities and graduates from traditional research-model institutions" (Doc. 63, p. 29-30). While this is a serious allegation, "the Sherman Act is not a precursor to the Civil Rights Act of 1964." *Sanjuan*, 40 F.3d at 252.

Stopping the analysis at this initial step, while proper, would be incomplete because Dr. Gunawardana fails to state a claim under Section 2 of the Sherman Act for additional reasons. For instance, Dr. Gunawardana fails to allege facts supporting the notion of AVMA's possession of monopoly power. "Ultimately, the allegations must show that the defendant has the 'power to control prices or exclude competition in a relevant market.'" *Ploss*, 197 F. Supp. 3d at 1071 (quoting *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1106 (7th Cir. 1983)). Dr. Gunawardana's allegations do not include facts regarding AVMA's power to control prices or exclude competition in *any* market. If the relevant market is the "veterinary market," the high prices, according to Dr. Gunawardana's allegations, is a result of the Banfield system—not AVMA. As far as excluding competition in the veterinary market, Dr. Gunawardana <u>again</u> alleges that the AVMA is *flooding* the veterinary market. Changing the relevant market to the "veterinary market in Missouri" does not help Dr. Gunawardana, as her allegations fall victim for the same reasons. If the relevant market is the market over certifying foreign graduates for licensure purposes, Dr. Gunawardana admits that AVMA's ECFVG is actually more practical, viable, and less expensive than the alternative (Doc. 92, p. 15).

Page 23 of 32

23

Besides failing to plead facts demonstrating the first element of a monopolization claim under Section 2 of the Sherman Act, Dr. Gunawardana also fails to plead facts demonstrating the second element of a monopolization claim—that AVMA engaged in anticompetitive conduct. Thus, Dr. Gunawardana fails to state a claim under the Section 2 of the Sherman Act, and Count V must be dismissed.

### F. Section 1985(3) (Count VI)

Dr. Gunawardana also fails to state a claim under Section 1985(3). "A plaintiff raising a claim under Section 1985(3) must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens" *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996).

Here, Dr. Gunawardana fails to plausibly allege any conspiracy. Dr. Gunawardana brings suit against the AVMA and its subsidiaries asserting "AVMA's membership is widespread; that they perform many different functions; and have affiliations with many organizations including state and federal entities, a conspiracy within AVMA members, within its committees, and/or between AVMA and outside entities, is more than plausible" (Doc. 63, p. 34). From Dr. Gunawardana's complaint, this Court may be able to generously construe an allegation that AVMA conspired with Banfield, vocational and distributive model veterinary schools, and other agencies and organizations. "But without any detail to flesh out this conclusory assertion, it lacks plausibility . . . ." *Ma v. CVS Pharmacy, Inc.*, 2020 WL 6257028, at *3 (7th Cir. Oct. 23, 2020).

Page 24 of 32

Dr. Gunawardana provides no basis for inferring that Banfield or other entities agreed, explicitly or implicitly, with AVMA to deprive her of equal protection of the laws. *See id*. (citing *Twombly*, 550 U.S. at 556-57; *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012)). Also, Dr. Gunawardana's complaint lacks any suggestion that Banfield shared in a common purpose with AVMA to obstruct her rights. Dr. Gunawardana alleges certain "vocational schools have received massive financial support from the Banfield hospital system owned by MARS Inc." (Doc. 63, p. 32). The complaint also alleges "[i]n conspiracy with the Banfield system and several vocational model veterinary schools, the AVMA continues to restrict the market against graduates from both non-accredited institutions and traditional institutions" (*Id*. at p. 38). But the complaint "lacks allegations permitting an inference that the alleged conspirators had a racial or other class-based motive . . . ." *Ma*, 2020 WL 6257028 at *3. Instead, based on Dr. Gunawardana's allegations, Banfield has financial motives and the schools' motives are grounded in providing employment for their graduates. Thus, AVMA's Motion to Dismiss is granted as to Count VI.

