## No. 21-1330

# In the
# United States Court of Appeals
## for the Seventh Circuit

SUBHADRA GUNAWARDANA and DAVID SEELY, pro se,

*Plaintiffs-Appellants*

v.

AMERICAN VETERINARY MEDICAL ASSOCIATION (AVMA), et al.

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:19-cv-00096-NJR-MAB
The Honorable **Nancy J. Rosenstengel**, Judge Presiding.

# APPELLEE BRIEF AND SUPPLEMENTAL APPENDIX

J. HAYES RYAN
MARISSA DELLACROCE
GORDON REES SCULLY MANSUKHANI, LLP
One North Franklin, Suite 800
Chicago, IL 60606
(312) 565-1400

*Attorneys for American Veterinary Medical Association*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-1330

Short Caption: Subhadra Gunawardana and David Seely v. American Veterinary Medical Association

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Veterinary Medical Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gordon Rees Scully Mansukhani, LLP - J. Hyes Ryan

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: _Hayes Ryan_     Date: 6/16/2021

Attorney's Printed Name: J. Hayes Ryan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address: One N. Franklin, Ste 800

Chicago, IL 60606

Phone Number: (312) 565-1400     Fax Number: (312) 565-6511

E-Mail Address: hayesryan@grsm.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-1330

Short Caption: Subhadra Gunawardana and David Seely v. American Veterinary Medical Association

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Veterinary Medical Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gordon Rees Scully Mansukhani, LLP - Marissa Dellacroce and J. Hayes Ryan

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: *Marissa Dellacroce*    Date: 6/1/2021

Attorney's Printed Name: Marissa Dellacroce

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✔]

Address: One N. Franklin, Ste 800

Chicago, IL 60606

Phone Number: (312) 565-1400    Fax Number: (312) 565-6511

E-Mail Address: mdellacroce@grsm.com

rev. 12/19 AK

# TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE ............................................................. i

TABLE OF AUTHORITIES ......................................................................... v

JURISDICTIONAL STATEMENT ............................................................... 1

    A.    District Court Jurisdiction........................................................ 1

    B.    Appellate Jurisdiction .............................................................. 2

STATEMENT OF THE ISSUES ................................................................... 3

STATEMENT OF THE CASE........................................................................ 4

    A.    Appellants' Complaints and Allegations ................................. 4

    B.    Procedural Posture ................................................................... 7

    C.    Motion to Dismiss the First Amended Complaint and District Court Ruling ........................................................................... 11

    D.    Discovery and Deposition of Dr. Andrew Claude.................. 13

SUMMARY OF ARGUMENT ..................................................................... 14

ARGUMENT ................................................................................................ 16

    A.    The District Court did not abuse its discretion by denying Appellants' request to strike AVMA's Motion to Dismiss the Amended Complaint and for default judgment. .................... 16

        I.    Standard of Review.................................................... 16

        II.    Argument ................................................................... 16

            1.    Appellants waived their arguments by failing to provide supporting authority. ........................... 17

            2.    The District Court reasonably denied the motion to strike because it found Appellants waived their objection to the extension. ................................ 18

            3.    The District Court acted within its discretion to deny Appellants' requests to strike and enter default judgment because the extension was reasonable. ........................................................ 18

B.    The District Court acted within its discretion by dismissing the First Amended Complaint with prejudice because amendment would be futile. ....................................................................... 23

    I.    Standard of Review.................................................... 23

    II.    Argument ................................................................. 24

        1.    Appellants waived their argument that dismissal with prejudice was improper. ............................ 24

        2.    The District Court properly granted dismissal of the First Amended Complaint with prejudice because amendment would be futile. ............................. 24

2.    The District Court did not abuse its discretion in denying Appellants' Second Motion to Amend the Complaint. .......................... 26

    I.    Standard of Review.................................................... 26

    II.    Argument ................................................................. 26

        1.    Appellants waived this argument by failing to develop it and cite to legal authority. ............................. 26

        2.    The District Court reasonably denied the Second Motion for Leave to Amend. ............................. 26

D.    The District Court's January 28, 2021 Memorandum and Order is accurate............................................................................ 30

    I.    Standard of Review.................................................... 30

    II.    The District court did not commit a clear error in its factual findings........................................................................... 30

E.    The District Court did not err in its January 28, 2021 Memorandum and Order dismissing the First Amended Complaint . ............................................................................. 31

    I.    Standard of Review.................................................... 31

    II.    Argument ................................................................. 31

        1.    The release in Dr. Gunawardana's application bars her claims......................................................... 32

        2.    Dr. Gunawardana cannot state a claim under the Illinois UCC...................................................... 34

3.    Dr. Gunawardana cannot establish a claim for Title VII discrimination...............................................35

4.    Appellant's Section 1981 claim is deficient.....................38

5.    The First Amended Complaint lacks allegations to establish a claim for violation of the Equal Protection Clause. ............................................41

    a.    The AVMA is not a state actor and did not exercise a state right. ..............................42

    b.    Dr. Gunawardana has no protective property interest in certification of her education. .............43

5.    Dr. Gunawardana cannot establish a Sherman Antitrust violation. ............................................44

6.    Dr. Gunawardana has not established a racially motived conspiracy actionable under Section 1981.........47

7.    Dr. Gunawardana's ADA claim is barred by the release and the statute of limitations. .............................48

8.    Seely does not have Article III standing, requiring dismissal of his claims. ....................................50

9.    Mr. Seely cannot state a claim for violation of the ADA. ...............................................................51

10.    Mr. Seely has not sufficiently alleged a Sherman Antitrust claim..................................................52

F.    The District Court did not abuse its discretion by denying Appellants default judgment. ................................52

    I.    Standard of Review....................................................53

    III.    Argument ...................................................................53

CONCLUSION....................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis,*
  742 F.3d 720 (7th Cir. 2014) ................................................................ 32

*Affordable Bus. Interiors, Inc. v. Pomeroy IT Sols. Sales Co.,*
  336 F.R.D. 162 (N.D. Ill. 2020)............................................................. 31

*Agnew v. Nat'l Collegiate Athletic Ass'n,*
  683 F.3d 328 (7th Cir. 2012) ................................................................ 45

*Alexander v. Rush N. Shore Med. Ctr.,*
  101 F.3d 487 (7th Cir. 1996) ................................................................ 45

*Am. Registry of Radiologic Technologists v. McClellan,*
  No. 300-cv-2577, 2003 WL 22171702 (N.D. Tex. Mar. 5, 2003)............................ 33

*Anderson v. Hardman,*
  241 F.3d 545 (7th Cir. 2001) ........................14, 18, 24, 41, 47, 48, 50, 51, 52, 53, 54

*Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.,*
  856 F.2d 873 (7th Cir. 1988) .......................................................... 22, 53

*Anooya v. Hilton Hotels Corp.,*
  733 F.2d 48 (7th Cir. 1984) ........................................................... 39, 53

*Apostol v. Landau,*
  957 F.2d 339 (7th Cir. 1992) ................................................................ 35

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................... 31, 32

*Balaklaw v. Am. Bd. of Anesthesiology, Inc.,*
  562 N.Y.S.2d 360 (Sup. Ct. 1990)........................................................... 33

*Ball v. City of Chicago,*
  2 F.3d 752 (7th Cir. 1993) ........................................................... 15, 23

*Bd. of Trustees of Pipe Fitters' Ret. Fund, Loc. 597 v. Com. Cooling &*
  *Heating, Inc.,*
  No. 13 C 7731, 2019 WL 2269959 (N.D. Ill. May 28, 2019) ................................... 21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................... 31

*Berger v. NCAA,*
   843 F.3d 285 (7th Cir. 2016) ................................................ 50

*Bethany Pharmacal Co. v. QVC, Inc.,*
   241 F.3d 854 (7th Cir. 2001) ......................................... 24, 26

*Board of Regents v. Roth,*
   408 U.S. 564 (1972) ............................................................... 44

*Bogie v. Rosenberg,*
   705 F.3d 603 (7th Cir. 2013) ................................................ 24

*Bower v. Jones,*
   978 F.3d 1004 (7th Cir. 1992) .............................................. 24

*Bowman v. Korte,*
   962 F.3d 995 (7th Cir. 2020) ................................................ 19

*Brunson v. Murray,*
   843 F.3d 698 (7th Cir. 2016) ................................................ 44

*Collins v. OSF Healthcare Sys.,*
   262 F. Supp. 2d 959 (C.D. Ill. 2003) .................................... 51

*Comerica Bank v. Esposito,*
   215 F. App'x 506 (7th Cir. 2007) .................................... 16, 53

*Cook v. Winfrey,*
   141 F.3d 322 (7th Cir. 1998) ................................................ 21

*Cooney v. Rossiter,*
   583 F.3d 967 (7th Cir. 2009) ................................................ 29

*Copperweld Corp. v. Independence Tube Corp.,*
   467 U.S. 752 (1984) ............................................................... 48

*Covington v. Nat'l Univ.,*
   2015 U.S. Dist. LEXIS 159138 (N.D. Ill. Nov. 25, 2015) ......... 43

*Dickinson v. Univ. of North Carolina,*
   91 F. Supp. 3d 755 (M.D. N.C. March 16, 2015) .................. 48

*Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne,*
   788 F.2d 411 (7th Cir. 1986) ................................................ 45

*Elias v. Educ. Comm'n for Foreign Med. Graduates*,
  2010 N.J. Super. Unpub. LEXIS 2663, 2010 WL 4340640 (N.J. App. Nov. 4,
  2010) .................................................................................................................... 44

*Emps. Ins. of Wausau v. Banco De Seguros Del Estado*,
  199 F.3d 937 (7th Cir. 1999) ............................................................................ 30

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................... 16, 27

*Frantzides v. Northshore Univ. HealthSystem Fac. Prac. Assocs., Inc.*,
  787 F. Supp. 2d 725 (N.D. Ill. 2011) ............................................................... 46

*Gatachew v. PartyLite Worldwide, Inc.*,
  2011 WL 5507382 (N.D. Ill. Nov. 10, 2011) .................................................. 39

*George v. New Jersey Bd. of Veterinary Med. Examiners*,
  794 F.2d 113 (3d Cir. 1986) ............................................................................. 37

*Griffin v. Foley*,
  542 F.3d 209 (7th Cir. 2008) ............................................................. 15, 16, 19, 20

*Harris v. Wisconsin Dialysis Inc.*,
  No. 08-CV-283-SLC, 2008 WL 246842 (W.D. Wis. June 17, 2008) .................. 43

*Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.*,
  4 F.3d 465 (7th Cir. 1993) ................................................................................ 48

*Howard v. Loc. 74, Wood, Wire & Metal Lathers Int'l*,
  208 F.2d 930 (7th Cir. 1953) ............................................................................ 20

*Hussein v. Oshkosh Motor Truck Co.*,
  816 F.2d 348 (7th Cir. 1987) ............................................................................ 39

*Illinois Power Co. v. Figgie Int'l, Inc.*,
  1989 U.S. Dist. LEXIS 13983 (N.D. Ill. Nov. 17, 1989) .................................. 34

*Jackson v. Vill. of W. Springs*,
  612 F. App'x 842 (7th Cir. 2015) ..................................................................... 23

*Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*,
  518 F. App'x 863 (11th Cir. 2013) ................................................................... 43

*Kowalski v. Boliker*,
  893 F.3d 987 (7th Cir. 2018) ...................................................................... 47, 48

*Lucas v. Berryhill,*
  No. 2:18-CV-77-JEM, 2019 WL 2482712 (N.D. Ind. June 13, 2019) ..................... 18

*Lugar v. Edmondson Oil Co.,*
  457 U.S. 922 (1982) ........................................................................................ 41

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................................................ 50

*Lyerla v. AMCO Ins. Co.,*
  536 F.3d 684 (7th Cir. 2008) .......................................................................... 24

*Massey v. Merrill Lynch & Co.,*
  464 F.3d 642 (7th Cir. 2006) .......................................................................... 32

*McReynolds v. Merrill Lynch & Co.,*
  694 F.3d 873 (7th Cir. 2012) .......................................................................... 32

*Metzger v. Nat'l Comm'n on Certification of Physician Assistants,*
  No. 00-CV-4823, 2001 U.S. Dist. LEXIS 658, 2001 WL 76331 (E.D. Pa. Jan.
  26, 2001) ......................................................................................................... 44

*Mitchell v. White Consol.,*
  177 F.2d 500 (7th Cir. 1949) .......................................................................... 19

*Mommaerts v. Hartford Life & Acc. Ins. Co.,*
  472 F.3d 967 (7th Cir. 2007) .................................................................... 20, 22

*Morris v. Office Max,*
  89 F.3d 411 (7th Cir. July 12, 1996) .......................................................... 39, 40

*O'Sullivan v. City of Chi.,*
  396 F.3d 843 (7th Cir. 2005) .......................................................................... 50

*Park v. City of Chicago,*
  297 F.3d 606 (7th Cir.2002) ........................................................................... 27

