**NO. 21-1330**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

Subhadra Gunawardana and David Seely
*Plaintiffs-Appellants*
v.

American Veterinary Medical Association (AVMA), Educational Commission for Foreign
Veterinary Graduates (ECFVG) and Council on Education (COE)
*Defendants-Appellees*

On Appeal from the United States District Court for the
Southern District of Illinois, Case No. 3:19-cv-00096-NJR
The Honorable Judge Nancy J. Rosenstengel

**PLAINTIFFS-APPELLANTS' REPLY BRIEF AND SUPPLEMENTAL APPENDIX**

/s/Subhadra Gunawardana
/s/David Seely
4308 Marion Garden Ln
Florissant, MO 63034
314-764-1520; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

LIST OF ABBREVIATIONS ............................................................................iv

REFERENCES TO PARTIES AND COURTS ................................................ v

JURISDICTIONAL STATEMENT CLARIFICATION ................................. 1

INTRODUCTION ............................................................................................ 1

ARGUMENT: PROCEDURAL ISSUES ........................................................ 5

    Defendant did not receive an extension to untimely file their second motion to dismiss. ................................................................................................................ 5

    Defendant should not have received an extension to file their first motion to dismiss. ................................................................................................................ 5

    Plaintiffs did not "waive their objections" to the untimely filed second motion to dismiss ............................................................................................................... 6

    Amendment was not futile, and Dismissal with prejudice was erroneous ............. 7

    Denial of Plaintiffs' second motion to amend is erroneous .................................... 8

    Defendant filed the second motion dismiss with intent to prejudice ...................... 9

    The Order does not reflect the record ...................................................................... 10

    Defendant disregarded rules and orders numerous times ..................................... 11

    The broad discretion of the District Court does not justify biased rulings ........... 13

    Acceptance of the late filing was prejudicial to Plaintiffs ..................................... 14

    Defendant's conduct warrants default judgment .................................................... 15

ARGUMENT: SUBSTANTIVE ISSUES ........................................................ 17

    Court erred in dismissing the FAC with prejudice ................................................. 17

    The FAC meets the required pleading standards .................................................... 17

Claims for Subhadra Gunawardana ............................................................................ 18

    I. Contract .................................................................................................................. 18

    II. Title VII ................................................................................................................. 19

    III. Section 1981 ........................................................................................................ 22

    IV. Equal Protection Clause ..................................................................................... 23

    V. Sherman Act .......................................................................................................... 25

    VI. Section 1985(3) .................................................................................................... 27

    VII. ADA .................................................................................................................... 29

Claims for David Seely ................................................................................. 29

    VIII. ADA .............................................................................................. 30

    IX. Antitrust ........................................................................................ 31

Court erred in denying Plaintiffs' motion to compel Defendant's Rule 30(b)6 deposition. ............................................................................................ 31

RELIEF ...................................................................................................... 31

CERTIFICATE OF COMPLIANCE ............................................................. 32

CERTIFICATE OF SERVICE ..................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Alternate Fuels, Inc. V. Cabanas*, No. 06- 3794/07-1462 (8th Cir. Aug 18, 2008) ..... 30

*Anderson v. Hardman*, 241 F.3d 545-46 (7th Cir. 2001) .............................................. 6

*Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993)* .................................................... 16

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992) .............. 18

*Bartmess v. Drewrys USA,* Inc., 444 F.2d 1186 (7th Cir. 1971) ................................ 22

*Bausch v. Stryker Corp.*, 630 F.3d 546, 559–62 (7th Cir.2010) .................................. 18

*Clayborn v. Walter Inv. Mgmt., Ditech Fin.,* Case: 1:18-CV-03452 (N.D. Ill. Dec. 4, 2019) ...................................................................................................................... 16

*Cole v. Meeks*, No. 15-1292 (C.D. Ill. Mar. 1, 2019) .................................................. 10

*Currier v. Nat'l Bd. of Med. Examiners*, 965 N.E.2d 829 (Mass. 2012).................... 24

*DiLuzio v. Village of Yorkville, Ohio,* 796 F.3d 604 (6th Cir. 2015) .......................... 28

*Flint v. City of Belvidere,* 791 F.3d 764 (7th Cir. 2015) .............................................. 5

*Ill. ex rel. Madigan v. Xing Ying Emp't Agency*, 15 C 10235 (N.D. Ill. Mar. 20, 2018) ................................................................................................................................... 20

*International Ass'n of Firefighters v. City of Ferguson*, 283 F.3d 969 (8th Cir. 2002) ................................................................................................................................... 30

*Kaplowitz v. University of Chicago,* 387 F. Supp. 42 (N.D. Ill. 1974)........................ 20

*Linton v. Missouri Veterinary Medical Board., 988 S.W.2d 513 (Mo. En banc 1999)* ................................................................................................................................... 25

*Lucas v. Berryhill,* No. 2:18-CV-77-JEM, 2019 WL 2482712 (N.D. Ind. June 13, 2019).......................................................................................................................... 7

*Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ........................................... 7

*Marsh v. Alabama, 326 U.S. 501 (1946)*.................................................................... 23

*Mitchell v. White Consol.*, 177 F.2d 500, 502 (7th Cir. 1949).................................... 13

*N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 135 S. Ct. 1101 (2015) 27

*Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015)....................... 17

*Sharrieff v. Inn-Plus*, No. 20 C 1781 (N.D. Ill. Oct. 22, 2020) .................................. 22

*Swanson v. Citibank, N.A.*, 614 F.3d 400,404 (7th Cir. 2010) ................................... 17

*United States v. Guerrero*, 946 F.3d 983, 987 (7th Cir. 2020).................................... 7

*Wilk v. American Medical Ass'n*, 895 F.2d 352 (7th Cir. 1990) ................................. 27

## Statutes

42 U.S.C. § 1985(3) ..................................................................................................... 34

## Rules

FRAP 28(a)(8) .............................................................................................................. 17

FRAP 28(d)...................................................................................................................... v

FRCP 15 .......................................................................................................................... 7

FRCP 15(a)(2) ................................................................................................... 8
FRCP 15(a)(3) ................................................................................................. 14
FRCP 33,34,36 ................................................................................................ 11
FRCP 36 .......................................................................................................... 11
FRCP 6 .............................................................................................................. 7
FRCP 6(b)(1)(B) .......................................................................................... 5, 14
Local rule 26.1(b)(1) ..................................................................................... 11

## LIST OF ABBREVIATIONS

FRAP: Federal Rules of Appellate Procedure

FRCP: Federal Rules of Civil Procedure

RSA: Required Short Appendix

SA: Separate Appendix

AVMA: American Veterinary Medical Association

FAC:  First Amended Complaint

SAC:  Second Amended Complaint

COE: Council on Education; The Branch of the AVMA that accredits veterinary

education programs/institutions

ECVFG: Educational Commission for Foreign Veterinary Graduates; The branch of

the AVMA that provides certification for foreign veterinary graduates

CPE:  Clinical Proficiency Examination

AAVSB: American Association of Veterinary State Boards

PAVE: Program for the Assessment of Veterinary Education Equivalence

NBME: National Board of Medical Examiners

ADA: Americans with Disabilities Act

P: Page ID numbers in the record

p: Page numbers in any other document

## REFERENCES TO PARTIES AND COURTS

Pursuant to FRAP 28(d), Plaintiffs-Appellants are hereafter referred to as "Plaintiffs" or "Plaintiff". Each individual plaintiff may be referred to as "Subhadra Gunawardana", "Gunawardana" or "Dr. Gunawardana", and "David Seely", "Seely" or "Mr. Seely". Defendants-Appellees are hereafter referred to as "Defendants", "Defendant", or "AVMA". The Council on Education, the branch of the AVMA that accredits veterinary education programs/institutions, is hereafter referred to as the COE. The Educational Commission for Foreign Veterinary Graduates, the branch of the AVMA that provides certification for foreign veterinary graduates, is hereafter referred to as the ECFVG.

