> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2021[*]
Decided October 25, 2021

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-1330

| | |
|---|---|
| SUBHADRA GUNAWARDANA and DAVID SEELY, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-96-NJR |
| AMERICAN VETERINARY MEDICAL ASSOCIATION, et al., *Defendants-Appellees*. | Nancy J. Rosenstengel, *Chief Judge*. |

---

[*] Defendants-Appellees, the Educational Commission for Foreign Veterinary Graduates and the Council on Education (both divisions of the American Veterinary Medical Association), were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

**O R D E R**

Dr. Subhadra Gunawardana and her husband sued the American Veterinary Medical Association after she failed a portion of its exam for certifying foreign-educated veterinarians. The district court granted the Association's motion to dismiss. Because the plaintiffs did not state any claim for relief that was not barred by the release that Gunawardana signed when registering for the exam, we affirm.

After graduating from veterinary school in Sri Lanka, Gunawardana moved to the United States, where she earned two graduate degrees in biological sciences and established herself as a medical researcher. Wanting to become a practicing veterinarian, she sought certification from the Association's Educational Commission for Foreign Veterinary Graduates. Nearly every U.S. jurisdiction requires this certification before it will issue a veterinary license to a foreign graduate. In applying for certification, Gunawardana released the Association from "all actions, suits, obligations, damages, claims and demands arising out of, or in connections with, this application, the grade or grades given with respect to the examinations or the failure of [the Association] to issue to [her] a certificate."

The final step of the certification process is a practical exam, which Gunawardana failed three times. Five days before her second attempt, she was diagnosed with osteoarthritis in her right hand and requested an accommodation. The Association declined because it requires applicants to make such requests at least 90 days in advance. As a result, David Seely, her husband, traveled with her to the second exam to ensure she minimized her physical exertion while traveling. Gunawardana did not request an accommodation for her third attempt; by then, her arthritis was "adequately controlled," so an accommodation was unnecessary.

Acting pro se, Gunawardana and Seely sued the Association, its Educational Commission for Foreign Veterinary Graduates, and another of its internal branches. The complaint alleged that the Association wrongly denied Gunawardana a certificate because she is Sri Lankan—in violation of (1) Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17; (2) 42 U.S.C. § 1981; (3) the Equal Protection and Due Process Clauses of the Fourteenth Amendment; and (4) 42 U.S.C. § 1985(3). Gunawardana further claimed that (5) the Association breached a contract with her in violation of the Illinois Uniform Commercial Code, 810 ILCS 5/2-101–5/2-725; (6) the denial of an accommodation violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189; and (7) the Association held a monopoly on veterinary certifications in

violation of the Sherman Act, 15 U.S.C. §§ 1–2. Seely asserted his own antitrust and ADA claims. The district court granted the plaintiffs leave to amend their complaint in response to the Association's first motion to dismiss. (The plaintiffs had sought leave more than 21 days after service of the motion. *See* FED. R. CIV. P. 15(a)(1)(B).)

More than five months after they did so, the Association filed a second motion to dismiss. This filing came well past the 14-day deadline set by Federal Rule of Civil Procedure 15(a)(3). The plaintiffs moved to extend their time for responding but did not otherwise object. During a status hearing, the district court noted that the Association's motion to dismiss was "pretty far out of time" and asked the plaintiffs to clarify that they sought only an extension. The plaintiffs confirmed they could respond to the motion if given extra time, and the district court obliged.

In their response brief, however, the plaintiffs sought for the first time to strike the motion to dismiss as untimely. Then, over two months later and after the motion to dismiss and the motion to strike were fully briefed, the plaintiffs moved for leave to file a second amended complaint. The district court denied that motion, citing the previously entered scheduling order and the prejudice that would result to the Association from again allowing amendment instead of ruling on its motion to dismiss. The court denied the request to strike, as well. The court explained that the plaintiffs had waived their timeliness objection when they agreed to a briefing schedule at the status hearing.