### G. Title III of the ADA, 42 U.S.C. §§ 12181–12189 (Count VII)

Although the release bars Dr. Gunawardana's claim under 42 U.S.C. § 12189,[5] Count VII also should be dismissed as untimely. "[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's

---

[5] *See Mancuso v. Danfoss, Inc.*, 6 F. App'x 391, 395 (7th Cir. 2001) (holding that district court did not abuse its discretion enforcing settlement agreement and dismissing plaintiff's ADA claims where plaintiff agreed to waive her ADA claim).

Page 25 of 32

tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009) (citations omitted).

The Seventh Circuit has acknowledged that "the most appropriate state limitations period applies" to a plaintiff's claim of discrimination under 42 U.S.C. § 12189. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir. 1996). In *Soignier*, the plaintiff, a plastic surgeon from Dallas, Texas, failed the oral portion of the Board certification process four times. *Id.* at 549. Determined to pass the oral portion, the plaintiff attempted the oral portion again in November 1992. *Id.* Unlike his other attempts, the plaintiff asked the Board to accommodate his disabilities by requesting "more time to take the test, use of models and paper drawings during the test, time to rephrase questions or rewrite them if necessary, and different examiners than those who had administered his past tests" *Id.* at 549–50. The Board did not accommodate all of the plaintiff's requests, and he failed the oral portion for a fifth time. *Id.* at 550. The plaintiff then appealed this outcome to the Board. *Id.* In November 1994, the Board upheld the November 1992 examination result because the Board found that the examination was conducted fairly. *Id.* On May 9, 1995, the plaintiff sued the Board under 42 U.S.C. § 12189 of the ADA in the United States District Court for Northern District of Illinois. *Id.*

To evaluate whether the plaintiff's discrimination claim against the Board under 42 U.S.C. § 12189 was time-barred, the district court had to determine the applicable statute of limitations and when the claim began to accrue. *Id.* The district court acknowledged that Illinois' two-year statute of limitations period for personal injury actions applied because the case was brought in Illinois. *Id.* The district then found that

Page 26 of 32

the plaintiff's claim accrued in November 1992, but plaintiff did not file his complaint in federal court until May 1995. *Id*. Accordingly, the district court dismissed the suit as time-barred. *Id*.

On appeal, the Seventh Circuit confirmed that the district court "correctly applied Illinois' two-year statute of limitations for personal injuries as the most analogous limitations period for [plaintiff's] ADA claim." *Id*. at 551. The Seventh Circuit then held that the two-year clock starts on the date that the plaintiff took the exam without the accommodations requested, because by that date plaintiff "was aware of each of the elements of his ADA claim: (a) [plaintiff] was a qualified person with a disability; (b) the law required the Board to provide [plaintiff] with reasonable accommodations during the test; and (c) the Board allegedly failed to provide those accommodations." *Id*. at 553-54 (citations omitted).

Following the Seventh Circuit's decision in *Soignier*, Dr. Gunawardana's claim under 42 U.S.C. § 12189 must be dismissed as untimely. Like *Soignier*, Illinois' two-year statute of limitations period for personal injury actions applies as it is the most analogous limitations period for Dr. Gunawardana's ADA claim. Under Illinois' two-year statute of limitations period, Dr. Gunawardana had until October 2018 to file her complaint as she took the anesthesia portion of the CPE exam without the accommodations requested in October 2016 (Doc. 63, p. 35; Doc. 63-1, pp. 60-63). But Dr. Gunawardana filed her complaint on February 1, 2019—four months after the statute of limitations expired (Doc. 2).

Dr. Gunawardana argues that her claim is not barred because it is a continued

Page 27 of 32

violation and relies on *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069 (7th Cir. 2013). In *Scherr*, the plaintiff requested an ADA-compliant hotel room. *Id.* at 1071. However, the hotel had installed spring hinge doors on the bathroom doors of some of its rooms, including the plaintiff's ADA-complaint room. *Id.* Ultimately, the plaintiff was injured when the spring hinged door closed automatically and knocked the plaintiff down. *Id.* The plaintiff brought suit under Title III of the ADA seeking injunctive relief against the hotel and fifty-six of the hotel's other locations for using spring-hinged doors. *Id.*