*Pederson v. S. Illinois Hosp. Servs.,*
  No. 3:18-CV-2131-NJR, 2020 WL 2989147 (S.D. Ill. June 4, 2020) ..................... 21

*Pierce v. Atchison Topeka & Santa Fe Railway Co.,*
  110 F.3d 431 (7th Cir. 1997) .......................................................................... 35

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
  507 U.S. 380 (1993) ........................................................................................ 19

*Planned Parenthood of Wisconsin v. Doyle*,
  162 F.3d 463 (7th Cir. 1998) ................................................... 1

*Prizevoits v. Ind. Bell Tel. Co.*,
  76 F.3d 133 (7th Cir. 1996) ................................................... 20

*Reed v. Vill. of Shorewood*,
  704 F.2d 943 (7th Cir. 1983) ................................................ 44

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982)............................................................. 41

*Sanjuan v. American Bd. of Psychiatry & Neurology*,
  40 F.3d 247 (7th Cir. 1994) ......................................... 32, 34, 43, 46, 47

*Satkar Hospitality, Inc. v. Fox Television Holdings*,
  767 F.3d 701 (7th Cir. 2014) ................................................ 20

*Shelley v. Kraemer*,
  334 U.S. 1, 13 (1948)........................................................... 41

*Simonsen v. Bd. of Educ.*,
  2001 U.S. Dist. LEXIS 16896 (N.D. Ill. Oct. 16, 2001) ........................... 51

*Sinclair v. Bloom*,
  No. 94 C 4465, 1995 WL 348127 (N.D. Ill. June 8, 1995) ....................... 51

*Soignier v. Am. Bd. of Plastic Surgery*,
  92 F.3d 547 (7th Cir. 1996) ................................................... 49

*Spitz v. Proven Winners N. Am., LLC*,
  759 F.3d 724 (7th Cir. 2014) ................................................. 53

*St. Francis College v. Al-Khazraji*,
  481 U.S. 604, 613 (1987)...................................................... 39

*Staudinger v. Educational Comm. for Foreign Medical Graduates*,
  No. 92-civ-8071-LJF, 1993 U.S. Dist. LEXIS 5576 (S.D.N.Y. Apr. 27, 1993) ........ 42

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ................................................. 45

*Tate v. SCR Med. Transp.*,
  809 F.3d 343 (7th Cir. 2015) ................................................. 52

*Thompson v. Illinois Dep't of Pro. Regul.*,
  300 F.3d 750 (7th Cir. 2002) ......................................... 27, 28, 29

*United States v. Berkowitz,*
  927 F.2d 1376 (7th Cir. 1991) ........................... 18, 24, 26, 41, 47, 48, 51, 52, 53, 54

*United States v. Grinnell Corp.,*
  384 U.S. 563 (1966).......................................................................... 46

*United States v. McLaughlin,*
  470 F.3d 698 (7th Cir. 2006) ........................................................... 20

*United States v. Virginia,*
  518 U.S. 515 (1996).......................................................................... 43

*Wagner v. NutraSweet Co.,*
  95 F.3d 527 (7th Cir. 1996) ............................................................. 35

*Webb v. Frawley,*
  906 F.3d 569 (7th Cir. 2018) ........................................................... 31

*Whyte v. Am. Bd. of Physical Med. & Rehab.,*
  393 F. Supp. 2d 880 (D. Minn. 2005) .............................................. 33

*Woodard v. Virginia Bd. of Bar Examiners,*
  598 F.2d 1345 (4th Cir. 1979) ......................................................... 37

*Zamani v. American Dental Ass'n,*
  1998 U.S. Dist. LEXIS 18510, 1998 WL 812545 (N.D. Ill. November 17,
  1998)......................................................................................... 37, 38, 43

*Zuppardi v. Wal-Mart Stores, Inc.,*
  770 F.3d 644 (7th Cir. 2014) ........................................................... 16

## Statutes

28 U.S.C. § 1291............................................................................................ 2

28 U.S.C. § 1331............................................................................................ 1

28 U.S.C. § 1367............................................................................................ 2

42 U.S.C. § 1981....................................................... 1, 3, 4, 12, 25, 27, 32, 37, 39, 40

42 U.S.C. § 1981(a) ...................................................................................... 39

42 U.S.C. § 1981(b) ...................................................................................... 39

42 U.S.C. § 1983............................................................................................ 37

42 U.S.C. § 1985(3) ........................................................... 1, 4, 12, 25, 47

42 U.S.C. § 2000e(b) .................................................................... 36

42 U.S.C. § 2000e(c) .................................................................... 36

42 U.S.C. § 2000e(d) .................................................................... 36

42 U.S.C. § 2000e(f) .................................................................... 36

42 U.S.C. § 2000e-2 ............................................................... 35, 36

42 U.S.C. § 2000e-5(f)(1) ............................................................. 36

810 ILCS 5/2-105(1) ..................................................................... 35

810 ILCS 5/2-302 .................................................................... 1, 34

**Rules**

FRAP 28(a)(8) ....................................... 17, 24, 41, 47, 48, 50, 51, 52, 53

FRBP 9005(b)(1) ......................................................................... 19

FRCP 15(a) ............................................................................... 26

FRCP 6(b) ................................................................................. 19

**Regulations**

29 C.F.R. § 1606.1 ...................................................................... 38

4 CSR 270-2.031 ......................................................................... 42

<u>**JURISDICTIONAL STATEMENT**</u>

Respectfully, Appellants' jurisdictional statement is not complete and correct.

**A.  District Court Jurisdiction**

Plaintiffs-Appellants, Dr. Subhadra Gunawardana ("Dr. Gunawardana") and David Seely ("Seely") (collectively, the "Appellants"), brought this action in the United States District Court for the Southern District of Illinois (the "District Court") against Defendant, American Veterinary Medical Association ("AVMA" or "Appellee"). Appellants included two of its internal branches, the Educational Commission for Foreign Veterinary Graduates ("ECFVG") and the Council on Education ("COE"); however, the ECFVG and COE are not separate entities. (Doc. 63, ¶¶ 1, 10).

Appellants were residents of Tennessee, Illinois, and Missouri during all relevant times. (Doc. 63, ¶ 2). AVMA was incorporated in Illinois and its principal place of business is in Schaumburg, Illinois. (Doc. 63, ¶ 2).

Dr. Gunawardana alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 14th Amendment of the United States Constitution, Sherman Antitrust Act, 42 U.S.C. § 1985(3) ("Section 1985(3)"), and the Americans with Disabilities Act ("ADA"). Gunawardana also alleges a state claim for violation of 810 ILCS 5/2-302 of the Illinois Uniform Commercial Code ("UCC") arising out of her application for the certification program. (*See generally*, Doc. 63). Therefore, the District Court had subject matter jurisdiction over Dr. Gunawardana's federal statutory claims pursuant to 28 U.S. Code § 1331 and

exercised supplemental jurisdiction over the Illinois state claim pursuant to 28 U.S.C. § 1367. (Doc. 63, ¶ 2).

Seely asserts claims as Dr. Gunawardana's husband and witness through her career, and as as a consumer of veterinary services. (Doc. 63, ¶ 6). Seely's only connection to this case is through his status as Dr. Gunawardana's husband. Therefore, AVMA argued and the District Court ruled Seely lacked standing under Article III of the Constitution to bring suit against the AVMA. (Doc. 104, p. 29-30).

Appellee moved to dismiss the First Amended Complaint for failure to state a claim. (*See* Docs. 80, 81). On January 28, 2021, the District Court granted Appellee's Motion to Dismiss the Amended Complaint with prejudice and entered judgment accordingly in favor of Appellee. (*See* Docs. 104, 105).

### B. Appellate Jurisdiction

Seely does not have Article III standing to bring this appeal because he has alleged only indirect harm through his wife, Dr. Gunawardana. *Planned Parenthood of Wisconsin v. Doyle*, 162 F.3d 463, 465 (7th Cir. 1998).

This Court has appellate jurisdiction over Dr. Gunawardana's claims. On January 28, 2021, the District Court granted Appellee's Motion to Dismiss the First Amended Complaint with prejudice and entered judgment in favor of Appellee. The January 28, 2021 Memorandum and Order and Judgment are final and appealable pursuant to 28 U.S.C. § 1291. On February 22, 2021, Appellants timely filed their Notice of Appeal. Appellants did not file any motion for an alteration of the judgment or any other motion that tolled the time within which to appeal.

## **STATEMENT OF THE ISSUES**

1. The District Court granted Appellee an extension and accepted its Motion to Dismiss the First Amended Complaint. Appellants subsequently responded to the Motion, in part requesting the District Court to strike the Motion and grant default judgment. Did the District Court abuse its discretion in denying Appellants' request to strike Appellee's Motion to Dismiss the First Amended Complaint and for default judgment?

2. Did the District Court abuse its discretion in its May 17, 2019 Order denying Appellants' First Motion to Vacate Order Granting Appellee's extension of time to file its first responsive pleading?

3. Did the District Court abuse its discretion in its November 9, 2020 Order denying Appellants' Second Motion to Amend their complaint due to the delay and prejudice that Appellee would suffer?

4. In granting Appellee's Motion to Dismiss the First Amended Complaint with prejudice, the District Court ruled that Appellant Gunawardana executed a release that barred her claims for violations of the Illinois Uniform Commercial Code, Title VII, Section 1981, and the Americans with Disabilities Act. Did the Court err in this ruling?

5. The District Court held Appellants failed to state claims under each cause of action and entered dismissal with prejudice. Was this in error?

6. Did the District Court err in dismissing Seely's claims for lack of standing?

7.     Whether the District Court abused its discretion in denying

Appellants' Motion to Compel the deposition of Dr. Andrew Claude because he is not

a managing agent or under AVMA's control?

## STATEMENT OF THE CASE

### A. Appellants' Complaints and Allegations

1.     On February 1, 2019, Appellants filed their Complaint alleging

violations of contract law, Title VII, Section 1981, Section 1985(3), Sherman

Antitrust Act, ADA, and the Equal Protection Clause. (*See* Doc. 2).

2.     Appellants requested reversal of Dr. Gunawardana's failing grade or

an opportunity to retake the anesthesia examination at no cost, reform of ECFVG

policies, damages, and costs and attorney's fees. (Doc. 2-2, p. 23, Section V).

3.     On June 4, 2019, Appellee moved to dismiss the Complaint in its

entirety. (Docs. 22, 23).

4.     On November 30, 2019, Appellants moved for leave to file their First

Amended Complaint. (Doc. 51).

5.     Appellants filed their First Amended Complaint on January 12, 2020.

(Doc. 63).

6.     Dr. Gunawardana alleges violations of the Illinois UCC, Title VII,

Section 1981, Equal Protection Clause, Sherman Antitrust Act, Section 1985(3), and

the ADA. (Doc. 63).

7.     Mr. Seely alleges violations of the ADA and Sherman Antitrust Act.

(Doc. 63).

8.      Dr. Gunawardana removed her request to retake the examination at no cost, and instead requests her ECFVG certification plus $20,000, or $975,000 in damages. (Doc. 63, ¶ 113).

9.      The AVMA is a private organization that provides educational accreditation and certification programs for veterinary education. (Doc. 63, ¶¶ 9-10).

10.     Dr. Gunawardana was born in Sri Lanka, where she received her professional veterinary degree. (Doc. 63, ¶ 8).

11.     David Seely is Dr. Gunawardana's husband, witness, and assistant. (Doc. 63, ¶ 6).

12.     On September 9, 2009, Dr. Gunawardana executed an Application Form for Certification Program Only that contained a release for "all actions, suits, obligations, damages, claims and demands arising out of, or in connections with, this application, the grade or grades given with respect to the examinations or the failure of ECFVG to issue to me a certificate." (Doc. 81-1).

13.     The ECFVG procedures apply to graduates of veterinary medicine outside the United States and Canada. (Doc. 63-1, p. 22).

14.     As part of the certification program, an applicant is required to pass four sections: credentials verification, English language testing, a written exam, and the Clinical Proficiency Examination ("CPE), seven sections of hands-on practical skills testing. (Doc. 63, ¶ 11).

15.     Dr. Gunawardana completed the first three steps of the of the certification process. (Doc. 63, ¶ 11).

16.     From 2015-2017, Dr. Gunawardana took tests as part of the CPE. (Doc. 63, ¶ 13).

17.     Dr. Gunawardana failed the anesthesia portion of the CPE three times in September 2015, October 2016, and November 2017. (Doc. 63-1, pp. 5-6, 59, 64).

18.     On October 11, 2016 – five days before her second anesthesia examination – Dr. Gunawardana requested accommodations including an assistant, use of a hand brace, and extra time to take pain medication. (Doc. 63-1, p. 59-60).

19.     AVMA denied Dr. Gunawardana's accommodation request because the CPE Testing Accommodation Policy requires candidates to request an accommodation 90 days in advance of the exam. (Doc. 63-1, p. 61).