The United States District Court for the Southern District of Illinois is hereafter referred to as the "District Court" or "Court". The United States Court of Appeals for the Seventh Circuit is hereafter referred to as the "Seventh Circuit", "Appellate Court" or "this Court".

Page ID numbers in the record are referred to by "P" while page numbers in other documents such as appendices are referred to by "p".

## JURISDICTIONAL STATEMENT CLARIFICATION

ECFVG and COE were included because in the past AVMA has denied responsibility for the actions of ECFVG/COE.

David Seely has independent claims as a consumer of veterinary and medical services, as admitted in the Appellee's Brief [p2,¶2; p7,¶28]. Dismissal of Seely for lack of standing is among the issues being appealed.

## INTRODUCTION

Defendant-Appellee's response is based on four major premises, all of which are factually incorrect and not supported by the record.

1.  Defendant states, over eighteen times, that the District Court granted them an extension to file their second motion to dismiss. This is false. **There was no such extension.** Please see the record.

2.  Defendant claims, at least 7 times, that their delay in filing the second motion to dismiss was excusable due to the pandemic. In fact, the response deadline passed well before the lockdown or any pandemic-related extensions. Defendant never cited pandemic-related hardship as a reason for delay.

3.  Defendant makes repeated claims to the effect "Appellants cite to no authority in support of their argument". All arguments Plaintiffs presented are backed by the **record**, and the Appellant's Brief points to authority through rules/statutes, case law, or both. The Standard of Review section includes case law applicable to major issues, while additional authority is listed within

different sections as necessary. "Where possible, the emphasis should be on reason, not merely on precedent, unless a particular decision is controlling." *Seventh Circuit Handbook on Appeals*, p159.

4. Defendant proposes "futility of amendment" as reason for both the dismissal of the First Amended Complaint [FAC] with prejudice and denial of leave to file the Second Amended Complaint [SAC]. In fact, **futility is not cited in either order.** Leave to file the SAC was denied first, erroneously citing a deadline from a *previous* scheduling order [Dkt #97;11/9/2020]. The latter order dismissing the FAC does not even mention the substance of the proposed SAC, let alone explain how it was futile [RSA 1-33; Dkt #104; 1/28/2021].

The instant Response Brief does not dispute the following procedural facts, which are also confirmed by the record.

1. The second motion to dismiss was filed almost five months past the deadline.

2. The deadline to respond to the FAC [1/26/2020] passed before the pandemic-related lockdown and subsequent extension of deadlines [late March or early April 2021].

3. The record shows no request of extension to respond to the FAC.

4. Defendant did not cite any pandemic-related hardship, before or during the status conference on 7/22/2020.

5. Defendant attended the settlement conference in person on 2/20/2020.

6. Plaintiffs were allowed to amend the complaint only once.

7. The Court accepted the proposed FAC after two months, without notifying Plaintiffs of any deficiencies.

8. Defendant took eleven months to produce certain documents requested in initial discovery.

9. Court issued four orders requiring Defendant to cooperate with discovery [Dkts #61,75,79,86], the last of which warned sanctions.

10. Plaintiffs filed the second motion to amend immediately after written discovery was complete.

11. In deeming Plaintiffs' second motion to amend untimely, Court cited a deadline from the old scheduling order of 9/10/2019.

12. The new evidence included in the proposed SAC was "new" only due to Defendant's delay in discovery.

13. Plaintiffs committed no neglect or misconduct that warranted any sanctions.

14. The Order dismissing the FAC does not cite futility, undue delay, bad faith, or dilatory move as reasons for dismissal.


The instant Response Brief [or Defendant's motion to dismiss] does not dispute the following substantive facts, which are also confirmed by the record.

1. AVMA is the sole accreditor of veterinary education in North America.

2. AVMA is the sole decision-maker on the pre-requisites for veterinary licensure in North America.

3. ECFVG's waiver is an adhesion contract, where candidates have no bargaining power.

4. The FAC included factual allegations of unconscionable contract claims under common law.

5. AVMA is a labor organization.

6. AVMA performs functions previously held by a USDE subcommittee.

7. AVMA is a gatekeeper for Titles IV and VII federal funding, and administers/distributes federal grants.

8. AVMA is pervasively entwined with state and federal governments.

9. ECFVG was created at the behest of state veterinary licensing boards.

10. AVMA's actions barred Dr. Gunawardana from employment in the veterinary profession.

11. AVMA is not functionally equivalent to stand-alone certification organizations such as the ECFMG; American Board of Psychiatry and Neurology; Academy of Orthopedic Surgeons etc.

12. The ECFVG certificate alone qualifies candidates for some positions in the veterinary field.

13. Dr. Gunawardana has a license to practice veterinary medicine in Sri Lanka, but is not admitted to practice in the US.

14. Documents produced in discovery show that the failing grade in 2017 anesthesia section is erroneous.

Parties disagree on the issues listed in the next section. The record confirms Plaintiffs' version.

## ARGUMENT: PROCEDURAL ISSUES

**Defendant did not receive an extension to untimely file their second motion to dismiss.**

Defendant's repeated claim that District court "granted them an extension" [Response Brief p3¶1, p10¶53, pp16,17,18,19,20,21,22,23,29,31] is false.  An extension is to be requested and granted ***before*** the act in question, generally before the deadline expires [FRCP 6(b)(1)(B)]. Here, the deadline expired on 1/26/2020. Defendant neither requested nor received an extension, before or after said deadline. They filed the motion 5 months late ***without Court's leave***.

Defendant points to Dkt #86 that the Court granted them an extension. Said order shows no such extension.

"Neglect is generally not excusable when a party should have acted before the deadline, see Murphy v. Eddie Murphy Prods., Inc., 611 F.3d 322, 324 (7th Cir.2010), or when a party's lack of diligence is to blame for its failure to secure discoverable information, see Grayson v. O'Neill, 308 F.3d 808, 816 (7th Cir.2002)." *Flint v. City of Belvidere,* 791 F.3d 764 (7th Cir. 2015)

**Defendant should not have received an extension to file their first motion to dismiss.**

Defendant claims: "Additionally, while Appellants mention the District Court granted AVMA an extension to file its first motion to dismiss, they fail to present any

argument or provide legal authority for why this was an abuse of discretion" [Response Brief p17].