On the merits, the court dismissed the amended complaint with prejudice. It ruled that the release blocked most of Gunawardana's claims. (The court could consider the release when ruling on the motion to dismiss because the plaintiffs had referenced it in their pleadings. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).) The court also explained that the complaint did not state a claim, irrespective of the release and, further, Seely lacked standing to raise independent claims.

On appeal, the plaintiffs first argue that the district court erred in accepting the Association's untimely motion to dismiss and then denying their motion to strike. At the status hearing, the court appropriately accepted the motion to dismiss and entered a briefing schedule—after pointing out the lateness of the motion to dismiss and clarifying that the plaintiffs did not object, and sought only an extension of time. We will not interfere with this exercise of discretion. *See Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011). Nor do we find an abuse of discretion in the denial of the motion to strike, which was itself belated. The court properly determined that the plaintiffs had waived those arguments in their motion when they did not object at the

status hearing. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 839–40 (7th Cir. 2018).

The plaintiffs next challenge the district court's conclusion that the release Gunawardana signed is valid. Under Illinois law—which the parties agree controls—prospective releases from liability are generally enforceable unless they violate settled public policy. *Horne v. Electr. Eel Mfg. Co.*, 987 F.3d 704, 718 (7th Cir. 2021) (quoting *Harris v. Walker*, 519 N.E.2d 917, 919 (Ill. 1988)); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 252 (7th Cir. 1994). The plaintiffs argue that the release here is an unfair contract of adhesion; Gunawardana had no choice but to sign it if she wanted her certificate. Generally, this "generic 'David and Goliath' argument regarding the relative bargaining positions of the parties is not the sort of disparity that violates public policy under Illinois law." *Horne*, 987 F.3d at 724. And we have applied Illinois law to uphold a release of an applicant's right to sue a professional-certification organization. *See Sanjuan*, 40 F.3d at 249.

Gunawardana counters that the release violates public policy because the Association's certification is necessary for her to earn a living as a veterinarian. *See id.* True, when membership in a private association is an "economic necessity," Illinois law allows examination of its membership criteria. *See, e.g., Brandner v. Am. Acad. of Orthopaedic Surgeons*, 760 F.3d 627, 628 (7th Cir. 2014) (citing *Van Daele v. Vinci*, 282 N.E.2d 728, 731 (Ill. 1972)); *Gilyana v. Assyrian Am. Ass'n of Chi.*, 43 N.E.3d 164, 167 (Ill. App. Ct. 2014). But economic necessity does not invalidate all such criteria, such as the release requirement here. The plaintiffs cite no authority suggesting that a release violates public policy simply because it is a condition of a mandatory certification.

Because the plaintiffs have not demonstrated that the release is invalid, we must enforce it on its terms. *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 563 (7th Cir. 2021); *Horne*, 987 F.3d at 718. This means that all "claims … arising out of, or in connection with" Gunawardana's application for certification, the administration or grading of her exams, or the decision not to issue a certificate are barred. That covers most of the plaintiffs' complaint—at a minimum, the claims for breach of contract and violation of Title VII, § 1981, and the Americans with Disabilities Act. *See E.E.O.C. v. CVS Pharmacy, Inc.*, 809 F.3d 335, 336 n.1 (7th Cir. 2015); *Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) (allowing release of federal right if knowing and voluntary).

Like the plaintiffs in *Sanjuan*, the plaintiffs appear to contend that the release does not extend to their claims that the Association violated Gunawardana's rights to

due process and equal protection. Whether the constitutional claims are freestanding or a way to avoid the release (their argument is not entirely clear), the district court correctly concluded that the Association is not a state actor whose actions are subject to constitutional scrutiny. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)). The plaintiffs argue that even though the Association is a private organization, it functions as a state actor because its certifications are a prerequisite for state licensure. But we have squarely rejected the argument that a state's decision to condition a professional license on a certification from a private party converts the private party into a state actor. *Sanjuan*, 40 F.3d at 250.

　　　As for Gunawardana's claim that the Association conspired to violate her right to equal protection in violation of 42 U.S.C. § 1985(3)—which does not require the Association to be a state actor—it is a closer question whether the release applies. The plaintiffs allege that the Association conspires with domestic veterinary schools and a veterinary hospital system to stop foreign graduates from entering the practice. If Gunawardana is challenging the *existence* of a separate certification process for foreign graduates, it is arguably not covered by the release.