In *Scherr*, "[plaintiff] brought her ADA claim in November 2010 . . . more than four years after her actual injury in March 2006." *Id.* at 1075. The hotel contended that the plaintiff's claim was "time-barred because she knew of the alleged problem with the spring-hinged doors long before she filed her personal injury action, let alone her ADA claim." *Id.* The plaintiff, on the other hand, argued that "a plaintiff seeking injunctive relief from ongoing violations, the cause of action continues to accrue each day the defendant remains in violation of the ADA." *Id.* The Seventh Circuit noted that the plaintiff "alleged that she is currently aware of what she believes to be ongoing ADA violations at the [hotel], and that she would return to the hotel but for these ongoing violations." *Id.* at 1076. The Court then held that "[b]ecause the violations [plaintiff] alleges are continuing, the applicable statute of limitations does not bar her claim." *Id.*

Dr. Gunawardana's reliance on *Scherr* is misplaced. As shown above, *Scherr* did not involve a claim of discrimination under 42 U.S.C. § 12189 against a private entity offering a professional certification. Dr. Gunawardana also has not alleged an ongoing ADA violation like the ongoing ADA violation in *Scherr*. Dr. Gunawardana alleges that

Page 28 of 32

the AVMA's ADA violation is ongoing because it still has a policy of requiring a request for accommodation 90 days before the exam date (Doc. 63, pp. 35-36). But unlike the plaintiff in *Scherr*—who alleged that she would return to the hotel but for the ongoing violations—Dr. Gunawardana has not alleged that she would retake the CPE but for AVMA's ongoing ADA violations. In fact, Dr. Gunawardana alleged she already retook the CPE in November 2017 (Doc. 63, p. 7; Doc. 63-1, p. 1-15).[6]

Accordingly, *Soignier* controls the Court's decision with respect to Dr. Gunawardana's claim under 42 U.S.C. § 12189, and Count VII must be dismissed as untimely.

## II.   MR. SEELY'S CLAIMS

### A.  *Standing*

Article III of the Constitution limits the judicial power of federal courts to adjudicating "cases" and "controversies." *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597 (2007). "One of the controlling elements in the definition of a case or controversy under Article III is standing." *Id.* (internal quotations, citations, and alterations omitted). "[T]he irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) is redressable by the Court. *Id.*

---

[6] In her opposition to AVMA's Motion to Dismiss, Dr. Gunawardana argues that "Plaintiff's consistent position was that she is not willing to retake the exam in its current form, with all its violations of civil rights and equal protections, and complete lack of transparency or oversight" (Doc. 92, p. 17). Nonetheless, she retook the CPE in November 2017.

Page 29 of 32

Here, Mr. Seely's alleged injuries are not fairly traceable to AVMA's challenged conduct. Mr. Seely allegedly suffered by having to accompany Dr. Gunawardana for the November 2017 CPE, economic damages from Dr. Gunawardana's loss of earnings in the veterinary field, and as a direct consumer of veterinary services—"which are not limited to companion animal veterinary care" (Doc. 63, p. 38). This creative attempt at pleading a concrete injury still amounts to indirect suffering, which does not create standing. Under Mr. Seely's logic, everyone would be able to sue their spouse's employer because of the damages it causes to the household. This logic, however, has been rejected by district courts in the Seventh Circuit. *See e.g., Feng v. Sandrik*, 636 F. Supp. 77, 82 (N.D. Ill. 1986) (acknowledging that "spouses of individuals who have been victimized by employment discrimination cannot be said to fall within the class of persons Title VII was intended to protect"); *Diffay v. Am. Tel. & Tel. Co.*, 1988 WL 53209, at *12 (N.D. Ill. May 13, 1988) (noting that spouse's claim is based on the adverse effect of a previous decision as to her husband—thus "[s]he is without standing to sue under Title VII"); *Simonsen v. Bd. of Educ. of the City of Chicago*, No. 01-C-3081 (N.D. Ill. Nov. 8, 2001) (holding that four relatives lacked standing because "[n]othing in the complaint alleges that any defendant took any action against them[ ] [and] [the] [fact] [t]hat they may be indirectly suffering the consequences of [plaintiff's] suspension is not sufficient to create Article III standing"). Accordingly, Mr. Seely and his claims (Counts VIII and IX) must be dismissed.

### B.  ADA Claim (Count VIII)

Even if Mr. Seely had standing, his ADA claim fails to allege a specific disability.

Page 30 of 32

The Seventh Circuit has held that short, plain statements, as long as they include a specific disability, pass the Rule 12(b)(6) test. *See Tate v. SCR Medical Transp.*, 809 F.3d 343, 345 (7th Cir. 2015) ("[a]nd surely a plaintiff alleging discrimination on the basis of an actual disability under 42 U.S.C. § 12102(1)(A) must allege a specific disability"). Here, Mr. Seely did not allege a specific disability. His ADA discrimination claim, therefore, must be dismissed.

### C. *Sherman Act (Count IX)*

Besides the lack of standing, Mr. Seely's Sherman Act claim fails for the same reasons as Dr. Gunawardana's claims. Like Dr. Gunawardana's allegations, Mr. Seely has failed to allege that AVMA's activities has led to a decrease in output in the market which causes higher prices to consumers. Mr. Seely, instead, vaguely alleges:

- The AVMA is the gate-keeper with sole authority on who enters the veterinary profession in the US;

- AVMA consists of active market players with a personal stake in controlling the numbers entering the market, thus keeping prices high;

- In conspiracy with the Banfield system and several vocational model veterinary schools, the AVMA continues to restrict the market against graduates from both non-accredited institutions and traditional institutions.

(Doc. 63, p. 37-39). Accordingly, Mr. Seely's claim regarding violations of Section 1 of the Sherman Act must be dismissed.

Similar to Dr. Gunawardana's claim under Section 2 of the Sherman Act, Mr. Seely also fails to identify a relevant market. The closest Mr. Seely comes to identifying a relevant market is the "veterinary field." (Doc. 63, p. 37). Even if Mr. Seely identified a

Page 31 of 32

relevant market, Mr. Seely's claim does not contain facts that AVMA has the power to control prices or exclude competition in the market. Mr. Seely conclusively alleges that AVMA is the gate-keeper with sole authority on who enters the veterinary profession in the United States, but this is not enough. *Ploss*, 197 F. Supp. 3d at 1071 ("[u]ltimately, the allegations must show that the defendant has the power to control prices or exclude competition in a relevant market") (quotations omitted). Mr. Seely also fails to plead facts demonstrating the second element of a monopolization claim—that AVMA engaged in anticompetitive conduct. Thus, Mr. Seely fails to state a claim under Section 2 of the Sherman Act, and Count IX must be dismissed.

### CONCLUSION

For the reasons set forth above, AVMA's Motion to Dismiss for Failure to State a Claim (Doc. 80) is **GRANTED**, and this entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   January 28, 2021**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

Page 32 of 32

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SUBHADRA GUNAWARDANA and
DAVID SEELY,

        Plaintiffs,

v.                                                                  Case No. 19-cv-96-NJR

AMERICAN VETERINARY MEDICAL
ASSOCIATION, EDUCATIONAL
COMMISSION FOR FOREIGN
VETERINARY GRADUATES, and
COUNCIL ON EDUCATION,

        Defendants.

## JUDGMENT IN A CIVIL ACTION

**DECISION BY THE COURT.**

      This matter having come before the Court, and the Court having rendered a decision,

      **IT IS ORDERED AND ADJUDGED** that, pursuant to the Court's Order of January 28, 2021 (Doc. 104), this entire action is **DISMISSED with prejudice**.

      **DATED:   January 28, 2021**

                                MARGARET M. ROBERTIE,
                                Clerk of Court

                                By:   *s/ Deana Brinkley*
                                     Deputy Clerk

**APPROVED:** _____
              NANCY J. ROSENSTENGEL
              Chief U.S. District Judge

Activity in Case 3:19-cv-00096-NJR Gunawardana et al v. American Veterinary Medical Association et al Order on Motion to Amend/Correct

ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

Mon 11/9/2020 8:19 AM

**To:** ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

* External Email - Caution *

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 11/9/2020 at 8:18 AM CST and filed on 11/9/2020

**Case Name:**      Gunawardana et al v. American Veterinary Medical Association et al
**Case Number:**      3:19-cv-00096-NJR
**Filer:**
**Document Number:** 97(No document attached)

**Docket Text:**
<span style="color:blue">**ORDER denying [96] Motion to Amend/Correct Complaint. On September 10, 2019, Magistrate Judge Beatty approved of the Parties' Joint Report and Proposed Scheduling and Discovery Order. In the order, motions to amend the pleadings were to be filed by December 5, 2019. Additionally, Defendant American Veterinary Medical Association's Motion to Dismiss is fully briefed and it would be prejudicial to Defendants to allow Plaintiffs Subhadra Gunawardana and David Seely to amend their complaint. Signed by Chief Judge Nancy J. Rosenstengel on 11/9/2020.(drr)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**</span>

**3:19-cv-00096-NJR Notice has been electronically mailed to:**

David Seely     david-seely@live.com

J. Hayes Ryan     hayesryan@grsm.com, dmyoung@grsm.com

Marissa Louise Dellacroce     mdellacroce@grsm.com, dmyoung@grsm.com, jswick@grsm.com, marissa.dellacroce@gmail.com

Subhadra Gunawardana     subhadra.gunawardana@wustl.edu

**3:19-cv-00096-NJR Parties and Attorneys without registered email addresses requiring notice by other means:**

Activity in Case 3:19-cv-00096-NJR-MAB Gunawardana et al v. American Veterinary Medical Association et al Order on Motion to Vacate

ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>
Fri 5/17/2019 10:37 AM
**To:** ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 5/17/2019 at 10:37 AM CDT and filed on 5/17/2019
**Case Name:**        Gunawardana et al v. American Veterinary Medical Association et al
**Case Number:**     3:19-cv-00096-NJR-MAB
**Filer:**
**Document Number:** 21(No document attached)

**Docket Text:**
**ORDER DENYING [20] First Motion to Vacate Order Granting Defendants' Motion for Extension: Plaintiffs move to vacate the Court's Order granting Defendants additional time to respond to the Complaint. The decision to grant or deny an extension of time under Fed. R.Civ. P. 6(b) is within the Court's discretion. *Matter of Narowetz Mechanical Contractors, Inc.*, 898 F.2d 1306, 1309 (7th Cir. 1990). In this instance, the extension serves the "fundamental tenet of justice favoring the resolution of cases on their merits." *Schilling v. Walworth Cnty. Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986). Accordingly, the Motion to Vacate is DENIED. (jmp2)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:19-cv-00096-NJR-MAB Notice has been electronically mailed to:**

David Seely     david-seely@live.com

J. Hayes Ryan     hayesryan@grsm.com, dmyoung@grsm.com

Subhadra Gunawardana     subhadra.gunawardana@wustl.edu

**3:19-cv-00096-NJR-MAB Parties and Attorneys without registered email addresses requiring notice by other means:**

Activity in Case 3:19-cv-00096-NJR Gunawardana et al v. American Veterinary Medical Association et al Order on Motion for Extension of Time

ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>
Tue 12/22/2020 9:10 AM

**To:**  ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

* External Email - Caution *

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Illinois**

**Notice of Electronic Filing**

The following transaction was entered on 12/22/2020 at 9:09 AM CST and filed on 12/22/2020

**Case Name:**  Gunawardana et al v. American Veterinary Medical Association et al
**Case Number:**  <u>3:19-cv-00096-NJR</u>
**Filer:**
**Document Number:** 102(No document attached)

**Docket Text:**
<span style="color:blue">**ORDER GRANTING [98] Motion for Extension of Time filed by Subhadra Gunawardana, David Seely. Final Pretrial Conference will be RESET by a separate order. Presumptive Jury Trial Month is RESET for July 2021. All witnesses should have been disclosed by 12/7/20. However, Defendants did not provide plaintiff with the 30(b)(6) witness until December 16, 2020 (Doc. 98-3, p. 4). As a result, all discovery, including depositions, are now due by 3/8/2021. All dispositive motions due by 3/22/2021. This Court will not compel the deposition of Dr. Andrew Claude as Plaintiffs Gunawardana and Seely have not properly issued Dr. Claude a subpoena for his deposition. Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Clerk of the Court is DIRECTED to send Plaintiff Subhadra Gunawardana a signed AO88, titled Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, but otherwise leave the AO88 blank for Plaintiff Gunawardana to fill out appropriately to secure the deposition of Dr. Andrew Claude. Plaintiff Gunawardana is reminded that she must follow the Federal Rules of Civil Procedure. Signed by Chief Judge Nancy J. Rosenstengel on 12/22/2020.(drr)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**</span>

**3:19-cv-00096-NJR Notice has been electronically mailed to:**

David Seely    david-seely@live.com

J. Hayes Ryan    hayesryan@grsm.com, dmyoung@grsm.com

Marissa Louise Dellacroce    mdellacroce@grsm.com, dmyoung@grsm.com, jswick@grsm.com, marissa.dellacroce@gmail.com

Subhadra Gunawardana    subhadra.gunawardana@wustl.edu

**3:19-cv-00096-NJR Parties and Attorneys without registered email addresses requiring notice by other means:**

Activity in Case 3:19-cv-00096-NJR Gunawardana et al v. American Veterinary Medical Association et al Status Conference

ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

Wed 7/22/2020 4:10 PM

**To:** ilsd_nef@ilsd.uscourts.gov <ilsd_nef@ilsd.uscourts.gov>

* External Email - Caution *

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of Illinois

#### Notice of Electronic Filing

The following transaction was entered on 7/22/2020 at 4:09 PM CDT and filed on 7/22/2020

| | |
|---|---|
| **Case Name:** | Gunawardana et al v. American Veterinary Medical Association et al |
| **Case Number:** | 3:19-cv-00096-NJR |
| **Filer:** | |
| **Document Number:** | 86(No document attached) |

**Docket Text:**
**Minute Entry for proceedings held before Chief Judge Nancy J. Rosenstengel: Telephonic Status Conference held on 7/22/2020. Subhadra Gunawardana, David Seely, and Marissa Dellacroce participated. The parties raised the issue of outstanding discovery sought by Plaintiffs. When the Court denied Defendants' Motion for a Protective Order (Doc. [64]) in April, the Court cleared the way for Plaintiffs to receive the discovery related to their production requests 4, 6, 7, and 8 (Docs. 66-1, [75]). Nonetheless, Defendants are apparently still refusing to produce responses in full. The Court now explicitly ORDERS Defendants to produce discovery related to requests 4, 6, 7, and 8, including the examiner's instructions and manual of administration in full. The Court has reviewed the redactions to the manual produced today and finds them inappropriate. Defendants' disregard for an order of this Court is alarming, and the Court will not hesitate to impose sanctions in the future for such evasive conduct. In all other disputes related to the Motion to Compel, the parties are ORDERED to meet and confer before asking for the Court's guidance again and should update the Court after that conference. The Court will keep the Motion to Compel active in the meantime to assure full compliance and, hopefully, a full resolution to the remainder of the discovery**

**disputes. Plaintiffs shall respond to the Motion to Dismiss (Doc. 80) on or before September 4, 2020.(Court Reporter Stephanie Rennegarbe.) (drb)THIS TEXT ENTRY IS AN ORDER OF THE COURT. NO FURTHER DOCUMENTATION WILL BE MAILED.**

**3:19-cv-00096-NJR Notice has been electronically mailed to:**

David Seely    david-seely@live.com

J. Hayes Ryan    hayesryan@grsm.com, dmyoung@grsm.com

Marissa Louise Dellacroce    mdellacroce@grsm.com, dmyoung@grsm.com, jswick@grsm.com, marissa.dellacroce@gmail.com

Subhadra Gunawardana    subhadra.gunawardana@wustl.edu

**3:19-cv-00096-NJR Parties and Attorneys without registered email addresses requiring notice by other means:**