20.     Dr. Gunawardana attempted to retake the CPE for a third time in November 2017, again received a failing grade for the anesthesia section. She believes her failing grade was unwarranted. (Doc. 63, ¶¶ 13-16; Doc. 63-1, p. 4).

21.     She appealed her November 2017 anesthesia failure through the ECFVG appeals procedure, but the appeal was denied. (Doc. 63, ¶ 17).

22.     Appellants allege the appeals process is flawed in a number of ways, including the lack of transparency and access to evidence. (Doc. 63, ¶¶ 24-30).

23.     Dr. Gunawardana contends the 90-day requirement for disability accommodations is discriminatory and violates the ADA. (Doc. 63, ¶¶ 72, 85, 86, 100).

24.     Appellants further allege the ECFVG requirements for English language proficiency and hands-on skills testing, scoring on the examiner's

evaluation, having to repeat all sections upon failing a section three times, and the fee are discriminatory. (Doc. 63, ¶¶ 31-41).

25.    Appellants argue the policies are discriminatory because they impose a higher burden on graduates of foreign veterinary schools than domestic veterinary schools, resulting in a low percentage of foreign and minority veterinarians. (Doc. 63, ¶¶ 63-64, 69, 86, 89).

26.    They conclude AVMA holds a monopoly over the veterinary field and conspired to create these alleged discriminatory policies to flood the veterinary market with graduates from distributive model schools and restrict foreign veterinarians. (Doc. 63, ¶¶ 89, 99).

27.    Seely contends the AVMA's policies and procedures adversely affected him because he accompanied Dr. Gunawardana on trips to take the CPE and violated his disability rights. (Doc. 63, ¶ 105).

28.    Seely further believes he has been injured as a patient and consumer through alleged increased cost of veterinary and medical services and lack of access to services from a diverse group of professionals. (Doc. 63, ¶¶ 6, 107-08).

**B. Procedural Posture**

29.    On February 1, 2019, Appellants filed their original Complaint. (Doc. 2).

30.    On February 22, 2019, AVMA filed its Waiver of Service of the Summons, making its responsive pleading due on April 8, 2019. (Doc. 5).

31.    On April 5, 2019, AVMA filed its Motion to Transfer Case to the

Northern District of Illinois. (Docs. 7, 8, 10, 11).

32.    The District Court denied Appellee's Motion to Transfer on April 30, 2019. (Doc. 15).

33.    On May 13, 2019, AVMA moved for an extension to file its responsive pleading due to the length and varied legal theories in the Complaint. (Doc. 16). The Court granted the request on May 14, 2019, making AVMA's responsive pleading due June 4, 2019. (Doc. 18).

34.    On May 16, 2019, Appellants filed their First Motion to Vacate Order granting Defendant's Motion for Extension of Time. (Doc. 20).

35.    On May 17, 2019, the District Court denied the Motion to Vacate because the extension was within its discretion and justice favors the resolution of cases on their merits. (Doc. 21).

36.    On June 4, 2019, Appellee filed its Motion to Dismiss for Failure to State a Claim and Mr. Seely's lack of standing. (Docs. 22, 23).

37.    Magistrate Judge Mark A. Beatty directed the parties to begin discovery in the interim. (Doc. 36).

38.    AVMA's Motion to Dismiss the original Complaint remained without ruling for seven months. (Docs. 22 23, 51, 61).

39.    On August 28, 2019, the parties jointly requested an extension of deadlines due to the pending motion to dismiss, which delayed discovery. (Doc. 31). The District Court granted the extension. (Doc. 33).

40.    On September 10, 2019, Magistrate Judge Beatty accepted the parties'

8

proposed scheduling order including a December 5, 2019 deadline to amend the pleadings. (Doc. 37-1).

41.     Appellants filed a Motion to Continue the Settlement Conference on October 9, 2019 due to the status of discovery. Appellee did not object, and the District Court granted the extension. (Docs. 41, 43, 44).

42.     On November 30, 2019, Appellants moved for leave to file the First Amended Complaint. (Doc. 51).

43.     On January 6, 2020, the District Court granted Appellant's request to file the First Amended Complaint, and as a result, denied Appellee's Motion to Dismiss as moot. (Docs. 61, 62).

44.     Appellants filed their First Amended Complaint on January 12, 2020. (Doc. 63).

45.     The parties' settlement statements were due to Magistrate Judge Beatty on February 13, 2020. (Doc. 55).

46.     On February 20, 2020, the parties attended a settlement conference with Magistrate Judge Beatty, which was unsuccessful. (Doc. 86).

47.     Subsequently, the COVID-19 pandemic and quarantine occurred. This unprecedented time caused district courts to issue various extensions and orders governing proceedings during the pandemic. (Doc. 104, p. 6).

48.     On June 22, 2020, Appellee filed its Motion to Dismiss the Amended Complaint. (Docs. 80, 81).

49.     On July 5, 2020, Appellants moved to continue the scheduling order

9

and for an extension to respond to the Motion to Dismiss. (Doc. 82).

50.     The parties attended a telephone status conference on July 22, 2020. (Doc. 86).

51.     AVMA's counsel explained the delay in filing its Motion to Dismiss the First Amended Complaint was reasonable due the settlement conference, COVID-19, and a misunderstanding that the District Court was not hearing motions under its COVID-19 Orders. (Doc. 115, 3:24-4:12, attached hereto as A-1).

52.     Instead of objecting to AVMA's Motion, Appellants reiterated their request for an extension to respond to the Motion. AVMA did not object. (Doc. 104, p. 7; Doc 115, 4:13-5:9).

53.     Appellants did not ask for additional time to present its argument against the extension. (See Doc. 115).

54.     The District Court granted Appellants' request for extension to respond to the Motion to Dismiss and to continue the scheduling order, which set trial presumptively for May 2021. (Docs. 86, 88).

55.     While the Motion to Dismiss the First Amended Complaint remained pending, the parties continued to engage in oral and written discovery, including taking the depositions of Appellants. (Doc. 94; Doc. 99, ¶¶ 4-6).

56.     On November 5, 2020, Appellants moved for leave to file its Second Amended Complaint. (Doc. 96).

57.     On November 9, 2020, the District Court denied leave because the deadline for amendments was December 5, 2019 and AVMA would be prejudiced

due to its pending motion to dismiss. (Doc. 97).

58.     On December 21, 2020, Appellants moved again to continue the trial

dates and dispositive motion deadline. The District Court granted the extension

over AVMA's objection. (Docs. 98, 99, 102).

59.     On January 28, 2021, the District Court granted Appellee's motion to

dismiss with prejudice and entered judgment in favor of AVMA. (Docs. 104, 105).

### C. Motion to Dismiss the First Amended Complaint and District Court Ruling

60.     Appellee moved to dismiss the First Amended Complaint in its

entirety. Appellee argued that Dr. Gunawardana signed a waiver barring all of her

claims, Appellants failed to state a claim under each cause of action, and Seely

lacked standing. (Doc. 81).

61.     In addition to arguing they sufficiently pleaded each claim, Appellants

Response brief requested the District Court to strike the Motion to Dismiss the

Amended Complaint because it was late and intended to harass, and grant them

default judgment. (Doc. 92, ¶¶ 8-11, 76).

62.     The District Court granted Appellee's motion to dismiss with prejudice.

(Doc. 104).

63.     The District Court rejected Appellants' request to strike AVMA's

Motion and enter default judgment. It reasoned that it granted Appellants

extensions and had broad discretion to permit the filing, in part due to the COVID-

19 pandemic. (Doc. 104, p. 6). It also found Appellants waived this argument by

failing to object to the Motion at the July 22, 2020 hearing. (Doc. 104, p. 7).

64.    The District Court held that the waiver in Dr. Gunawardana's application was not unconscionable and barred her claims under the Illinois UCC, Title VII, Section 1981, and ADA. (Doc. 104, p. 7-9).

65.    It further dismissed Mr. Seely because he did not have Article III standing. (Doc. 104, p. 32).

66.    The District Court also ruled that even if the waiver was unenforceable and Seely had standing, Appellants failed to plausibly state claims for the following reasons:

a.    Ct. I: Gunawardana cannot plausibly allege a claim under Illinois UCC because it does not apply to contracts for services. (Doc. 104, p. 10).

b.    Ct. II: dismissing Gunawardana's Title VII claims because the AVMA is not an "employment agency" or "labor organization," and Gunawardana did not allege discrimination based on a protected class. (Doc. 104, p. 14-15).

c.    Ct. III: dismissing Gunawardana's Section 1981 claim because it does not cover national origin discrimination and Gunawardana failed to allege race-based discrimination. (Doc. 104, p. 16-17).

d.    Ct. IV: Equal Protection Clause claim fails because AVMA is not a state actor and there is no property interest in education certification. (Doc. 104, p. 18-19).

e.    Cts. V and IX: dismissing Sherman Antitrust Act claims due to failure to allege a restriction on any market, a monopoly, or an injury. (Doc. 104, p. 22-23, 32).

f.    Ct. VI: dismissing Section 1985(3) claim for inability to allege a conspiracy based on racial or other class-based motive. (Doc. 104, p. 29).

g.    Ct. VII: Gunawardana's ADA claim is barred by the two-year statute of limitations and the violation is not ongoing. (Doc. 104, p. 27, 29).

h.    Ct. VIII: dismissing Seely's ADA claim for failure to allege a disability. (Doc. 108, p. 31).

12

**D. Discovery and Deposition of Dr. Andrew Claude**

67.    Appellants issued their first set of written discovery to AVMA on September 21, 2019. (Doc. 40).

68.    Appellee timely served its answers and objections to the written discovery and moved for a protective order for documents it contended were confidential. (Docs. 45, 46).

69.    On November 6, 2019, the District Court denied the motion for protective order without prejudice, directing the parties to first attempt to resolve the dispute on their own. (Doc. 50).

70.    After external discussions failed to resolve the dispute, Appellee again filed a Motion for Protective Order on January 13, 2020. (Doc. 64).

71.    The District Court denied the Motion for Protective Order on April 9, 2020. (Doc. 75).

72.    Appellants moved to compel discovery on June 19, 2020. (Doc. 77).

73.    Appellee responded in opposition on July 6, 2020. (Doc. 83).

74.    The District Court scheduled a hearing on July 22, 2020, where it granted Appellants' request to compel certain documents and directed the parties to meet and confer on remaining discovery issues. (Doc. 86).

75.    On November 19, 2020, Appellants emailed Dr. Andrew Claude, a CPE examiner, to request his deposition. Dr. Claude declined this request. (Doc. 99, p. 2, ¶¶ 6-7).

76.    On December 6, 2020, Appellants requested AVMA produce Dr. Claude

or alternatively, a Rule 30(b)(6) representative. (Doc. 99, p. 2, ¶ 8).

77.     Appellee informed Appellants it had no obligation to produce Dr.
Claude because Dr. Claude is an independent contractor of a testing site and is not
under AVMA's control. AVMA agreed to present a corporate representative for her
deposition. (Doc. 99, p. 2).

78.     On December 21, 2020, Appellants moved to compel the deposition of
Dr. Claude arguing that he is AVMA's "managing agent." (Doc. 98, p. 6, ¶¶ 27, 34).

79.     Appellee responded demonstrating that Dr. Claude is an independent
contractor of a testing site, and as such, is not a managing agent or under its
control. (Doc. 99, ¶ 9).

80.     On December 22, 2020, the District Court denied Appellants' motion to
compel the deposition and directed the Clerk to issue Appellants a subpoena for Dr.
Claude. (Doc. 102).

81.     Dr. Claude's deposition did not occur due to the judgment in favor of
AVMA. (Doc. 105).

<u>**SUMMARY OF ARGUMENT**</u>

Appellants' appeal should be dismissed on both procedural and substantive
grounds. Procedurally, in numerous instances Appellants fail to comply with the
Federal Rules of Appellate Procedure and the Circuit Rules for the Seventh Circuit
Court of Appeals by failing to present developed arguments supported by relevant
authority. This is grounds for summary affirmance or dismissal of these issues on
appeal, even for a *pro se* litigant. *Anderson v. Hardman*, 241 F.3d 545-46 (7th Cir.

2001).

Substantively, Appellants criticize the majority of the District Court proceedings. The District Court litigation spanned almost two years and involved common discovery, extensions, and other disputes. These decisions are subject to the broad discretion of the District Court, which possesses great authority to manage its caseload. *Griffin v. Foley*, 542 F.3d 209 (7th Cir. 2008). Pursuant to this authority, the District Court reasonably denied Appellants' requests to strike AVMA's Motion to Dismiss the First Amended Complaint and for entry of default judgment. This decision was based on the excusable neglect of the late filing due to the COVID-19 pandemic and a prior settlement conference. No other conduct exists to warrant the entry of a default judgment, a serious sanction that requires an explicit warning prior to entry. *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993). As a result, the District Court acted reasonably in denying the requests to strike and for default judgment and instead ruling on the merits of the case.

The District Court properly dismissed Appellants' First Amended Complaint due to the failure to state a claim, certain claims being barred by a release, and Mr. Seely's lack of standing. (Doc. 104). This dismissal with prejudice was proper because Appellants have had sufficient opportunities to plead their case and continually fail to cure the pleading deficiencies. Reasons for finding leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and

futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). As explained in detail below, Appellants failed to plausibly state their causes of action despite notice of the deficiencies, cannot cure their deficiencies, and AVMA suffered undue prejudice in defending a case without a viable cause of action for almost two years. As such, the District Court's dismissal of the First Amended Complaint with prejudice was proper.

Accordingly, Appellee requests that this Court affirm the District Court's dismissal of the First Amended Complaint with prejudice and enter final judgment in its favor.

## ARGUMENT

### A. The District Court did not abuse its discretion by denying Appellants' request to strike AVMA's Motion to Dismiss the Amended Complaint and for default judgment.

#### I. Standard of Review

The Court of Appeals reviews a district court's grant or denial of a motion to strike, extension, and default judgment for abuse of discretion. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 647 (7th Cir. 2014) (motion to strike); *Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008) (extension); *Comerica Bank v. Esposito*, 215 F. App'x 506, 508 (7th Cir. 2007) (default judgment).

#### II. Argument

Appellants fail to show no reasonable judge would have denied the requests to strike and grant default judgment. Further, Appellants' recitation of the procedural posture is incomplete and, in some cases, inaccurate. Throughout the

litigation, Appellants requested and received three extensions (Docs. 41, 44, 82, 86, 98, 102), AVMA requested and received three extensions (Docs. 16, 19, 60, 61, 86), and the parties jointly requested and received a continuation of the scheduling order (Doc. 31, 33). AVMA complied with the Court's Order with respect to filing a response to the Motion to Compel. (Docs. 77-79; 83 (which responds substantively to the arguments in the motion to compel and was filed by the deadline)). Appellee did not disregard the rules "numerous times." Out of the six citations Appellants include for this proposition, only one involves a disregard for the rules and it was for failing to include a notation regarding the obligation to meet and confer in a discovery motion. (Doc. 50; *see also* Docs. 56, 74, 77, 83, 101). As is common, both parties required extensions to properly litigate this matter and engaged in discovery disputes. This does not entitle Appellants to a default judgment.

**1. Appellants waived their arguments by failing to provide supporting authority.**

Appellants cite to no authority in support of their argument that the District Court abused its discretion in granting AVMA an extension, denying the motion to strike and default, and finding Appellants waived their objections. Additionally, while Appellants mention the District Court granted AVMA an extension to file its first motion to dismiss, they fail to present any argument or provide legal authority for why this was an abuse of discretion. FRAP 28(a(8) requires an appellant to include citations to authority and the record for each argument. While the Court understandably affords the *pro se* Appellants latitude, a brief must contain a specific argument of error with citations to authority, and the Court will not fill the

17

void for a *pro se* litigant's failure to comply. *Anderson*, 241 F.3d 544, 545 (7th Cir. 2001). This Court has repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). As Section A lacks the requisite supporting authority, Appellants have waived their appeal of the extensions.

### 2. The District Court reasonably denied the motion to strike because it found Appellants waived their objection to the extension.

Failing to object at a hearing can result in waiver of an argument. *Lucas v. Berryhill*, No. 2:18-CV-77-JEM, 2019 WL 2482712, at *4 (N.D. Ind. June 13, 2019). After AVMA filed its Motion to Dismiss, Appellants filed a motion for extension to respond and continue the scheduling order. (Doc. 85). At the subsequent hearing when the District Court asked the Appellants for a response to the extension, Dr. Gunawardana asked only for her own extension to file a response brief. (Doc. 104, p. 7; Doc 115, 4:13-5:9). She did not ask the Court to strike the Motion or for additional time to research and present her argument. (*See* Docs. 82, 86, 115). As a result, the District Court reasonably determined that Appellants had no objection, and thus waived their right to contest the extension.

### 3. The District Court acted within its discretion to deny Appellants' requests to strike and enter default judgment because the extension was reasonable.

Even if Appellants did not waive their objection, the District Court did not abuse its discretion in denying the motion to strike and enter default judgment. Granting an extension during the height of the COVID-19 pandemic was

18

reasonable. Federal Rule of Civil Procedure 6(b) permits a district court discretion to grant a party an extension of time to file a responsive pleading after time has expired because of "excusable neglect." FRCP 6(b). By empowering courts to accept late filings due to excusable neglect, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993).[1] "The Rules of Civil Procedure reflect a well considered policy to simplify the assertion and trial of civil rights; they discourage technicality and form and seek to bring about determination of the rights of litigants upon the merits and, to that end, are to be liberally construed." *Mitchell v. White Consol.*, 177 F.2d 500, 502 (7th Cir. 1949).

District court judges, because of the nature of their duties and responsibilities, possess great authority to manage their caseload; for that reason, an appellate court intervenes only when it is apparent that the judge acted unreasonably. *Griffin*, 542 F.3d at 217. To find "excusable neglect," courts should consider all relevant circumstances surrounding the party's neglect, including the prejudice to the non-movant, length of delay, and reason for delay. *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) (finding no excusable neglect for delay when defendant provided no excuse whatsoever for missing deadline to move for summary judgment).[2] The reason need not be compelling, but must be explainable. *United*

---

[1] *Pioneer* detailed FRBP 9005(b)(1), the language of which is identical to FRCP 6(b).
[2] In their Standard of Review, Appellants cite to Seventh Circuit case law regarding excusable

*States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006). "Extensions of time to respond to important motions…are routinely granted by district courts and rarely questioned on appeal." *Griffin*, 542 F.3d at 217 (7th Cir. 2008) (granting extension to file late response to motion to bar experts due to lack of prejudice and trial more than half a year away). A district court does not abuse its discretion in tolerating a defendant's harmless delay in answering. *Mommaerts v. Hartford Life & Acc. Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007).

Appellee filed its Motion to Dismiss the First Amended Complaint on June 22, 2020 after the responsive pleading deadline. In the months preceding the filing, the parties had prepared for and engaged in a settlement conference, which was unsuccessful. (Docs. 55, 86). Subsequently, the COVID-19 pandemic and quarantine occurred. This unprecedented time caused district courts to issue various extensions and orders governing proceedings during the pandemic. (Doc. 108, p. 6). The District Court held a status conference on July 22, 2020 where the parties discussed, among other things, AVMA's late filing and unrelated discovery issues. (Doc. 86). At the hearing, the District Court heard from both sides, concluding the Appellants had no objection to the late filing, giving leave for the extension and accepting the filing, and providing Appellants an extension to file their Response brief. (Doc. 104, p. 6-7; Doc. 86).

---

neglect for untimely filing an appeal. *See Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 133-34 (7th Cir. 1996); *Satkar Hospitality, Inc. v. Fox Television Holdings*, 767 F.3d 701 (7th Cir. 2014). While they may be used for persuasive purposes, timely notice of filing an appeal differs because it is a jurisdictional issue. *Howard v. Loc. 74, Wood, Wire & Metal Lathers Int'l*, 208 F.2d 930, 932 (7th Cir. 1953) (distinguishing between the time limitation for filing an appeal and general extensions for time under Rule 6(b)).

In their Response brief, Appellants included a request to strike the Motion because it was beyond the deadline, purportedly contained little or no substance, and was an intentional attempt to obstruct the progress of the case. (Doc. 92, ¶¶ 5-8). They incorporate these allegations in their Appellate Brief to show they were prejudiced by the filing. The District Court supported the extension of the deadline in its Memorandum explaining the delay occurred in part due to the unprecedented COVID-19 pandemic, the extension was within their discretion to manage their dockets, Appellants received numerous extensions in the litigation, the delay was harmless and did not prejudice Appellants, and Appellants did not object to the extension when asked. (Doc. 104, p. 6-7).

District courts routinely grant extensions. *See e.g.*, *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998) (discussing district court's decision to allow response to motion to dismiss after court issued its ruling due to excusable neglect); *Pederson v. S. Illinois Hosp. Servs.*, No. 3:18-CV-2131-NJR, 2020 WL 2989147, at *2 (S.D. Ill. June 4, 2020) (finding one year delay in filing amended complaint excusable neglect). The COVID-19 pandemic began in January 2020, resulting in lockdown and quarantine in Illinois for numerous months, including March through June 2020. During this time, the District Court extended all deadlines by sixty days. (Doc. 104, p. 6) (acknowledging the automatic extension occurred after the responsive pleading deadline, but refusing to ignore the impact COVID-19 had on the parties). Based on the unusual circumstances, Appellee's neglect is excusable and not egregious enough to warrant a reversal. *See cf.*, *Bd. of Trustees of Pipe*

*Fitters' Ret. Fund, Loc. 597 v. Com. Cooling & Heating, Inc.*, No. 13 C 7731, 2019 WL 2269959 (N.D. Ill. May 28, 2019) (extension denied when attorney committed fraud on the court by lying about date of filing, producing a fake screenshot of filing error, and missing numerous court appearances). The District Court acted reasonably within its discretion to allow AVMA's Motion to Dismiss the First Amended Complaint.

The District Court correctly concluded Appellants were not prejudiced by the delay. AVMA did not plan the timing of filing of its Motion to "vex and harass" or in "an intentional attempt to obstruct" Appellants. (Doc. 92, ¶¶ 8, 9). Neither of Appellee's motions to dismiss resulted in a stay of discovery. The parties were engaging in written discovery and had not yet begun oral discovery. As a result, the extension caused no delay. Additionally, the District Court afforded Appellants the same discretion by granting them numerous extensions, including contemporaneously granting them an extension to respond and continuance of the scheduling order. (Docs. 41, 44, 82, 86, 98, 102).

As the District Court reasonably granted the extension, it also did not abuse its discretion in denying the requests to strike and enter default judgment. Nonetheless, a default judgment is an extreme sanction and should not be used before less extreme steps. *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 878 (7th Cir. 1988). "Using a default judgment to strip the winner of its rights, in response to non-prejudicial neglect, cannot be appropriate. It would be a pointless windfall." *Mommaerts v. Hartford Life & Acc.*

*Ins. Co.*, 472 F.3d 967, 968–69 (7th Cir. 2007). It is not an abuse of discretion to deny a motion for default judgment when the complaint is subsequently properly dismissed for failure to state a claim. *Id.*; *Jackson v. Vill. of W. Springs*, 612 F. App'x 842, 847 (7th Cir. 2015). Here, entering a default judgment for a late filing would have been disproportionate and inappropriate in this matter, especially given Appellants' deficient Complaint. Finally, a district court must issue an explicit and direct warning that a subsequent failure to comply with a court order will result in default judgment. *Ball*, 2 F.3d at755. Because the District Court never warned or cautioned regarding a possible default judgment, denial of Appellant's request for default judgment was proper.

Even if the District Court granted Appellants' request to strike the late filing, Appellants still would not receive the dispositive relief they seek. Because a default judgment is inappropriate, if the District Court had granted the request to strike, it would have only caused a delay and further motion practice. Finally, federal courts and the Federal Rules favor resolving cases on the merits, not on technicalities. For these reasons, the District Court did not abuse its discretion by granting AVMA an extension and denying Appellants' request to strike and for default judgment.

## B. The District Court acted within its discretion by dismissing the First Amended Complaint with prejudice because amendment would be futile.

### I.  Standard of Review

The Court of Appeals reviews a district court's decision to deny leave to amend for an abuse of discretion and reverses only if no reasonable person could

agree with that decision. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860–61 (7th Cir. 2001); *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 694 (7th Cir. 2008).[3]

## II.    Argument

### 1.    Appellants waived their argument that dismissal with prejudice was improper.

Appellants cite to no pertinent authority in support of their argument that granting their motion with prejudice was an abuse of discretion. Appellants include only a vague citation regarding the pleading burden without application to the instant facts, which is insufficient and warrants waiver. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

### 2.    The District Court properly granted dismissal of the First Amended Complaint with prejudice because amendment would be futile.

Although leave to amend should be freely granted when justice so requires, a district court may properly deny leave for undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. *Bethany Pharmacal Co.*, 241 F.3d at 861. An amendment is futile when it merely restates the same facts using different language, reasserts a claim previously determined, fails to state a valid theory of liability, or could not withstand a motion to dismiss. *Bower v. Jones*, 978 F.3d 1004, 1008 (7th Cir. 1992); *Bogie v. Rosenberg*, 705 F.3d 603, 611-13 (7th Cir. 2013).

As evidenced by its Memorandum, the District Court reasonably dismissed

---

[3] While Sections B and C of Appellants' Brief deal with different District Court rulings, they are dependent upon the same legal analysis. However, Appellee follows and responds to the headings and arguments presented by Appellants to avoid confusion.

the First Amended Complaint with prejudice because amendment would be futile. Appellants incorrectly argue that dismissal with prejudice was an abuse of discretion because the First Amended Complaint stated claims, dismissal with prejudice was an unfair sanction, and because of an alleged lack of documents to prove their claims. The District Court dismissed Appellants' claims with prejudice not as a sanction, but because Appellants could not cure its pleading deficiencies.

Specifically, the waiver bars Dr. Gunawardana's claims under the Illinois UCC, Title VII, Section 1981, and the ADA. As a result, any factual amendments to these claims are futile. Further, Appellant Seely lacks standing to bring suit against the AVMA, making amendment of his Sherman Antitrust and ADA claims futile. Even if the waiver was unenforceable and Seely had standing, the District Court did not abuse its discretion because Appellants cannot plausibly state claims as detailed in full in Section E(II) below, which Appellee incorporates herein by reference. For example, Appellants cannot plausibly allege the following: a contract for goods under the Illinois UCC, AVMA discriminated against her due to her race as required by Title VII and Section 1981, AVMA issues licenses or she has a protectable property interest in her certification, AVMA restricts the veterinary field and holds a monopoly power for an antitrust violation, she filed suit within two years of the denial of her accommodation or it is an ongoing violation under the ADA, or any conspiracy with a racial-based motive actionable under Section 1985(3). As such, Appellants cannot cure their deficiencies and they would not survive another motion to dismiss, making amendment futile.

The District Court also properly ruled to grant the Motion with prejudice because allowing Appellants another opportunity to plead would cause an undue delay and prejudice to AVMA, as explained in Section C(II) and incorporated herein by reference. For these reasons, the District Court did not abuse its discretion by granting the Motion to Dismiss the First Amended Complaint with prejudice.

## C. The District Court did not abuse its discretion in denying Appellants' Second Motion to Amend the Complaint.

### I. Standard of Review

A district court's decision to grant or deny leave to amend is reviewed for abuse of discretion. *Bethany Pharmacal Co.*, 241 F.3d at 860–61.

### II. Argument

#### 1. Appellants waived this argument by failing to develop it and cite to legal authority.

Appellants cite to no pertinent authority in support of their argument that granting their motion would not cause undue delay or prejudice to AVMA. Section C is thus underdeveloped and unsupported, requiring waiver. *Berkowitz*, 927 F.2d at 1384.

#### 2. The District Court reasonably denied the Second Motion for Leave to Amend.

Appellants cannot prove that no reasonable judge would have denied its motion for leave to amend. Federal Rule 15(a) provides that after a party has amended its pleading once by right, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FRCP 15(a). "The terms of the rule, however, do not

26

mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir.2002). Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman,* 371 U.S. at 182.

Three months after the parties briefed the Motion to Dismiss the First Amended Complaint, Appellants moved for leave to file their third complaint. (Doc. 96). AVMA's first motion to dismiss remained pending for seven months without ruling before the District Court granted Appellants leave to amend. (Docs. 22 23, 51, 61). The continued scheduling orders amended dates for discovery, dispositive motions, and deadlines - but did not alter the December 5, 2019 deadline to amend pleadings. (Docs. 37-1, 88). As such, on November 9, 2020, the District Court denied the motion reasoning that it was delayed and is prejudicial to AVMA because of its pending Motion to Dismiss. (Doc. 97).

The District Court reasonably denied leave to amend because of undue delay, prejudice, and futility of allowing the amendment.[4] Appellants' delay in moving to amend coupled with the undue prejudice to AVMA constitutes sufficient basis for denying leave to amend. *Park*, 297 F.3d at 612; *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002). *Thompson* is instructive of this principle. There, plaintiff brought claims for violation of Section 1981, state law breach of

---

[4] The futility argument is in Section B(II)(2) and incorporated herein by reference.

contract, and denial of the Equal Protection Clause. 300 F.3d at 753. The defendant moved to dismiss the original complaint. *Id.* at 759. A month later plaintiff filed a second amended complaint, which defendant moved to dismiss. *Id.* The court granted defendant's motion to dismiss in part without prejudice and denied it in part. *Id.* A month later, the defendants moved to dismiss the remaining counts. *Id.* While the motion to dismiss was under consideration, plaintiff again sought leave to file a third complaint. The court granted the motion to dismiss in part with prejudice and denied leave to amend, concluding further amendments would be futile. *Id.* In affirming the denial of leave to amend, this Court reasoned that plaintiff continuously failed to cure deficiencies and instead played a "cat and mouse game of motions to dismiss followed by a motion to amend." *Id.* "The last delay prejudiced the defendants by forcing them to articulate reasons for dismissal, and, at the same time providing [plaintiff] the opportunity to correct mistakes facially apparent since the first complaint after the defendants had shown their hand." *Id.*

As in *Thompson*, Appellants have attempted to get a second bite at responding to the valid arguments AVMA raised in its motions to dismiss by filing an amended complaint before ruling, rendering AVMA's motion moot. The First Amended Complaint did not add any new causes of action, nor did it cure the substantive deficiencies in Appellants' case from the outset. The District Court acted reasonably in denying Appellants' motion for leave to file its third complaint in this matter due to the delays in moving to amend until after fully-briefed motions

to dismiss, resulting in prejudice to the AVMA.

Appellants argue that because the District Court granted AVMA an extension to file its Motion to Dismiss the First Amended Complaint, it should have also granted Appellants leave to file the Second Amended Complaint to respond to the Motion. First, Appellants did in fact contemporaneously receive an extension to file a response to the Motion and to continue the scheduling order. (Docs. 86, 88). More importantly, this highlights the Appellants' flawed argument for leave to amend. Appellants are not entitled to play a "cat and mouse game" by continuously filing amendments to cure facially apparent deficiencies a defendant raises in its motion to dismiss, especially when those attempts are unsuccessful. *See Thompson*, 300 F.3d at 759. Appellants were aware of the pleading hurdles they needed to overcome through AVMA's original motion to dismiss. *Cooney v. Rossiter*, 583 F.3d 967, 972 (7th Cir. 2009) (affirming denial of motion to file second amended complaint because plaintiff "had filed that complaint after the defendants filed motions to dismiss her original complaint, and from those motions she was aware of the pleading hurdles that she would need to clear."). As detailed in Appellee's second Motion to Dismiss and the District Court's Memorandum, Appellants failed to cure these deficiencies. Finally, the prejudice resulting to AVMA in expending considerable costs to defend a case without a viable cause of action for almost two years is significantly greater than the prejudice, if any, Appellants incurred in being unable to receive default judgment on a technicality for a frivolous claim.

For these reasons, the District Court did not abuse its discretion by denying

Appellants' Motion to Amend and file a second amended complaint.

## D. The District Court's January 28, 2021 Memorandum and Order is accurate.

### I.     Standard of Review

A district court's finding of facts are reviewed with great deference, only reversing for clear error. *Emps. Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 941 (7th Cir. 1999).

### II.     The District court did not commit a clear error in its factual findings.

While the relief requested under this section is unclear, the District Court's Memorandum and Order succinctly and accurately detailed the proceedings. Appellants unfairly read negative implications and bias in the ruling. First, the District Court is not required to detail every procedural event in its ruling. Second, the District Court's statements are basic facts verified by the docket. The statement that it granted Appellants extensions earlier in the litigation is confirmed by the docket. (Docs. 41, 44, 82, 86, 98, 102). There is no indication whatsoever that the District Court believed these extensions were caused by Appellants' neglect. The fact that the District Court granted Appellants leave to file its First Amended Complaint while Appellee's original motion to dismiss had been pending for seven months is also a verifiable fact. (Docs. 22, 23, 51, 62). The date of filing of Appellant's First Amended Complaint is also a basic fact. (Doc. 63). In detailing these facts, District Court was merely supporting its reasonable decision, which is it not only entitled but required to do.

Appellants repeat their contention that the extension was improper, which Appellee addresses in Section A above. However, Appellee notes additional issues with Appellants rationale. Appellee agrees it would have been ideal if the District Court ruled on either of its motions to dismiss before almost two years of litigation. However, the District Court is under no obligation to inform a plaintiff of its procedural defects before accepting an amended complaint. The District Court correctly stated that Appellants had two opportunities to state claims, the original Complaint and First Amended Complaint. (Docs. 2, 63). Further, despite the fact that considerable discovery did occur, Appellants are not entitled to rely on discovery without first plausibly stating a cause of action. *Affordable Bus. Interiors, Inc. v. Pomeroy IT Sols. Sales Co.*, 336 F.R.D. 162, 163 (N.D. Ill. 2020) *(quoting Ashcroft*, 556 U.S. at 678-79) ("'notice-pleading rule' does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

## E. The District Court did not err in its January 28, 2021 Memorandum and Order dismissing the First Amended Complaint.

### I. Standard of Review

A district court's decision to grant a motion to dismiss for failure to state a claim is reviewed de novo. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

### II. Argument

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While the Complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id*. at 555. The plaintiff

must pleads facts that allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *McReynolds v. Merrill Lynch & Co.*,

694 F.3d 873, 885 (7th Cir. 2012) (internal citations and quotation marks omitted)

(*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In addition, legal conclusions are

insufficient to survive a Rule 12(b)(6) motion. *Id.* Furthermore, "a party may plead

itself out of court by either including factual allegations that establish an

impenetrable defense to its claims or by attaching exhibits that establish the same."

*Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

### 1. The release in Dr. Gunawardana's application bars her claims.

Dr. Gunawardana signed a waiver releasing AVMA from any legal actions

arising out of her application, certification, and examinations. (*See* Doc. 81, Ex. 1[5]).

Dr. Gunawardana's claims for unconscionable contract and violations of Title VII,

Section 1981, and the ADA arise out of her application, examinations, and

certification process. As such, they are barred by the release.

*Sanjuan v. American Board of Psychiatry & Neurology* is directly analogous.

There, two psychiatrists failed oral examinations necessary to receive certification

and lost their subsequent appeals. *Id.* at 248. The psychiatrists alleged violations of

the Sherman Act, the Fourteenth Amendment, and state law. *Id.* at 249. The

psychiatrists executed a release nearly identical to the one signed by Dr.

---

[5] A court can consider attachments to a 12(b)(6) motion to dismiss without converting it to a motion for summary judgment when it is referred to in the complaint and is central to plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). The First Amended Complaint directly addresses the waiver and Dr. Gunawardana seeks to hold it unenforceable under Count I. (Doc. 63, p. 19, ¶¶ 54-57).

Gunawardana releasing the defendant from all suits "arising out of, or in connection with, this application, the grade or grades given with respect to the oral or written examinations or the failure of the Board to issue me [a] certificate." *Id*. The psychiatrists argued that the releases were unconscionable contracts of adhesion. *Id*. The Seventh Circuit noted that Illinois enforces covenants not to sue. *Id*. The Court affirmed the dismissal finding the releases were "no more [unconscionable] than the other standards for application, including paying fees and passing tests." *Id*. It explained that the Board, as a private organization, is entitled to set the rules of application and membership and may also "insist that applicants agree to a legal cease-fire." *Id*.

Similar agreements for other national certifications have been upheld in other jurisdictions. *See, e.g.*, *Whyte v. Am. Bd. of Physical Med. & Rehab.*, 393 F. Supp. 2d 880, 888–90 (D. Minn. 2005); *Balaklaw v. Am. Bd. of Anesthesiology, Inc.*, 562 N.Y.S.2d 360, 361–63 (Sup. Ct. 1990); *Am. Registry of Radiologic Technologists v. McClellan*, No. 300-cv-2577, 2003 WL 22171702, at *2–3 (N.D. Tex. Mar. 5, 2003). In these cases, the courts "have upheld release provisions that bar medical professionals from suing a certifying board because of actions taken by the board during the certification process." *Whyte*, 393 F.Supp.2d at 889.

In response, Appellants argue that the economic necessity exception should apply to make the release unenforceable. (Doc. 92, ¶¶ 25 26, 29). The First Amended Complaint attacks the release only because it is unconscionable and lacks any allegations to show an ECFVG certificate is an economic necessity. (Doc. 63, ¶¶ 54-

58). Nonetheless, Appellants are unable to prove the economic necessity exception because the AVMA does not issue licenses to practice veterinary medicine. Even if Dr. Gunawardana obtained her ECFVG certification, she is required to pass numerous other steps to obtain her license, which is issued by each state. As such, the District Court reasonably relied on *Sanjuan* to find the release enforceable.

### 2. Dr. Gunawardana cannot state a claim under the Illinois UCC.

Even if the release did not bar claims arising out of the application and Gunawardana's examination and certification,[6] Dr. Gunawardana failed to state a claim for each of her causes of action. Under the Illinois UCC, a court may find a contract unenforceable because it is unconscionable. 810 ILCS 5/2-302. The Illinois UCC "applies to transactions in goods" and does not apply to contracts for services. *Id.*; *Illinois Power Co. v. Figgie Int'l, Inc.*, 1989 U.S. Dist. LEXIS 13983, at *16 (N.D. Ill. Nov. 17, 1989).

Dr. Gunawardana alleges "ECFVG engages in a contract with each candidate **for a service** in exchange for money, to evaluate their professional knowledge and skills for a certificate making them eligible to apply for US licensure." (Doc. 63, ¶ 54) (emphasis added). The application is a contract that provides a certification program in exchange for a fee, and does not guarantee an ECFVG certificate. (Doc. 81, Ex. 1, p. 24). Dr. Gunawardana cannot plausibly state a claim under the Illinois UCC because it applies only to transactions involving goods. Appellants conclude,

---

[6] Dr. Gunawardana seeks to hold the release unenforceable under Count I. Therefore, this claim arises out of the application and falls within the scope of the release.

without citation to any authority, that the ECFVG certificate qualifies as a "good." The Illinois UCC defines goods as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale…." 810 ILCS 5/2-105(1). Neither a certification program nor an ECFVG certification constitute a movable good. As a result, Dr. Gunawardana cannot state a claim under the Illinois UCC.

### 3. Dr. Gunawardana cannot establish a claim for Title VII discrimination.

Dr. Gunawardana cannot state a clam under Title VII because the release bars the claim and she has failed to establish AVMA's alleged actions fall under the purview of Title VII. Releases for Title VII claims are enforceable absent allegations of misrepresentations or coercion. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996); *see also Pierce v. Atchison Topeka & Santa Fe Railway Co.*, 110 F.3d 431, 436-41 (finding release not enforceable because it was an ADEA claim and involved misrepresentations, time issues, and lack of consideration). As such, the release bars the Title VII claim.

Dr. Gunawardana fails to allege a Title VII violation because AVMA is not an employment agency or labor organization.[7] Title VII prohibits certain "unlawful employment practices." 42 U.S.C. § 2000e-2. Dr. Gunawardana could maintain a claim against the AVMA only if: (1) AVMA is Gunawardana's employer,

---

[7] Appellants argue that the District Court improperly included additional reasons for dismissal *sua sponte*. A district court does not err in dismissing a claim *sua sponte* "if it appears beyond doubt that he is unable to prove any set of facts that would entitle him to relief." *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992).

employment agency, or labor organization; (2) AVMA committed an "unlawful employment practice" towards Dr. Gunawardana; and (3) the Equal Opportunity Commission previously dismissed, or failed to file, a civil action. See 42 U.S.C. §§ 2000e(b), 2000e(f), 2000e-2, 2000e-5(f)(1).

The First Amended Complaint alleges that AVMA is an employment agency because it maintains a career center that matches potential employees with employers. (Doc. 63, ¶¶ 59-60). Dr. Gunawardana includes a conclusory allegation that the AVMA is an "employment agency" or "labor organization" within the meaning of the Act. (Doc. 63, ¶ 61). This conclusion of law, without any facts, is insufficient to establish AVMA is an employment agency or labor organization.

AVMA does not constitute Dr. Gunawardana's employment agency or labor organization for purposes of Title VII, nor does her claim arise out the alleged employment services. Under Title VII, an employment agency "means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S. Code § 2000e(c). A labor organization is "any organization of any kind, any agency, or employee representation committee, group, association, or plan...in which employees participate and which exists for the purpose, in whole or part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment...." 42 U.S.C. § 2000e(d). Nonprofit professional certification organizations such as the AVMA do not fall under the purview under Title VII merely for having a career

center. *See*, *e.g.*, *Zamani v. American Dental Ass'n*, 1998 U.S. Dist. LEXIS 18510, at *10, 1998 WL 812545, at *4 (N.D. Ill. November 17, 1998). Other federal circuits have reached the same conclusion. *Woodard v. Virginia Bd. of Bar Examiners*, 598 F.2d 1345 (4th Cir. 1979) (case dismissed because the Board of Bar Examiners is not an "employment agency" within meaning of Title VII); *George v. New Jersey Bd. of Veterinary Med. Examiners*, 794 F.2d 113, 114 (3d Cir. 1986) (New Jersey Board of Medical Examiners not an employment agency). Importantly, Dr. Gunawardana does not contend that AVMA discriminated against her due to any referral or placement services for employment, but instead in failing to issue her certification.

*Zamani* presents almost identical facts to the instant matter. There, plaintiff brought suit for alleged violations of Title VII, Section 1981, Section 1983, and breach of contract. 1998 WL 812545, at *1. Plaintiff completed dental school in Iran and attempted to obtain his certification, but failed twice. *Id*. After graduating from a New York dental school, he took the exam numerous times and failed. *Id*. at *1-2. Plaintiff reviewed his exam results and allegedly discovered they were incorrect. *Id*. at *2. Plaintiff alleged that the defendants made discriminatory comments about foreign graduates. *Id*. The district court held plaintiff failed to plead the defendants qualified as an employment agency because he did not allege they referred dentists to employers that meet the statutory definition of an employer. *Id*. Additionally, plaintiff failed to allege the organizations dealt directly with employers concerning working conditions to constitute a labor organization. *Id*. As such, the court dismissed the Title VII claim *with prejudice*. Id. at *7 (emphasis added).

37

As in *Zamani*, Dr. Gunawardana does not allege that AVMA referred her to employers, nor does she allege that it deals with employers concerning work conditions. This is fatal to Dr. Gunawardana's Title VII claim.

Finally, the District Court correctly found Gunawardana failed to include allegations that AVMA discriminated against her based on race or national origin. The EEOC defines "national origin" discrimination broadly to include discrimination "because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. Dr. Gunawardana's entire case rests on her allegations that she was subject to discrimination because she is a graduate of a foreign veterinary school, not because she was from Sri Lanka or had Sri Lankan characteristics. (Doc. 63, ¶¶ 4, 8, 10, 19, 31, 49, 58, 64. The ECFVG procedures apply to all foreign graduates. (Doc. 63, ¶ 19; *see also* Doc. 63, Ex. 3, p. 60). This logically includes not only white students, but students from the United States who obtained degrees from non-accredited programs. As such, Appellant has failed to allege any racial animus.

For these reasons, Dr. Gunawardana cannot plausibly state a claim for Title VII discrimination against the AVMA, and the District Court properly dismissed this claim with prejudice.

### 4. Appellant's Section 1981 claim is deficient.

For similar reasons, Dr. Gunawardana cannot plead a Section 1981 violation.[8] To establish a claim under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir. July 12, 1996). Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). National origin discrimination is not actionable under Section 1981. *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). "'In the absence of an allegation of racial animus, either explicit or reasonably inferable from the pleadings,' a section 1981 claim must be dismissed." *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984) (affirming dismissal of Section 1981 claim due to allegations only of discrimination based on being from Iraq); *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 352 (7th Cir. 1987) (reversing dismissal of Section 1981 claim because plaintiff sufficiently alleged discrimination due to being member of "Negro or Brown race" and receiving racially-motivated ethnic slurs).

Here, Dr. Gunawardana fails to include allegations that plausibly show AVMA intended to discriminate against her on the basis of race, a requisite element

---

[8] Dr. Gunawardana's Section 1981 arises out of AVMA's decision to decline to give her a certificate. *See Gatachew v. PartyLite Worldwide, Inc.*, 2011 WL 5507382, at *2 (N.D. Ill. Nov. 10, 2011).

of a Section 1981 claim. In an attempt to circumvent the fact that Section 1981 does not encompass national origin discrimination, Dr. Gunawardana alleges only she is a citizen from Sri Lanka, which is a protected class due to race under Section 1981. (Doc. 63, ¶ 66). This barebones conclusion that she is in a protected class and was discriminated against due to her race lacks factual support.

Dr. Gunawardana's allegations contradict this legal conclusion. As explained above, the essence of Dr. Gunawardana's entire claim is that the AVMA imposes greater burdens on graduates of foreign veterinary schools. (Doc. 63, ¶¶ 4, 8, 10, 19, 31, 49, 58, 64). This necessarily includes white and domestic-born graduates. Dr. Gunawardana admits that the "ECFVG policies are generally discriminatory to all its candidates," not against her on the basis of her race. (Doc. 63, ¶ 68). As such, she has pleaded an impenetrable defense.

Even if Dr. Gunawardana could plausibly allege she was discriminated against based on her race, she failed to allege the AVMA deprived her of a right to make or enforce a contract or refusal of service. *Morris*, 89 F.3d at 413 (plaintiffs could not establish Section 1981 claim when store interfered with their right to purchase, but did not deny them admittance or service). Gunawardana alleges she entered a contract with the AVMA for certification where the ECFVG evaluates her professional knowledge and skills for a certificate. (Doc. 63, ¶ 54). The First Amended Complaint does not allege that the AVMA refused to evaluate her skills and proceed through the certification process, but that she believes it wrongfully

failed her while administering her exams. This is insufficient to state a claim for
Section 1981.

### 5. The First Amended Complaint lacks allegations to establish a claim for violation of the Equal Protection Clause.

Appellants' Brief under this Section does not present a sufficient argument or
provide authority for this Court to render a decision. Appellant includes quotes and
incorporates by reference parts of her Responses to the original motion to dismiss
(which is not at issue here) and the Motion to Dismiss the First Amended
Complaint. Appellant cites to no authority supporting the argument that AVMA is a
state actor because it was formed at the request of state boards, or that certification
of an education is a property interest. As such, the Court should find Appellant
waived this argument. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927
F.3d at 1384.

Even if Appellant presented a substantive argument in the Brief, Dr.
Gunawardana cannot state a claim against the AVMA for violation of the Equal
Protection Clause because the AVMA is not a state actor and she has no property
interest. The Fourteenth Amendment protects citizens from government conduct,
not conduct by private actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982);
*Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). "State action" has two components: (1) the
deprivation must be caused by the exercise of some right or privilege created by the
state or by a rule of conduct imposed by the state; and (2) the party charged with
the deprivation must be a person who may fairly be said to be a state actor." *Lugar
v. Edmondson Oil Co.*, 457 U.S. 922, 925 (1982).

### a. The AVMA is not a state actor and did not exercise a state right.

Dr. Gunawardana fails to plausibly allege the AVMA's private action has become that of the state. She alleges the AVMA is a state actor because all state regulatory boards accept and require ECFVG certification as the prerequisite for veterinary licensure, AVMA is recognized as the sole accrediting authority for veterinary education, AVMA receives federal funding, and AVMA officials are intertwined with government agencies. (Doc. 63, ¶¶ 71, 75). Dr. Gunawardana argues that the AVMA exercised a state right to deprive her of her U.S. veterinary license. (Doc. 63, ¶ 82). However, only the states – not the federal government – issue veterinary medicine licenses. Even if Plaintiff were to pass the CPE, she still would need to apply for and pass the North American Veterinary Licensing Examination or its successor and the State Board Examination to obtain her license in Missouri. *See* 4 CSR 270-2.031.

Because the ECFVG certificate does not equal licensure, the AVMA has not exercised any state right, privilege, or rule of conduct. *See Staudinger v. Educational Comm. for Foreign Medical Graduates*, No. 92-civ-8071-LJF, 1993 U.S. Dist. LEXIS 5576, at *5-16 (S.D.N.Y. Apr. 27, 1993) (holding that the "work performed by ECFMG – testing and otherwise certifying that foreign medical school graduates are qualified to practice medicine" was not performed under color of state law because a certificate did not equal licensure). As a result, Plaintiff cannot establish the first prong of state action.

Additionally, the AVMA is not a state actor. The AVMA is a private entity, not a "quasi-government entity" as Dr. Gunawardana contends. (Doc. 63 ¶ 74). The AVMA does not issue veterinary licenses, which Dr. Gunawardana acknowledges. A private entity that creates and administers an examination that is required for state licensures is not a state actor. *Sanjuan*, 40 F.3d at 250 (American Board of Psychiatry and Neurology is not a state actor because it does not issue licenses to practice); *Zamani*, 1998 WL 812545, at *5-6 (American Dental Association was not a state actor where the plaintiff alleged that the examinations it administered were "a prerequisite to receiving a license to practice dentistry in New York" (internal quotation marks omitted)); *see also Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 518 F. App'x 863, 866 (11th Cir. 2013) (discussing defendant is not a state actor because it was not empowered to license physicians). The AVMA does not become a state actor solely by receiving federal funding and being subject to government regulation. *United States v. Virginia*, 518 U.S. 515, 599 (1996); *Harris v. Wisconsin Dialysis Inc.*, No. 08-CV-283-SLC, 2008 WL 2468427, at *3 (W.D. Wis. June 17, 2008); *Covington v. Nat'l Univ.*, 2015 U.S. Dist. LEXIS 159138, at *3 (N.D. Ill. Nov. 25, 2015). The District Court correctly determined that the dispositive issue is that the AVMA does not issue licenses, and thus is not a state actor.

### b. Dr. Gunawardana has no protective property interest in certification of her education.

Dr. Gunawardana's Equal Protection claim fails because she has no property interest in certification of her veterinary education. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He

must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property is what is "securely and durably yours," and not "what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016). Courts in other jurisdictions have held that the expectation of a professional license is not a property interest protected by the 14th Amendment. *Elias v. Educ. Comm'n for Foreign Med. Graduates*, 2010 N.J. Super. Unpub. LEXIS 2663, 2010 WL 4340640, at *3 (N.J. App. Nov. 4, 2010) (finding protected right in a professional license comes into existence only after a license has been obtained); *Metzger v. Nat'l Comm'n on Certification of Physician Assistants*, No. 00-CV-4823, 2001 U.S. Dist. LEXIS 658, 2001 WL 76331, at *2-4 (E.D. Pa. Jan. 26, 2001).

Dr. Gunawardana does not allege that the AVMA is depriving her of a veterinary license she already obtained. Instead, she alleges she should be entitled to her license. (Doc. 63, ¶ 82). It remains that Dr. Gunawardana has not passed the CPE, has not obtained her ECFVG certification, and has not passed the state examination. As such, she has nothing more than an uncertain desire for a license (which AVMA does not issue) and cannot plausibly allege a protectable property interest under the Fourteenth Amendment.

### 5. Dr. Gunawardana cannot establish a Sherman Antitrust violation.

While the release does not bar Dr. Gunawardana's Sherman Antitrust claim, Dr. Gunawardana has failed to show a restriction on trade or a cognizable injury. Appellant may not allege bare legal conclusions without setting forth facts that at least outline a violation of the Sherman Act. *Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 417 (7th Cir. 1986), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996). Dr. Gunawardana contends the AVMA is the authority on accrediting veterinary education, and therefore it controls who can enter the market as a veterinarian. (Doc. 63, ¶ 89). AVMA uses this alleged authority by "flooding the market" with graduates from distributive model schools, thereby restricting foreigners, minorities, and graduates from traditional research-model institutions from practicing as veterinarians. (Doc. 63, ¶¶ 89, 92, 107, 108). Dr. Gunawardana contends she is adversely affected as a professional. (Doc. 63, ¶ 94). Because Dr. Gunawardana has alleged an increase in the market and only an injury as a professional, she has pled herself out of this claim.

To plead a Section 1 violation, Appellants must plead facts plausibly suggesting: (1) a contract, combination, or conspiracy (*i.e.*, an agreement); (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). First, Appellants have not alleged sufficient facts that give rise to an alleged conspiracy or agreement to restrict foreign veterinarians in the veterinary field. *Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010). Second, Dr.

Gunawardana fails to allege an unreasonable restraint of trade in a relevant market. She alleges only that the AVMA is "flooding the market" with certain graduates. (Doc. 63, ¶¶ 89, 92, 107, 108). As the District Court properly noted, AVMA flooding the market with veterinarians logically results in an increase in the relevant market. Dr. Gunawardana also fails to plead an actionable injury. She reiterates in the Appellate Brief that AVMA restricts the entry of *foreign* veterinarians into the market, preventing consumers from receiving care by a "certain group" of veterinarians. However, it is not enough to allege a decrease in trade from a specific provider or group. *Sanjuan*, 40 F.3d at 251; *Frantzides v. Northshore Univ. HealthSystem Fac. Prac. Assocs., Inc.*, 787 F. Supp. 2d 725, 732 (N.D. Ill. 2011) (surgeon did not state antitrust claim alleging decrease in his own services when patients were still able to obtain services from other surgeons). Appellant has failed to allege a decrease in the total output of care.

Dr. Gunawardana similarly fails to establish a violation of Section 2. A Section 2 monopolization claim has two elements: (1) the possession of monopoly power, giving an entity the ability to raise prices or exclude competition in the relevant market, and (2) the willful acquisition or maintenance of that power through exclusionary conduct. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Dr. Gunawardana's conclusion that AVMA somehow has the power to increase the price of veterinary services due to an alleged monopoly over certification is unsupported. (Doc. 63, ¶¶ 3, 94). As explained above, Appellant alleges AVMA has flooded the market with non-foreign graduates, not restricted the

supply of veterinarians. *Sanjuan*, 40. F.3d at 52 ("[T]he Sherman Act is not a precursor to the Civil Rights Act of 1964"). Therefore, Appellants fail to sufficiently allege a monopoly, power to raise prices, or exclusionary conduct.

Appellants do not allege how AVMA has used its power to restrict the veterinary field as a whole. For these reasons, Appellant fails to state claims under Sections 1 and 2 of the Sherman Antitrust Act.

### 6. Dr. Gunawardana has not established a racially motived conspiracy actionable under Section 1985(3).

Appellant does not include any supporting authority to establish its Section 1985(3) claim, and therefore, has waived this argument. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

Section 1985(3) provides a private right of action to recover damages caused by certain conspiracies. To establish a claim, a plaintiff must allege the following: (1) two or more defendants conspired; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws or of equal privileges and immunities under the laws; (3) one or more of the conspirators acted in furtherance of the conspiracy; and (4) such an act injured the person or his property or deprived him of exercising any right or privilege of a citizen of the United States. *Kowalski v. Boliker*, 893 F.3d 987, 1001 (7th Cir. 2018).

Appellant has not plausibly alleged any element of a Section 1985(3) claim. Under Count VI, Appellant alleges that AVMA is an atypical corporation that conspires with itself. (Doc. 63, ¶¶ 97, 98). She then concludes that based on its functions, a conspiracy between its members or outside entities is plausible. (Doc.

63, ¶ 98). However, a corporation and its subsidiaries and employees are not capable of conspiring with each other when acting in the scope of employment. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984); *Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.*, 4 F.3d 465, 470 (7th Cir. 1993). It is insufficient to merely conclude that the AVMA should not be shielded by the intracorporate conspiracy doctrine and that a conspiracy is plausible without any factual support. Similarly, Count V lacks any allegations regarding the required personal discriminatory intent or act in furtherance of the conspiracy. *Hartman*, 4 F.3d at 470.

Appellant does not contest the lack of allegations regarding a conspiracy between Banfield and AVMA. Nonetheless, Appellant alleges a conspiracy between AVMA and Banfield for a financial motive, not any racial or other class-based motive. (Doc. 63, ¶ 89, 93); *Kowalski*, 893 F.3d 987 (affirming dismissal of Section 1985(3) complaint due to lack of class-based discriminatory animus). Because the Banfield conspiracy lacks support or a class-based animus, the District Court properly dismissed Count VI.

### 7. Dr. Gunawardana's ADA claim is barred by the release and the statute of limitations.

Appellant cites to a single case from a North Carolina district court, which is not binding on this court, and does not indicate how the factually opposite ruling applies to the instant matter.[9] Therefore, this argument is waived. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

---

[9] *Dickinson v. Univ. of North Carolina* held the four-year catchall limitations period under

Dr. Gunawardana cannot state a claim for violations of the ADA because it is barred by the two-year statute of limitations. The Seventh Circuit applies Illinois's two-year statute of limitations for personal injury claims to the ADA. *See Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996) ("discovery of the original act of discrimination, not future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run."). Dr. Gunawardana requested an accommodation from the AVMA on October 11, 2016, which the AVMA denied on October 12, 2016. (Doc. 63, ¶ 100; Doc. 63, Ex. 5). She then took the exam on October 17, 2016. (Doc. 63, Ex. 5). Dr. Gunawardana filed suit on February 1, 2019, almost four months after the statute of limitations expired. (Doc. 2).

Dr. Gunawardana's conclusion that her claim is not-time barred because the violation is ongoing is incorrect. Dr. Gunawardana argues the violation is ongoing because it is etched in ECFVG policies and she should not have to retake an exam she has allegedly passed. However, Dr. Gunawardana retook the examination in November 2017 and was not denied an accommodation. (Doc. 63, ¶ 15). Dr. Gunawardana also admits she will not retake the examination, amending the relief requested in the First Amended Complaint to remove the request to retake the exam. (Doc., 2-2, Section V; Doc. 63, ¶ 113). Dr. Gunawardana fails to allege that

---

28 U.S.C. § 1658 for civil actions enacted after December 1, 2019 applied to ADA discrimination claim because plaintiff's claims were predicated on a September 25, 2008 amendment to the ADA. 91 F. Supp. 3d 755, 764 (M.D. N.C. March 16, 2015). Appellants make no argument that their claim originates from an amendment to the ADA after December 1, 2019. As such, this case has no relevance.

but-for AVMA's alleged violation, she would take the examination. As a result, Dr. Gunawardana cannot allege an ongoing violation and her claim is time-barred.

### 8. Seely does not have Article III standing, requiring dismissal of his claims.

Mr. Seely presents no legal authority to support his standing, and therefore waives appeal of this issue. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

Nonetheless, Appellant Seely does not have standing to bring a claim against the AVMA. To establish Article III standing a plaintiff must have his own injury. Mr. Seely must plausibly establish "(1) an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that is, the injury is fairly traceable to the challenged action of the defendant, not the result of the independent action of some third party not before the court; and (3) a favorable decision likely will redress the injury." *O'Sullivan v. City of Chi.*, 396 F.3d 843, 854 (7th Cir. 2005) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To meet this burden and to survive a challenge to standing, a plaintiff must plead sufficient factual allegations that plausibly suggest each of these elements." *Berger v. NCAA*, 843 F.3d 285, 289 (7th Cir. 2016).

Mr. Seely's status as Dr. Gunawardana's husband is insufficient to establish his own standing to sue the AVMA. The First Amended Complaint alleges that Seely is Dr. Gunawardana's husband and assistant and suffered harm through the

"violation of his disability rights" and "lack of access to services from a diverse group of qualified professionals." (Doc. 63, ¶ 6) A spouse does not have standing to sue in connection with a spouse's entering of a contract or injury. *Collins v. OSF Healthcare Sys.*, 262 F. Supp. 2d 959, 962 (C.D. Ill. 2003) (dismissing claim of bringing ADA claims against deceased husband's employer); *Simonsen v. Bd. of Educ.*, 2001 U.S. Dist. LEXIS 16896, at *27 (N.D. Ill. Oct. 16, 2001) (dismissing family of suspended teacher because relatives indirect suffer does not create standing); *Sinclair v. Bloom*, No. 94 C 4465, 1995 WL 348127, at *10 (N.D. Ill. June 8, 1995) (husband dismissed for lack of standing because allegations show he was not a party to the loan agreement at issue). Mr. Seely did not contract with AVMA to take an examination or request an accommodation. His only alleged injury is indirectly through his wife, Dr. Gunawardana. As such, Mr. Seely lacks Article III standing.

### 9.  Mr. Seely cannot state a claim for violation of the ADA.

Appellant waived his argument under the ADA because he fails to provide any legal authority and merely incorporates by reference his response to the District Court's rule to show cause. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

Even if Mr. Seely had standing and presented an argument, the single allegation under Count VIII is insufficient to establish his claim for violation of the ADA. To allege a violation of the ADA's testing provision, petitioner must allege that he is disabled and that he requested and was denied a reasonable

accommodation. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). Mr.

Seely does not allege he has a disability, requested an accommodation, or that the

AVMA denied him an accommodation. He alleges only that his wife submitted an

accommodation request and the subsequent events caused him stress. (Doc. 63, ¶

105). This is insufficient to state his own ADA claim.

### 10. Mr. Seely has not sufficiently alleged a Sherman Antitrust claim.

Again, Seely has waived his appeal of the dismissal of his Sherman Antitrust

Act violation action because he does not cite any legal authority. FRAP 28(a)(8);

*Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

Nonetheless, Mr. Seely alleges only that he is a consumer of animal

veterinary services and concludes that he has suffered economic damages due to

antitrust violations. (Doc. 63, ¶ 107). Count IX summarily concludes that the

AVMA's alleged restriction on foreign veterinary graduates caused a price hike in

his own medical services and prevents him from receiving veterinary services from

a wide and diverse group of qualified professionals. (Doc. 63, ¶ 108). These

conclusions without any factual support are insufficient under federal pleading

standards. Seely's claim additionally fails for the same reasons as Dr.

Gunawardana's highlighted in Section E(II)(5) *supra*, which Appellee incorporates

herein by reference. For these reasons, Seely cannot plausibly allege a Sherman

Antitrust Act violation.

### F. The District Court did not abuse its discretion by denying Appellants default judgment.

## I.     Standard of Review

District judges have broad discretion over discovery matters and the Seventh

Circuit reviews discovery rulings deferentially, only for abuse of discretion. *Spitz v.*

*Proven Winners N. Am*., LLC, 759 F.3d 724, 733 (7th Cir. 2014). The Court of

Appeals reviews the grant or denial of a default judgment for abuse of discretion.

*Comerica*, 215 F. App'x at 508.

## II.     Argument

This section contains undeveloped statements and no citation to authority

warranting waiver. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d

at 1384.

As explained in Section A(II)(2) above, the District Court did not err in

declining to grant default judgment. In the event the Court construes this section as

arguing the District Court abused its discretion in denying the default judgment as

a discovery sanction, that argument is also meritless and undeveloped. District

court judges have broad discretion over discovery matters. *Spitz*, 759 F.3d at 733. A

default judgment is an extreme sanction and should not be used before less extreme

steps, especially when a plaintiff fails to adequately plead its claims. *Anooya*

*Fabrique de Colorants*, 856 F.2d at 878. As is common, the parties had discovery

disputes and litigated and resolved them with and without the District Court's

intervention. Further, the District Court never threatened default judgment. No

basis exists for entering default judgment as a discovery sanction. Thus the District

Court reasonably denied Appellants' request for default judgment.

Finally, despite including it as an issue for review, Appellants present no argument that the District Court abused its discretion by denying their motion to compel the deposition of Dr. Claude. Therefore, Appellants waive appeal of this ruling. *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384.

<u>**CONCLUSION**</u>

For the foregoing reasons, Appellee American Veterinary Medical Association respectfully requests that this Court affirm the District Court's January 28, 2021 Order and judgment, affirm the November 9, 2020 Order denying Motion to Amend, dismiss the instant appeal, and grant other relief this Court deems just.

## <u>CERTIFICATE OF RULE 32 COMPLIANCE</u>

Pursuant to Seventh Circuit Rule 32(c), I hereby certify that this brief complies with the stated type-volume limitations. The text of this brief was prepared in Century Schoolbook 12 point font, with footnotes in Century Schoolbook 11 point font. All portions of the brief, other than the Disclosure Statements, Table of Contents, Table of Authorities, and the Certificates of Counsel, contain 13,868 words. This certification is based on the word count function of the Microsoft Office Word processing software, which was used in preparing this brief.

Dated:      June 16, 2021          Respectfully submitted:

/s/ *J. Hayes Ryan*
J. Hayes Ryan
Marissa Dellacroce
**GORDON REES SCULLY MANSUKHANI LLP**
One North Franklin, Suite 800
Chicago, Illinois 60606
(312) 565-1400
hayesryan@grsm.com
mdellacroce@grsm.com
*Attorneys for American Veterinary Medical Association*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, I caused a true and correct copy of the foregoing BRIEF OF APPELLEE AND APPENDIX to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that, to my knowledge, all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In addition, on June 16, 2021, the undersigned separately sent the electronically-filed BRIEF OF APPELLEE AND SHORT APPENDIX via electronic mail to Appellants, Dr. Gunawardana and David Seely.

Dated:        June 16, 2021

Respectfully submitted:

/s/ *J. Hayes Ryan*_____
J. Hayes Ryan
Marissa Dellacroce
**GORDON REES SCULLY MANSUKHANI LLP**
One North Franklin, Suite 800
Chicago, Illinois 60606
(312) 565-1400
hayesryan@grsm.com
mdellacroce@grsm.com
*Attorneys for American Veterinary Medical Association*

# SUPPLEMENTAL
# APPENDIX

**TABLE OF CONTENTS TO SUPPLEMENTAL APPENDIX**

Transcript of Proceedings Before the Honorable Nancy J. Rosenstengel on July 22, 2020, Doc. 115, filed 3/16/21 ......................................................................A-1

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Seventh Circuit Rule 30(d), I hereby certify that this Supplemental Appendix contains the additional materials required by Circuit Rule 30(a) and (b).

Dated:        June 16, 2021                    Respectfully submitted:

/s/ *J. Hayes Ryan*
J. Hayes Ryan
Marissa Dellacroce
**GORDON REES SCULLY MANSUKHANI LLP**
One North Franklin, Suite 800
Chicago, Illinois 60606
(312) 565-1400
hayesryan@grsm.com
mdellacroce@grsm.com
*Attorneys for American Veterinary Medical Association*

1                    IN THE UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF ILLINOIS
2

3  SUBHADRA GUNAWARDANA, et al.,     )
                                     )
4              Plaintiffs,           )
                                     )
5  v.                                )  No. 3:19-cv-00096-NJR
                                     )  East St. Louis, Illinois
6  AMERICAN VETERINARY MEDICAL       )
   ASSOCIATION, et al.,              )
7                                    )
               Defendants.           )
8

9

10

11                     TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE NANCY J. ROSENSTENGEL
12            UNITED STATES CHIEF DISTRICT JUDGE

13                        JULY 22, 2020

14  ***TELEPHONIC STATUS CONFERENCE***

15

16

17

18

19

20              Stephanie Rennegarbe, RDR, CRR, CBC
21                    IL CSR #084-003232
                       750 Missouri Avenue
22                East St. Louis, IL  62201
                       618-482-9226
23          Stephanie_Rennegarbe@ilsd.uscourts.gov

24
     Proceedings recorded by mechanical stenography; transcript
25           produced by computer-aided transcription

1   APPEARANCES:

2   FOR THE PLAINTIFF:      Ms. Subhadra Gunawardana
                           Pro-Se Filer
3                          4308 Marion Garden Lane
                           Florissant, MO   63034
4                          314-764-1520
                           Subhadra.Gunawardana@wustl.edu

5
                           Mr. David Seely
6                          Pro-Se Filer
                           4308 Marion Garden Lane
7                          Florissant, MO   63034
                           615-423-8851
8                          David-Seely@live.com

9
    FOR THE DEFENDANT:     Ms. Marissa Louise Dellacroce
10  (American Medical)     Gordon & Rees, et al.
                           One North Franklin Street
11                         Chicago, IL 60606
                           312-619-4914
12                         mdellacroce@grsm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings began at 9:33 a.m.)

2                 *******************

3        THE CLERK:  Counsel, we are on the record in case

4   19-cv-96 for a Status Conference.  On the line on behalf of

5   Plaintiff we have Ms. Gunawardana and David Seely.

6        For Defendant we have Marissa Dellacroce.

7        THE COURT:  All right.  Well, good morning, everyone.

8   I set this just for a status to kind of get to the bottom of

9   what's going on.  I note that the Plaintiffs have -- are

10  asking for more time to respond in Motions to Dismiss and

11  discovery and a new trial date, but it looks like the parties

12  haven't conferred, from what I can tell, because there's no

13  joint motions about that.

14       MS. DELLACROCE:  Yeah, I'm sorry to interrupt, Your

15  Honor.  We have no objection to giving them extra time to

16  respond.

17       THE COURT:  Okay.  Well, but that's the other -- What

18  about the new trial date and extended discovery?

19       MS. DELLACROCE:  Yeah, I mean, I think that based on

20  the coronavirus and the pace at which this case has proceeded,

21  obviously we have to redo the scheduling order.  I hope that

22  would be enough time, the dates, to include it on there, so we

23  don't have an objection to that, either.

24       THE COURT:  Okay.  But, then it seems that your

25  Motion to Dismiss was brought pretty far out of time.  I mean,

1    why is this --

2            MS. DELLACROCE:  Yeah, --

3            THE COURT:  -- so far out, like five months?

4            MS. DELLACROCE:  Right, so, originally when they

5    filed the First Amended Complaint in January, we already had a

6    settlement conference on the books in February, so we were

7    hoping -- At that time we were pretty confident that it was

8    going to settle.  Obviously that did not happen and that was,

9    I think, February 22nd.  And then right after that the

10   coronavirus hit, and that's -- I really don't have any other

11   explanation.  That happened, and we were under the impression

12   that motions were not being heard during that time.

13           THE COURT:  Okay.  Well, they were.  I mean, there

14   were some extensions granted by administrative orders, but,

15   you know, we were still doing things on paper and having

16   telephonic hearings.  But, Plaintiffs, it seems like they

17   bring up the fact that it was late, that they just want more

18   time to respond.

19           Who wants to speak on behalf of Plaintiff?

20           MS. GUNAWARDANA:  I can, Your Honor.  I'm Subhadra

21   Gunawardana.

22           THE COURT:  Okay.

23           MS. GUNAWARDANA:  We can -- If we have extended time

24   we can respond to the Motion to Dismiss, Your Honor.

25           THE COURT:  Okay.  Well, I will give you more time to

1   respond and then we will adjust the trial date accordingly,

2   and then if the Defendant has no objection to those requests

3   in your motion, that motion will be granted.

4        How much time do you think you need to respond to the

5   Motion to Dismiss?

6        MS. GUNAWARDANA:  At least 30 days and more if you

7   can grant it.

8        THE COURT:  Okay.  Well, I will give you 45 days to

9   respond --

10       MS. GUNAWARDANA:  Yes, Your Honor.

11       THE COURT:  -- in light of everything that's going

12   on, and then we will get a ruling out on that as soon as we

13   can.  If I feel like I need any argument I will set it for a

14   telephonic or Zoom hearing, but I will look at the papers

15   first and then I will grant the other motion.

16       And I would just encourage all of you to, you know,

17   meet and confer on things to the extent that you can, you

18   know, try to work things out.  But, these are crazy times and

19   so we have got to kind of adjust to a new normal.  But, we

20   will get an order out on the extensions and the schedules and

21   the due dates today, and then we will await Plaintiff's

22   response.

23       So, for Plaintiff, anything else we need to take up

24   at this time?

25       MR. SEELY:  The discovery.

1           MS. GUNAWARDANA:  Yes, Your Honor.  The Motion to

2   Compel is pending, and there is a lot of discovery we have not

3   received yet.

4           THE COURT:  Okay.  That was part of your motion,

5   right?

6           MS. GUNAWARDANA:  Yes.  Yes, there was a motion; yes.

7           THE COURT:  Well, what does -- Defendant, what's

8   going on with discovery?  Are you going to get them what they

9   are looking for?

10          MS. DELLACROCE:  Yeah, so, the only thing that --

11  Well, there's two separate things in their Motion to Compel.

12  One is for documents and one is based on their Request to

13  Admit.  The only documents we haven't turned over is an

14  unredacted version of what we call the master manual of

15  administration, so it's essentially the test that she -- the

16  CPE test.  We have met and conferred and in good faith sent

17  over a redacted version.  Plaintiffs were unhappy with that

18  version and wants a unredacted version.  If we gave that to

19  her she would essentially be unable to retake the exam,

20  because she would have a direct guideline to how she would

21  pass.  I understand that at this time Dr. Gunawardana believes

22  she doesn't want to retake the exam, but on that basis we are

23  withholding it, so we were hoping that we could come to some

24  sort of agreement where -- It's just one document.  We have a

25  version that highlights what was redacted for the Court, if

1    the Court wanted to review it and look at it and see, you

2    know, what is redacted is actually confidential.

3         MS. GUNAWARDANA:  Your Honor, that is incorrect.

4    There's a lot more that was not produced.  That is not the

5    only document.  And, even about that document, we have

6    answered in each -- in our response to the Motion for

7    Protective Order and also in our Motion to Compel about why

8    these opinions are not valid about the document Counsel just

9    talked about and about all the other documents that they have

10   not produced.

11        THE COURT:  Okay.  Well, listen.  I'm going to direct

12   you to meet and confer again about what is outstanding and

13   what objections there are to that.  And, anything that the

14   Defendants still have an objection to I will direct you to

15   submit to me for an in-camera inspection within 14 days and I

16   will get to the bottom of what's going on with this so we can

17   get it moving.  But, again, you need to meet and confer and

18   work through these objections and the documents, and then I

19   will take a look at anything that's still outstanding and see

20   what needs to be produced and what is protected.

21        MS. GUNAWARDANA:  Your Honor, there was a Motion for

22   Protective Order before and you denied it.  You looked at all

23   this evidence before.  So, it is supposed to be produced, this

24   particular document.

25        THE COURT:  Okay.  Well, I will have to go back and

1    look at that.  But, if it was ordered to be produced, then is

2    that what you are saying, then, that the redacted document was

3    produced?

4            MS. GUNAWARDANA:  Yes.

5            MS. DELLACROCE:  Correct.  And we would submit that

6    we did do a very basic motion practice on this, but the

7    document obviously was not attached because it was, in our

8    mind, confidential.  So, I imagine that we will meet and

9    confer and come to the same conclusion on this, so we can

10   e-mail that document to you for review.

11           THE COURT:  Okay.  E-mail that document, then, to my

12   proposed documents folder, which is NJRpd -- as in NJR, my

13   initials, proposed documents -- @ilsd.uscourts.gov.

14           Send me that document and then try to work through

15   the others, and then whatever you can't agree to, then narrow

16   it down and let me know and produce anything else.  But, get

17   me that document immediately, and then meet and confer and

18   send me anything else that can't be agreed upon within 14

19   days.

20           MS. DELLACROCE:  That sounds good, Your Honor.

21           THE COURT:  All right.  Anything else from the

22   Defendants?

23           MS. DELLACROCE:  No.

24           THE COURT:  From the Plaintiffs, anything else?

25           MR. SEELY:  No, Your Honor.

1          MS. GUNAWARDANA:  No.

2          THE COURT:  Okay; all right.  Well, I will look for

3    that document and I will get you an order out, then, on the

4    revised schedule.

5          MS. DELLACROCE:  Okay; great.  Thank you, Your Honor.

6          (Proceedings adjourned.)

7

8

9

10

11                    REPORTER'S CERTIFICATE

12                   *   *   *   *   *   *   *

13          I do hereby certify that I reported with mechanical

14    stenography the proceedings contained herein; and that the

15    same is a true and correct transcript from the record of

16    proceedings in the above-entitled matter.

17

18

19    */S/ Stephanie K. Rennegarbe*                03/15/2021
      Certified Shorthand Reporter
20

21

22

23

24

25