Defendants' initial motion for extension was made 35 days past the actual deadline of April 8, 2019. Said motion **misrepresented the deadline** to be May 14, 2019 [Dkt #16 ¶3; Dkt #20 ¶¶2,7, Dkt #20-1]. [Supplemental Appendix].

It is logic and justice that dictate Courts should not grant deceptive motions misrepresenting key facts.

Even if the misrepresentation was not noticed or considered, the Court's wide discretion must be exercised fairly for all parties. A pattern of accepting late filings from Defendant followed by a draconian sanction to Plaintiffs who committed no neglect/misconduct, is an abuse of discretion.

**Plaintiffs did not "waive their objections" to the untimely filed second motion to dismiss.**

Defendant's repeated claim that Plaintiffs waived their objection by not raising it orally during the status conference is not backed by authority. Thus, Defendant waived the argument by their own logic. *Anderson v. Hardman*, 241 F.3d 545-46 (7th Cir. 2001).

As stated in detail in the Appellant's Brief [¶¶87,105]: The order on 7/22/2020 [Dkt #86, RSA p37-38] mentions nothing about Plaintiffs waiving their objections or Defendant getting an extension; Plaintiffs raised this objection in writing and with authority; Even if they hadn't, Court should not have accepted an untimely

dispositive motion filed without leave or good cause, particularly when Defendant had a history of untimely filings.

*Lucas v. Berryhill,* No. 2:18-CV-77-JEM, 2019 WL 2482712 (N.D. Ind. June 13, 2019) does not apply. First, *Lucas* was a social security hearing, equivalent to a trial. Not a simple status conference.  Further, there the plaintiff failed to raise the objection *at all.* Here Plaintiffs previously objected in writing, which the Court acknowledged at the conference. Seventh Circuit standard is to consider the substance of a request, and undeveloped arguments are not favored. *Cf. United States v. Guerrero*, 946 F.3d 983, 987 (7th Cir. 2020); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

If Plaintiffs waived their rights by not uttering the exact words "I object to the untimeliness of Defendant's motion" at the status conference, then Defendant had already waived their right to file the motion at all by not requesting an extension per FRCP 15 and 6.

**Amendment was not futile, and Dismissal with prejudice was erroneous.**

Defendant repeatedly claims that the FAC was dismissed because amendment would be futile. Nowhere in the Order does it state amendment is futile [RSA p1-32].

The order does not cite futility, nor does it state Plaintiffs were notified of any deficiencies [which they were not], or describe undue prejudice to AVMA. While Defendant claims "delay", all delays were caused by Defendant's obstruction of discovery [Appellant's Brief ¶¶5,6,17-20]. Finally, the Order never mentions the SAC where any possible deficiencies were already corrected.

The Appellant's Brief described in detail how the FAC met pleading standards and dismissal was erroneous [Appellant's Brief ¶¶107-161].  Any new arguments Defendant presented regarding "futility" are addressed in the "Argument-Substantive Issues" section.

**Denial of Plaintiffs' second motion to amend is erroneous.**

Defendant incorrectly claims "The District Court reasonably denied leave to amend because of undue delay, prejudice, and futility of allowing the amendment.". The order does not cite undue delay or futility [RSA p34].

Notably, Defendant never claimed delay or prejudice in the first place, only bringing these issues now on appeal merely to justify the District Court's erroneous ruling.  While the order states "prejudice to defendant due to the fully-briefed motion to dismiss" it does not explain such prejudice. A pending motion to dismiss is not a good reason to deny leave to amend, considering that FRCP 15(a)(1)(B) allows amendment while a 12(b) motion is pending, and FRCP 15(a)(2) states "The court should freely give leave when justice so requires."

The Order denying leave to amend does not cite repeated failure to cure deficiencies [RSA p34].  There was **no repeated failure**, considering Plaintiffs were allowed to amend only once before.

Defendant implies that the amendment was a direct response to their motion to dismiss. It was not. The FAC already meets the pleading standards of FRCP 8(a) and *Twombly*, as stated in detail in Dkts #91,92, and Appellant's Brief.  *If* there were

any substantive deficiencies, they could not have been cured until Defendant produced the critical evidence they had withheld for 11 months [which show AVMA breached contract, their actions were arbitrary and unreasonable etc.]. Any "delay" in moving to amend was solely due to Defendant's obstruction of discovery, which Court should have considered.

**Defendant filed the second motion dismiss with intent to prejudice.**

While Plaintiffs submit that the FAC already meets applicable pleading standards, the discovery they sought would have proven some allegations beyond doubt. [For example: The failing grade in question was erroneous, the examiner went against stated procedures, and ECFVG personnel conspired to conceal this information from Gunawardana; ECFVG candidate appeals are routinely denied without investigation, using form letters; ECFVG was created at the behest of state boards, making them a state actor.] AVMA intentionally hid this critical information for 11 months, in violation of rules and Court's discovery orders. **Had they produced truthful and complete responses to Plaintiffs' written discovery by the initial deadline of 10/21/2019, the FAC [submitted on 11/30/2019] would have contained all the information now included in the proposed SAC**.

Two days after Plaintiffs filed a motion to compel with Court's leave, Defendant filed their second motion to dismiss, and continued to withhold evidence. This was an intentional move to "run the clock out". Defendant's intent to vex and harass through the timing of this motion, and the consequent prejudice to Plaintiffs, is stated in Plaintiffs' filings [Dkt #92 ¶¶7-11, P722-723; Dkt #91 ¶¶6-7, P717; Dkt

#82 ¶¶17-20, P706-707;]. Defendant's obstruction of discovery was ongoing, and compounded by the timing of their motion to dismiss. The Court should have considered these circumstances when ruling on Plaintiffs' second motion to amend complaint.

*Cole* is instructive of untimely dispositive motions brought without leave, which prejudice the non-moving party. "See Franzen v. Ellis Corp., 2004 WL 2535263, *4 (N.D. Ill. Sept. 15, 2004) (a motion filed several months after the court's order and after multiple other issues have been presented by the parties and addressed by the court is untimely)." *Cole v. Meeks*, No. 15-1292 (C.D. Ill. Mar. 1, 2019)


**The Order does not reflect the record.**

An order should reflect significant events in the record. Here, the complete omission of all misconduct by Defense suggests bias. Further, some facts in the order are incorrect. For example: Plaintiffs did not get "two opportunities" to amend. The applicable deadline for the second motion to amend was not 12/5/2019 [which was from the old scheduling order].

Defendant's claim "The District Court correctly stated that Appellants had two opportunities to state claims, the original Complaint and First Amended Complaint" [Response Brief p31] misrepresents the Order. The Order stated "Dr. Gunawardana and Mr. Seely had two opportunities to address or resolve the issues in their complaint."[RSA p7]. The order is incorrect however, as Plaintiffs got **only one chance to amend.**

The mere fact that the Court allowed discovery to continue for two years, including eight motions and eight orders specific to discovery [Dkts #37,46,50,56,57,61,64,74,75,76,77&78,79,83,86,98,102] indicate that the complaint stated plausible claims on its face.


**Defendant disregarded rules and orders numerous times.**

Defendant denies disregarding rules [Response Brief p17]. Plaintiffs stand by their statement, as confirmed by the record:

1. Defendants' initial motion for extension was made 35 days past the actual deadline of 4/8/2019. Said motion misrepresented the deadline to be 5/14/2019 [Dkt #16, ¶3; Dkt #20, ¶2,7, #20-1].

2. Defendant points to Dkt #86 as one instance where they requested and received an extension [Response Brief p20]. This is false. Defendant neither requested nor received an extension at this time, and Dkt #86 mentions none.

3. Local rule 26.1(b)(1) requires filing of FRCP 36 admission requests and responses with the Court, which defendant failed to do 3 out of 3 times.

4. Defendant did not meet and confer prior to their first motion for protective order, as required by the scheduling order [Dkt #37-1 ¶10]. Dkt #50 is not merely about failing to include a notation.

5. From 9/21/2019 through 8/27/2020, Defendant repeatedly disregarded discovery rules FRCP 33,34,36, and Court's orders on discovery #61,75 and 79,

as stated in detail in Plaintiffs' motion to compel [Dkt #77,78], and Court's order on 7/22/2020 [Dkt #86][1].

6. Dkt #83, titled "Defendant's response to plaintiffs' second motion for the Court's intervention on discovery" does not respond to the substance of Plaintiffs' motion to compel [Dkts #77,78]. Instead it repeats Defendant's request to withhold certain documents after the Court already denied their motion for protective order. They further request a discovery conference, which had already been rendered moot by the Court's order.

7. Defendant refused to appear for their deposition which had been properly noticed with ample time, and attempted to change the date by issuing a new notice of deposition for their own witness [Dkt #98 ¶24, P767-768; Dkts #98-3, 98-4].

---

[1] As stated in Dkt #86: "When the Court denied Defendants' Motion for a Protective Order (Doc. 64 ) in April, the Court cleared the way for Plaintiffs to receive the discovery related to their production requests 4, 6, 7, and 8 (Docs. 66-1, 75). Nonetheless, Defendants are apparently still refusing to produce responses in full. The Court now explicitly ORDERS Defendants to produce discovery related to requests 4, 6, 7, and 8, including the examiner's instructions and manual of administration in full. The Court has reviewed the redactions to the manual produced today and finds them inappropriate. Defendants' disregard for an order of this Court is alarming, and the Court will not hesitate to impose sanctions in the future for such evasive conduct."

**The broad discretion of the District Court does not justify biased rulings.**

Defendant repeatedly missed deadlines, made late filings with and without Court's leave, intentionally disregarded Court's orders [including express refusal to produce specific documents as ordered by Dkt #75][2]; and obstructed discovery for 11 months. Defendant received one warning regarding discovery misconduct, and proceeded to obstruct oral discovery.

Plaintiffs committed no neglect or misconduct. Court's repeated acceptance of Defendant's misconduct, combined with dismissal of Plaintiffs' non-futile complaint without warning, is a clear abuse of discretion.

"The Rules of Civil Procedure reflect a well considered policy to simplify the assertion and trial of civil rights; they discourage technicality and form and seek to bring about determination of the rights of litigants upon the merits and, to that end, are to be liberally construed." *Mitchell v. White Consol.*, 177 F.2d 500, 502 (7th Cir. 1949)." Defendant cites *Mitchell* to argue that Court's acceptance of all their late filings, including the dispositive motion filed five months past the deadline without leave, is justified, but Plaintiffs somehow waived their objections solely by not reiterating it orally at the status conference, enabling dismissal of their meritorious complaint. They present no authority for this double standard, or specify how it serves justice.

---

[2] Dkt #77, ¶5: "5. Following this Court's denial of said motion on 4/9/20 [Dkt. #75], Plaintiffs waited two months to receive the withheld documents. Upon inquiry on 6/9/20, Defendant expressly stated they would not produce these."

**Acceptance of the late filing was prejudicial to Plaintiffs.**

In all the cases Defendant cited, acceptance of a late filing did not prejudice the other party. Here it did. In their discovery motions Plaintiffs had stated how the withheld documents would prove specific allegations in the complaint, and that Plaintiffs could move for summary judgment upon completion of discovery [Dkt #82 ¶12, P704-705]. Plaintiffs were prejudiced by Defendant's obstructive actions and the timing of their second motion to dismiss [Dkt #82 ¶¶17-20, P706-707; Dkt #92 ¶¶7-11, P722-723; Dkt #91 ¶¶6-7, P717].

Defendant states "Appellants cite to no authority in support of their argument that the District Court abused its discretion in granting AVMA an extension, denying the motion to strike and default, and finding Appellants waived their objections."[p17]

The Court did not grant an extension to AVMA. The Order on 07/22/2020 [Dkt #86] shows neither an "extension for Defendant" nor a "finding that Plaintiffs waived their objections". Having chosen to accept the late filing seven months after the fact, the Court erroneously stated Plaintiffs waived their objections. Plaintiffs showed authority as to the error in accepting an untimely motion filed without leave and without good cause. [FRCP 15(a)(3) and 6(b)(1)(B); Appellant's Brief ¶61,69-73]. Neither Defendant nor Court cited any authority on the notion that "Appellants waived their objections".

**Defendant's conduct warrants default judgment**

Authority in the Appellant's Brief includes the federal rules on applicable deadlines and extensions [¶61], and precedent showing that untimely filings are highly disfavored in the Seventh Circuit [¶¶69-73] and that default judgment is warranted for discovery misconduct alone [¶¶79-80].

Here, Defendant filed their untimely dispositive motion without leave and without good cause, with intent to prejudice Plaintiffs. In this Response Brief Defendant falsely claimed that they requested and received an extension for said filing [Response Brief p3¶1, p10¶53, pp16,17,18,19,20,21,22,23,29,31]. While these actions alone are egregious, the whole situation includes much more:

1. It was through a misrepresentation that Defendant received leave to file their first motion to dismiss out of time [Supplemental Appendix]. Thus, throughout this action there was no answer or timely defense to the complaint.

2. Defendant disregarded rules and orders numerous times, and committed discovery misconduct, prejudicing Plaintiffs.

3. Having received one warning [Dkt #86], Defendant continued to obstruct oral discovery [Dkts #98,99,101].

4. Defendant made misrepresentations and outright false statements throughout this action, and continues to do so in this Response Brief.

A pattern of misconduct warrants default. "The judge's handling of this difficult matter has stimulated us to think about the principles that ought to guide district judges in the exercise of their discretion to impose sanctions, up to and

15

including dismissal, because of dilatory or obstructive behavior by litigants or their lawyers." *Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993)*

Default has been granted for much less. "This court may enter default judgment when a defendant fails to respond to a complaint and court orders and fails to participate in the litigation or cooperate in good faith with the plaintiff." *Clayborn v. Walter Inv. Mgmt., Ditech Fin.,* Case: 1:18-CV-03452 (N.D. Ill. Dec. 4, 2019)

Importantly, **the complaint is not deficient.**

1. As stated in the Appellant's Brief, the Order dismissing the FAC failed to address many key rebuttals presented in Plaintiffs' responsive memoranda, and never mentioned the proposed SAC.

2. As shown in this Reply Brief [pp3-4, and the following section], many critical substantive issues are not disputed. Regarding the disputed issues, evidence corroborates Plaintiffs' position.

3. Plaintiffs were planning to move for summary judgment on some claims upon completion of Defendant's deposition.

Default judgment is warranted both due to the prejudice Plaintiffs suffered from dismissal of their meritorious complaint, and as a sanction for Defendant's continued misconduct.

## ARGUMENT: SUBSTANTIVE ISSUES

**Court erred in dismissing the FAC with prejudice.**

As an initial matter: Under each count, Defendant states: "Appellant does not include any supporting authority to establish this claim, and therefore, has waived this argument. FRAP 28(a)(8); *Anderson*, 341 F.3d at 545; *Berkowitz*, 927 F.3d at 1384."

The issue under appeal here is "whether the District Court erred in dismissing the complaint with prejudice" for which Plaintiffs presented ample authority.  FRAP 28(a)(8) does not require an appellant to show new authority on the factual allegations for each count already stated in the complaint. In any event, both the FAC and Appellants' Brief showed authority where appropriate.

## **The FAC meets the required pleading standards.**

FRCP 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief".  Current Federal Rules do not require code pleading in a complaint, only factual allegations that give the defendant fair notice of the claim for relief and show the claim has substantive plausibility. *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015)

*Swanson v. Citibank, N.A.*, 614 F.3d 400,404 (7th Cir. 2010) (explaining after Iqbal that the plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together").  *Bausch v. Stryker Corp.*, 630 F.3d 546,

559–62 (7th Cir.2010) (reversing dismissal where complaints gave fair notice of claims); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992) (Federal Rules of Civil Procedure do not require complaint to specify legal theory or statute that supports claim for relief).

## **Claims for Subhadra Gunawardana**

### *I. Contract*

The Appellant's Brief ¶¶112-121 presented the following points with authority. Response Brief presents no rebuttal.

1. Covenants not to sue cannot go against public policy, and cannot shield Defendants from intentional, deliberate or wanton acts.

2. Application of the *Sanjuan* and *Peoria* standards was erroneous: By Defendants' own admission, AVMA, COE and ECFVG are a single entity, not equivalent to the stand-alone certifying organizations in the cases they cited. Unlike the Board of Psychiatry or the Academy of Orthopedic Surgeons that provide continuing education to candidates already admitted to the profession, AVMA/ECFVG/COE exert critical decision-making power over candidates' livelihoods. AVMA has far-reaching power over the whole profession through its accreditation functions and its entwinement with state boards.

3. ECFVG certification is an economic necessity because foreign graduates cannot get licensed without it, and can get some types of employment with certification alone.

4. Even if the *Peoria* standard were to apply, the FAC showed that Defendant's decisions were "arbitrary and unreasonable", and not supported by substantial evidence. [FAC ¶¶15-19,24-29,35-40, P417-418,420-425]. New evidence proved this allegation, and gave rise to the new claim of breach of contract [SA¶¶62-71, p20-23].

5. Contract claims are not limited to IL UCC but are grounded in common law; The unconscionable contract claim was adequately pled with factual allegations [FAC ¶¶55-57].

Defendant now brings the new argument that the certificate is not a "good" because it is not guaranteed or movable.  On the contrary: It is a good in both the literal and figurative sense. The ECFVG certificate is a paper or electronic document that *is* movable. It is routinely mailed or transferred from ECFVG to candidates; candidate to employer etc. And it conveys economic value by qualifying the holder for certain types of employment and to apply for licensure. Second, in the instant case Dr. Gunawardana ***earned*** this certificate even according to ECVFG's discriminatory standards, and Defendant has not proven otherwise [SA ¶¶62-70, p20-23].

## II. Title VII

Defendant's motion to dismiss never denied that AVMA is a labor organization, and the Response brief provides no argument how they don't qualify as a labor organization. Neither document disputes that AVMA's actions barred Dr. Gunawardana from employment, against AVMA's stated policy of protecting,

promoting and advancing the professional interests of **all** veterinarians. [SA¶¶74-76, p24-25].

The extensive functions performed by AVMA's career center qualify it as an employment agency, and a plaintiff may bring a Title VII claim without having sought those specific services.

"The New York State Supreme Court ruled that the New York City Commission on Human Rights properly found Mr. Boll to be an employment agency based on his activities as described above. Assuming our agreement with that conclusion, then, a fortiori, the Law School should be held to operate an employment agency." *Kaplowitz v. University of Chicago,* 387 F. Supp. 42 (N.D. Ill. 1974).

"Specifically, Plaintiffs claim that Defendants' advertisements unlawfully expressed a preference or specification for "Mexicans" or persons of Latino origin in violation of 42 U.S.C. § 2000e-3(b). Am. Compl. ¶¶ 85, 86." *Ill. ex rel. Madigan v. Xing Ying Emp't Agency*, 15 C 10235 (N.D. Ill. Mar. 20, 2018).

Defendant repeats their previous argument that "Nonprofit professional certification organizations such as the AVMA do not fall under the purview under Title VII merely for having a career center."   As already stated, AVMA is not a "nonprofit professional certification organization".  AVMA is not equivalent to stand-alone certification organizations, as described at length in Plaintiffs' responsive memoranda.  [Appellant's Brief ¶¶114-118; 139,140; Footnote 3 on p47-48].

Even if ECFVG by itself were to be considered a certifying organization, **Defendant has repeatedly stated that ECFVG is not separate from AVMA**

[Response Brief p1; Dkt #81 P693 ¶4].  AVMA, ECFVG and COE purport to be "a single organization that cannot conspire with itself" in an attempt to circumvent the 1985 and antitrust claims.  Thus, by their own admission, AVMA cannot be likened to stand-alone certifying organizations as those in *SanJuan, Zamani* or *Staundinger*.

The Response Brief does not dispute that AVMA fits into the definition of labor organization under Title VII, or that they barred Dr. Gunawardana from employment.

Defendant brings the new argument that the release bars title VII claims absent misrepresentation. Even if this standard were to apply, there were plenty of misrepresentations. For example, Gunawardana was repeatedly told she failed the 2017 anesthesia section when in fact she passed it; AVMA withheld evidence and never produced the videotape of the exam; when some documents were finally produced, they revealed not only that the examiner erred but ECFVG officials altered the score report [SA ¶¶62-70, p20-23]

AVMA's discriminatory policies apply specifically to foreign graduates, as stated in the name "Educational Commission for Foreign Veterinary Graduates". Importantly, Defendant never denied that ECFVG policies are discriminatory towards foreign graduates. Discrimination against foreign graduates *is* precisely based on their national origin, and Gunawardana was discriminated against due to being a foreign graduate. The fact that a few US students may go to foreign veterinary schools does not mitigate that the ECFVG program is geared towards foreign graduates, or the discriminatory nature of those policies [FAC ¶¶6,62-65,23-41]. This

falls under the long-known theory of systemic violation. *Bartmess v. Drewrys USA, Inc.*, 444 F.2d 1186 (7th Cir. 1971)

"EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 781 (7th Cir. 2007) (in emphasizing the simplicity required in pleading a racial discrimination claim, citing with approval an allegation that "I was turned down for a job because of my race" (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)))." *Sharrieff v. Inn-Plus*, No. 20 C 1781 (N.D. Ill. Oct. 22, 2020)

Plaintiff more than alleged national origin discrimination here, and race discrimination in Count III.

### III. Section 1981

FAC Count III specifically alleged race discrimination against Gunawardana, and listed racially discriminatory policies such as requiring candidates to disclose information on their ethnicity, color, appearance and citizenship during different stages of life. It further stated "93.2% of US veterinarians are white as of 2016 [Ex.10]. While the ECFVG policies are generally discriminatory to all its candidates, adverse actions seem to be directed particularly at non-white candidates, **as would be evident from ECFVG's internal communications and exam**" [FAC¶68, P432-433] [emphasis added]. Once these documents were produced, the allegation was indeed confirmed [SA ¶84, p27].

As is stated throughout the FAC, AVMA barred Gunawardana from receiving her US licensure and entering into the veterinary profession. Both licensure and

employment are key contracts in the life of a professional, and it goes without saying that AVMA's actions prevented her from making and enforcing them. Thus, Plaintiffs submit that the FAC meets pleading requirements under FRCP 8(a). However, the proposed SAC clarifies all factual allegations directly under count III. [SA ¶¶81-86, p27-28]

### IV. Equal Protection Clause

Defendant does not deny that ECFVG was created at the request of state boards, nor dispute that this fact makes them a state actor. "If the government coerces, influences, or encourages the performance of an act, it is state action. *Rendell-Baker v. Kohn, 457 U.S. 830 (1982*)." [Appellant's Brief ¶135; FAC¶74, P434]

Defendant also does not deny that AVMA now performs functions previously held by a USDE subcommittee: "The United States Department of Education [USDE] recognizes the AVMA COE as the sole accrediting authority for veterinary education, and tapped them for additional responsibilities previously held by a USDE subcommittee." or that AVMA is a gatekeeper for Title IV and Title VII federal funding, and administers/distributes federal grants, or that AVMA officials are pervasively intertwined with state agencies including regulatory boards, federal departments and the military. [FAC¶71,76-78, P433-436]

The performance of a public function, a function that has been traditionally and exclusively performed by the state, is state action. *Marsh v. Alabama, 326 U.S. 501 (1946).* A private organization can be considered a state actor if there is sufficient

entwinement between the state and the organization. *Brentwood Academy v. Tennessee Secondary School Athletic Association, 535 U.S. 971 (2002).* [FAC¶74, P434-435]

Thus, **Defendant has essentially admitted that AVMA is a state actor.** They now repeat the previous argument that AVMA is not a state actor solely because they create and administer an examination. This argument was already rebutted. AVMA is not equivalent to the stand-alone certification organizations in *Staundinger* and *Sanjuan* [Appellant's Brief ¶¶114-118; 139,140; Footnote 3 on p47-48]. Importantly, the fact that AVMA performs the ***additional*** function of certification **does not negate** the fact that they are already a state actor due to the aforementioned accreditation at the behest of USDE, gatekeeping of federal funding, and pervasive entwinement with state and federal regulatory agencies. Finally, unlike all these other boards and associations, ECFVG was created at the behest of the AAVSB [which represents all state veterinary boards] to do a job that AAVSB ostensibly does with PAVE. So not only were they told do a job by a state entity, but it was also a job already done by the very entity that requested it.

The NBME was found to be a state actor and to have violated the plaintiff's equal protection rights in Mass. High Court. *Currier v. Nat'l Bd. of Med. Examiners*, 965 N.E.2d 829 (Mass. 2012).

Regarding property interest, Defendant has not disputed the following facts: Veterinary licensure is a property interest; Dr. Gunawardana is licensed to practice in Sri Lanka; ECFVG certification is required for her to be licensed in the US; AVMA

has not proven she failed the ECFVG exam; New evidence show that AVMA took deliberate steps to uphold an erroneous failing grade. Taken together, these facts show that AVMA prevented Gunawardana from making a living in the profession for which she is qualified. Furthermore, ECFVG certification alone has economic value as it qualifies foreign veterinarians for certain types of employment, another undisputed fact.

"… the absolute bar imposed by the Board pursuant to the statute and regulation violates Dr. Linton's right to equal protection." *Linton v. Missouri Veterinary Medical Board., 988 S.W.2d 513 (Mo. En banc 1999).* The Plaintiff in *Linton* had not received her veterinary licensure at the time, and the Court found an *applicant's* right to equal protection was violated when she was treated differently from other applicants. Dr. Gunawardana is an applicant, already holding a license in Sri Lanka." [FAC ¶83]

Finally, AVMA as a state actor deprived Plaintiff of the *liberty* of pursuing her chosen profession.


**V. Sherman Act**

Defendant has not denied the facts that: AVMA has sole authority to decide who enters the veterinary market; AVMA also constitutes of active players in the same market; AVMA restricts the market against specific groups of veterinarians [FAC ¶¶3,5,42-53,89-95, P413-414,425-428,439-443, Exhibits 12,13]. Thus, the FAC adequately pleads a section 2 claim.

Defendant misrepresents the section 1 claim by selectively focusing on the term "flooding the market". The FAC alleged, with evidence, a conspiracy between AVMA and other organizations, which not only restricts the market against specific groups in an anti-competitive manner but also increases prices to consumers [FAC ¶¶5,6, 93-95,107-108; P413-414,442-443,447-449]. The injury to consumers is not limited to price increases but includes a widespread decrease in the quality of veterinary services due to the "pushing out" of traditional science-oriented veterinary practices by the profit-oriented Banfield Hospital system [as described by Dr. Robert Marshak, who had previously served in the COE] [FAC ¶¶5, 92-95, P414,442-443, exhibit 14].

Defendant does not dispute the allegations that: COE recently accredited several vocational model veterinary schools which did not meet COE's own accreditation standards; They have since relaxed the accreditation criteria while increasing restrictions for foreign graduates; Graduates from vocational model veterinary schools are largely employed by the Banfield Hospital system, who also provides funding for such schools; Banfield hospitals keep expanding throughout North America and squeezing out traditional science-oriented veterinary practices; and AVMA receives financial contributions from Banfield.

These restrictive actions obviously encompass the whole veterinary market. A professional can bring antitrust claims for such restriction. "Based on these findings, the court held that the AMA and its members violated §1 of the Sherman Act by unlawfully conspiring to restrain trade." *Wilk v. American Medical Ass'n*, 895 F.2d

352 (7th Cir. 1990). In any event, the proposed SAC clarifies claims for Dr. Gunawardana both as a professional and a consumer [SA ¶¶103-114,129-131].

"The Sherman Act protects competition while also respecting federalism. It does not authorize the States to abandon markets to the unsupervised control of active market participants, whether trade associations or hybrid agencies. If a State wants to rely on active market participants as regulators, it must provide active supervision if state-action immunity under Parker is to be invoked." *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 135 S. Ct. 1101 (2015)

## VI. Section 1985(3)

That the AVMA should not be shielded by the intracorporate conspiracy doctrine was not a "mere conclusion" but a fully developed argument previously presented. [Dkt. 28 ¶¶44-46][3]

---

[3] 44. Also noteworthy that AVMA is unlike the typical corporation. Most veterinarians are dues-paying members who participate in and control the market, some voting and serving on AVMA's boards and House of Delegates *while* being active market participants; AVMA members are also on state veterinary boards across the country, affiliated with various government agencies, and the military. Those who administer the PAVE and NAVLE are also in AVMA, who receives government funds directly or indirectly, and makes decisions on allocating government funds. Considering the above, would the Court in *Copperweld Corp* have applied the same doctrine to an entity like AVMA?

45. Even if the intracorporate conspiracy doctrine applied, the conduct at issue falls within the exception for defendants acting outside of the scope of their employment. "...the doctrine

Furthermore, 42 U.S.C. § 1985(3) refers to a conspiracy by "two or more **persons**… of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…" [emphasis added]. Such a conspiracy within different branches or members of AVMA is not only plausible, but **evident** from their discriminatory policies and practices against foreign veterinarians, as described throughout the FAC. New evidence shows such a conspiracy directed specifically against Dr. Gunawardana [SA¶19, p7].

Contrary to Defendant's claim, the FAC alleged a conspiracy between the AVMA and outside entities. "Evidence of such a conspiracy is outlined in detail under Count V." [FAC¶98, P444]. The fact that said conspiracy seems to be financially motivated does not preclude underlying racial motivations, considering the

---

does not apply in this case because the defendants are accused of conspiring to wrongfully divest DiLuzio of his property, which would fall outside the scope of their employment. These defendants cannot invoke this defense." *DiLuzio v. Village of Yorkville, Ohio,* 796 F.3d 604 (6th Cir. 2015).

46. Accordingly, AVMA cannot be shielded by the intracorporate conspiracy doctrine. With many members who have aims that conflict with AVMA's stated principles, they are acting outside the scope of employment. While AVMA's stated goals may not include barring foreigners or non-white races, the intent of individual members who make policy decisions may run counter to those goals, resulting in policy decisions that violate the stated goals and the law.

increasing restrictions placed on foreign graduates. [¶99, P444-445]. Furthermore, 42 U.S.C. § 1985(3) does not require a racial or class motivation.

## VII. ADA

Defendant does not dispute the facts that the ADA violations are etched in AVMA's policies, and that recent evidence shows the failing grade was incorrect. That Dr. Gunawardana should not have to re-take an exam she already passed, does not mitigate the damage already caused by the ADA violations etched in AVMA's policies.

Dr. Gunawardana was not denied an accommodation in 2017 only because she did not request one, as her arthritis was adequately controlled at the time. However, it is an ongoing condition that can flare up anytime. ***Even if*** all other violations preventing Gunawardana from re-taking the exam were corrected, the ongoing ADA violations would still prevent her from re-taking it.

## **Claims for David Seely**

Legal authority for Seely's standing was presented in detail in the FAC [¶¶104,106-108 P447-449], and the show-cause response [Dkt #17, P187-191].

Both documents specifically allege separate claims for Mr. Seely on his own right. [FAC ¶¶6,106-108, P414,447-449; Dkt #17, ¶¶4,7,12-14, P186,187,189-191]. "In addition to indirect damages through his wife, Mr. Seely suffered direct, concrete and particularized harm through the Defendants' actions, including violation of his

disability rights. Defendants' policies and practices adversely affected Mr. Seely as a patient and consumer, through increased cost of veterinary and medical services, and through lack of access to services from a diverse group of qualified professionals." [FAC¶6].

Furthermore, spouses do have standing when their own rights are violated through injuries to their spouse. *International Ass'n of Firefighters v. City of Ferguson*, 283 F.3d 969 (8th Cir. 2002) "This court held that because of the economic effect on her (a joint bank account and the level of spousal support), she was asserting her own rights and thus had standing. Id. at 973." *Alternate Fuels, Inc. V. Cabanas*, No. 06- 3794/07-1462 (8th Cir. Aug 18, 2008).

## VIII. ADA

The Response brief repeats arguments that were previously rebutted [Dkt. #92, ¶¶68-73, P737-739]. Briefly: Seely's allegation was not under ADA's testing provision.  It is the physical and financial damage he suffered as a candidate's family member, due to AVMA's policies. Had the ECFVG allowed candidates to reschedule without losing all fees [as the USMLE does] he would not have suffered this damage. Defendant admits that their policies prohibit candidates from rescheduling exams even in case of medical or family emergencies. This policy in itself violates disability rights of candidates' family members.

## IX. *Antitrust*

Defendant misrepresents facts. FAC stated, with authority, how the market control by AVMA injured Mr. Seely both as a patient receiving medical and pharmaceutical services and a consumer of veterinary services, by depriving him of the opportunity to receive services from a wide and diverse group of qualified professionals. [FAC ¶¶106-108, P447-449]. The injuries include both higher prices and lower quality of service due to AVMA's restrictions on qualified professionals.

## Court erred in denying Plaintiffs' motion to compel Defendant's Rule 30(b)6 deposition.

Defendant's claim "Appellants present no argument that the District Court abused its discretion by denying their motion to compel the deposition of Dr. Claude." is incorrect. The Appellant's Brief [¶¶19,161] briefly states why the examiner is AVMA's managing agent, refers to the documents that describe this argument in detail and move to compel his deposition [Dkt #98, ¶¶26-31,34,35, P768-771], then point to the Court's order that denied said motion without analysis [Dkt #102, RSA p36].

## RELIEF

Plaintiffs respectfully request that the District Court's Final Order be reversed, and Defendants' second motion to dismiss be struck due the procedural defects stated here and in the Appellant's Brief.

Plaintiffs request this Honorable Court to recommend Default Judgment as requested above.

If this Court deems that default judgment is not warranted but Plaintiffs' claims should not have been dismissed, Plaintiffs respectfully request reversal of the District Court's denial of their second motion to amend the complaint. In this event, Plaintiffs further request this Court to examine and reverse the District Court's denial of Plaintiffs' motion to compel Defendant's deposition [Dkts #98-102].

Respectfully submitted this 7th day of July, 2021,

/s/Dr. Subhadra Gunawardana
/s/David Seely
4308 Marion Garden Ln
Florissant, MO 63034
314-764-1520; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

## CERTIFICATE OF COMPLIANCE

We hereby certify that this brief complies with the type limitations provided in Federal Rule of Appellate Procedure 32(a)(7). The foregoing brief was prepared using Microsoft Office 365 and contains 6977 words in 12-point proportionately-spaced Century Schoolbook font.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded by way of electronic filing on the Court's ECF notice list to all parties on July 7th, 2021.

/s/Dr. Subhadra Gunawardana
/s/David Seely

**PLAINTIFFS'-APPELLANTS' REPLY BRIEF SUPPLEMENTAL APPENDIX**

*Contents*

Defendants' Motion for Extension of Time…………………………………………….………i
Plaintiffs' Motion to Vacate………………………………………………………………ii
Exhibit 1 of Plaintiffs' Motion to Vacate…...……………………………………………iii

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Subhadra Gunawardana | ) | |
| David Seely, | ) | |
| | ) | Case No. 19 –cv--96-NJR-MAB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| American Veterinary Medical Association | ) | |
| (AVMA) and its branches: Educational | ) | |
| Commission for Foreign Veterinary Graduates | ) | |
| (ECFVG) and Council on Education (COE), | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR AN EXTENSION OF TIME
## TO ANSWER OR OTHERWISE PLEAD

Defendant, American Veterinary Medical Association ("AVMA"), by and through its attorneys of Gordon & Rees, LLP, respectfully moves for a 21-day extension of time to file its answer or otherwise responsive pleading to Plaintiffs' Complaint.  In support, Defendant states as follows:

1.      On February 1, 2019, Plaintiffs filed a Complaint against AVMA alleging violation of contract laws (Count I); violations of Title VII (Count II); violations of the Sherman Act (Count III); violations of the ADA (Count IV); and violations of the Equal Protection Clause (Count V).

2.      On April 5, 2018, AVMA filed a Motion to Transfer Venue, which this Court denied in its order dated April 30, 2019. The Order directed Plaintiffs to show cause why Plaintiff, David Seely, should not be dismissed for lack of standing by May 14, 2019.

3.      AVMA's responsive pleading is due on May 14, 2019.

4.      Defendant is in the process of investigating the allegations set forth in Plaintiff's Complaint, preparing its response, and exploring the potential for settlement.

i

5.      On May 13, 2019, defense counsel emailed and telephoned Plaintiff to inform her of the filing of this motion, and requested that she relay any opposition. At the time of filing of this motion, Defendant has not heard back from Plaintiff.

6.      A 21-day extension in which to answer or otherwise plead will be sufficient to fully address the issues raised in Plaintiffs' Complaint, including Plaintiff Seely's standing, and to explore whether or not a prompt settlement may be negotiated.

7.      This motion is not brought to unduly delay these proceedings or to harass any party to this case.

WHEREFORE, Defendant, American Veterinary Medical Association ("AVMA"), respectfully requests that this Honorable Court grant it an extension of time up to and including June 4, 2019 to file its answer or otherwise responsive pleading to Plaintiffs' Complaint.

Respectfully submitted,

GORDON & REES, LLP

By: /s/ J. Hayes Ryan
*Attorney for Defendant*
*American Veterinary Medical Association*

J. Hayes Ryan
Gordon & Rees LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
(312) 565-1400 (Telephone)
(312) 565-6511 (Facsimile)
hayesryan@grsm.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

Subhadra Gunawardana and David Seely, pro se )

Plaintiffs, )

)   Case No. 3:19-cv-00096-NJR-MAB

v. )

American Veterinary Medical Association )
(AVMA) and its branches: Educational )
Commission for Foreign Veterinary Graduates )
(ECFVG) and Council on Education (COE) )

Defendants. )

---

## PLAINTIFFS' MOTION TO VACATE ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD

Plaintiffs respectfully move the Honorable Court to vacate the order entered on May 14, 2019, granting Defendant's motion for extension of time to answer or otherwise plead. Plaintiffs dispute a critical statement of fact in the Defendants' motion, and believe that the Court would not have granted Defendant's motion had all information been present before the Court.

1. Plaintiffs filed the complaint on February 1, 2019, and the Defendant acknowledged waiver of service on February 6, 2019.

2. Accordingly, the due date for Defendants' responsive pleading was April 8, 2019.

3. Defendants did not file an answer or a pre-answer motion under Rule 12 of Federal Rules of Civil Procedure by the due date of April 8, 2019.

4. On April 5, 2019, Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), which they amended on April 10, 2019.

5. Court denied said motion in its order dated April 30, 2019, and ordered Plaintiff Seely to show cause for standing.

6. According to Rule 12, a motion to transfer venue under 28 U.S.C. § 1404(a) does not extend or suspend the due date for responsive pleading. Therefore, Defendants' statement that "AVMA's responsive pleading is due on May 14, 2019" is incorrect. [paragraph 3 of Defendants' motion for extension]

7. Until May 14, 2019, the court docket continued to show the answer due date as April 8 [Exhibit 1], indicating that the Defendants' motion to transfer, or the Court's ruling on it, did not extend the due date for responsive pleading.

8. On May 13, 2019, Defendants filed this motion for extension of time to answer.

9. Defendants' notice to Plaintiffs regarding intent to file said motion for extension was provided only 2 hours prior to filing. Plaintiffs did not see Defendants' message until after the motion was filed [Dr. Gunawardana cannot check messages while in surgery, and Mr. Seely was busy preparing the response to the court's order to show cause, due on May 14, 2019]. Even if Plaintiffs had received the notice in time, they could not have agreed or objected without seeing the contents of the motion.

10. On May 14, 2019 the Court granted the Defendants' motion for extension.

11. Plaintiffs hereby express their objection to said motion on the grounds that: At the time of filing of said motion, Defendants' due date for responsive pleading was still April 8, 2019, and was long past.  Thus, Defendant had already failed to answer or otherwise plead in a timely manner.

12. Considering that Defendants' counsel made their appearance on February 14, 2019 [over seven weeks before the due date of April 8, 2019], and amended the motion to transfer venue, it appears that they had ample opportunity to file a timely responsive pleading or request an extension by the due date.

In consideration of the aforementioned facts, Plaintiffs pray the Honorable Court to vacate the

order entered on May 14, 2019.

Respectfully Submitted,
/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent
Plaintiffs
4308 Marion Garden Ln
Florissant, MO 63034
615-674-8461; 615-423-8851
subhadra.gunawardana@wustl.edu
david-seely@live.com

### Certificate of Service

The undersigned hereby certifies that a true and accurate copy of the foregoing document was forwarded by way of electronic filing on the Court's ECF notice list from 4308 Marion Garden Ln, Florissant, MO 63034, on May 16, 2019.

/s/Dr. Subhadra Gunawardana
/s/David Seely, With Consent

# 3:19-cv-00096-NJR-MAB Gunawardana et al v. American Veterinary Medical Association et al

Nancy J. Rosenstengel, presiding
Mark A. Beatty, referral
**Date filed:** 02/01/2019
**Date of last filing:** 05/14/2019



# Deadlines/Hearings

| Doc. No. | Deadline/Hearing | Event Filed | Due/Set | Satisfied | Terminated |
|---|---|---|---|---|---|
| 2 | 🌐 Answer due | 02/01/2019 | 04/08/2019 | | |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/14/2019 13:45:11 | | |
| **PACER Login:** | ███████ | **Client Code:** | |
| **Description:** | Deadline/Hearings | **Search Criteria:** | 3:19-cv-00096-NJR-MAB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

iii