　　　Either way, the plaintiffs do not state a claim under § 1985(3). Their allegations do not plausibly suggest a conspiracy with the purpose of depriving any person or group of equal protection. *See Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012). Graduates of foreign veterinary schools are not a protected class cognizable based on race or national origin. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (requiring "racial or class-based animus" for a § 1985(3) claim). Any graduate of a foreign veterinary school who seeks licensure in the United States, regardless of nationality (including U.S. citizens), must go through the more onerous process.

　　　Next, the plaintiffs contend that the court should have allowed Seely—who did not sign a release—to proceed on an independent claim under the ADA. They argue that he was forced to travel with Gunawardana and "do all carrying and lifting for her" when the Association denied her an accommodation for the second attempt at the practical exam. This, in turn, aggravated his own (unspecified) disabilities. But we agree with the district court that Seely lacks standing to bring a claim based on the denial of reasonable accommodation to his wife. Standing under Article III of the Constitution requires an injury "fairly traceable" to a defendant's actions. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, the connection is too attenuated; the Association

took no action with respect to Seely, and his choice of what to do to assist his wife is insufficient to generate standing for a separate claim. *See id.* at 417–18.

The plaintiffs next argue that the court erred in dismissing their antitrust claims under sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1–2. (These claims are not covered by the release. *Sanjuan*, 40 F.3d at 250.) They argue that, as the sole accreditor of veterinarians, the Association exclusively controls who enters the market and uses this power to "flood[] the market" with graduates from domestic veterinary schools and to crowd out the graduates of foreign schools.

To state an antitrust claim, however, the plaintiffs needed to allege that the Association's actions injured a relevant market—either through decreased output or increased prices for consumers. *Chi. Studio Rental, Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 978 (7th Cir. 2019). They advance two theories, first, that Gunawardana was pushed out of the veterinary market. But this type of injury against a producer of services "has nothing to do with the antitrust laws," because the plaintiffs do not plausibly link it to any injury to consumers. *Sanjuan*, 40 F.3d at 251–52. Second, they assert that they pay more as purchasers of veterinary services for their pets. Although increased prices can be an antitrust injury, the thrust of their complaint alleges the opposite—that the certification process creates a "surplus of veterinarians," thus increasing competition. *See Chi. Studio Rental*, 940 F.3d at 978. That is inconsistent with an antitrust injury.

The plaintiffs also challenge the district court's denial of their motion for leave to file a second amended complaint. The court denied the motion on the ground that granting leave while the Association's second motion to dismiss was pending, fully briefed, would be prejudicial. We cannot say the court abused its discretion. After the Association filed the motion to dismiss the original complaint, the plaintiffs amended their complaint but did not address the deficiencies the Association had pointed out. More than two months after the parties had fully briefed the motion to dismiss the second amended complaint, the plaintiffs again requested a chance to amend. Such "cat and mouse game[s] of motions to dismiss followed by a motion to amend," need not be allowed. *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002); *see Liebhart v. SPX Corp.*, 917 F.3d 952, 965–66 (7th Cir. 2019).

Lastly, the plaintiffs argue that the district court erred by dismissing their complaint with prejudice instead of with leave to amend. But the district court did not abuse its discretion. It had already afforded them one chance to amend after the first motion to dismiss gave them a preview of their complaint's shortfalls. *See Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 919 (7th Cir. 2020). The pleadings

have been tested twice, and we do not require infinite opportunities to amend. Further, when the plaintiffs asked for leave to amend after responding to the second motion to dismiss, they did not explain how their proposed second amended complaint addressed the legal and factual shortfalls of the first. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808–809 (7th Cir. 2015). On appeal, they still do not explain this. *See id.* Rather, they baldly assert that "any conceivable defects in the [first amended complaint] were rectified in the proposed second amended complaint."

We have considered plaintiffs' other arguments, but none has merit.

AFFIRMED

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit